# EXHIBIT A

**CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER**

| | |
|---|---|
| **From:** | Villasenor, Jose |
| **To:** | Chua, Nathan |
| **Subject:** | Fw: [EXT]Fwd: Preston Mccormick |
| **Date:** | Tuesday, February 27, 2024 5:29:57 PM |

See the email  traffic below.

Inv. Jose Villasenor #4285
Riverside County Sheriff's Department
Special Investigations Bureau/Narc1
Work Cell 951.550.1069
Desk 760.393.3563
jvillase@riversidesheriff.org

**From:** Seymour Chris A <Chris.Seymour@ci.irs.gov>
**Sent:** Monday, November 14, 2022 9:03 PM
**To:** Villasenor, Jose <jvillase@riversidesheriff.org>
**Subject:** RE: [EXT]Fwd: Preston Mccormick

**CAUTION:**   This email originated from outside the **Riverside Sheriff** email system.
**DO NOT** click links or open attachments unless you recognize the sender and know the content is safe.

I noticed there is no issuance date, no expiration date, no listing of the person who signed the document, etc.....

Thanks for this!

# Chris Seymour, Special Agent
## Internal Revenue Service - Criminal Investigation
**290 N D Street**
**San Bernardino, CA 92401**
**(909) 821-8970 - Cell**
**(909) 388-8349 - Fax**
**Chris.Seymour@ci.irs.gov**



**From:** Villasenor, Jose <jvillase@riversidesheriff.org>
**Sent:** Monday, November 14, 2022 4:11 PM
**To:** Seymour Chris A <Chris.Seymour@ci.irs.gov>

**CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER**

**Subject:** [EXT]Fwd: Preston Mccormick

Sent from my iPhone

Begin forwarded message:

> **From:** "Gonzalez, Salvador" <sbgonzal@riversidesheriff.org>
> **Date:** October 27, 2022 at 11:25:23 AM PDT
> **To:** "Villasenor, Jose" <jvillase@riversidesheriff.org>
> **Subject: FW: Preston Mccormick**

---

**From:** Matos, Mariano <mmatos@riversidesheriff.org>
**Sent:** Thursday, October 27, 2022 11:21 AM
**To:** Gonzalez, Salvador <sbgonzal@riversidesheriff.org>
**Subject:** FW: Preston Mccormick

This guy dropped this off to me today.  Is this a real thing since its issued by Torres Martinez?

---

**From:** Dominguez-Gonzalez, Gladys <gdominguez@riversidesheriff.org>
**Sent:** Thursday, October 27, 2022 11:18 AM
**To:** Rubio, Porfirio <prubio@riversidesheriff.org>
**Cc:** Matos, Mariano <mmatos@riversidesheriff.org>
**Subject:** Preston Mccormick

Good Morning,

Preston McCormick came in the station today to provide a copy of his Cannabis License Permit. He said he wanted to provide this to you.

Contact: 9723752824.

Thanks,

Gladys Dominguez
Office Assistant ll
Riverside County Sheriff Thermal Station
7608638956 Desk

**COUNTY 00368**

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

7608638955 Fax
Gdominguez@RiversideSheriff.org

COUNTY 00369

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

TORRES MARTINEZ
CANNABIS CONTROL COMMISSION

# MANUFACTURING LICENSE



LICENSEE:

Preston McCormick (East Wind Ag)

LICENSE NUMBER : TM-CCC-007

LICENSED PREMISES:

Coyote Pond

729-040-003-3, 729-040-004-4

729-040-005-5, 729-040-006-6

EFFECTIVE DATE: 09/19/2022

EXPIRATION DATE: 9/19/2023

Cannabis Control Commission, Chairperson

This license is a conditional license and authorizes the holder thereof to engage in cultivation and manu-facturing of cannabis on the agreed upon  land leased by the licensee and Torres Martinez Cannabis Con-trol Commission for the duration of the license period. Breach of any of the regulations and/or agreements may result in termination during any time of the above listed effective period.  All fees must remain current and requirements outlined in Cannabis Control Commissions regulations must be met for the duration of the above listed effective period.

**ADDRESS:** 91521 AVE 68, MECCA, CA 92254

**POINT OF CONTACT:** PRESTON MCCORMICK
CELL: 972-375-2824
EMAIL: PRESMCCORMICK@YAHOO.COM

COUNTY 00370

# EXHIBIT B

# CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Messages - Gregory W Guiza

+19095800863, +17608513930, jvillase907@icloud.com, +19515501069,
jvillase@riversidesheriff.org

10/26/2022 2:53:45 PM

Grant location

10/26/2022 2:54:55 PM

Gregory W Guiza

Thank you

10/27/2022 12:57:46 PM

Hey sir

10/27/2022 12:58:11 PM

Gregory W Guiza

Afternoon

10/27/2022 12:59:36 PM

Can you confirm 91521 Ave 68 is non trust land only owned by Torres Martinez

10/27/2022 1:00:13 PM

Gregory W Guiza

I will not be able to do that till tomorrow morning

10/27/2022 1:00:51 PM

Gregory W Guiza

Can you give me the full address

10/27/2022 1:01:17 PM

We're planning on cutting a state warrant for it and eradication using a chemical erad

10/27/2022 1:01:45 PM

91521 68th Ave
Mecca, CA  92254
United States

10/27/2022 1:02:33 PM

Gregory W Guiza

Let me see if I can get a hold of a BIA realtor. I'm on the road now but I will try.

10/27/2022 1:02:35 PM

Gregory W Guiza

Thank you

10/27/2022 1:24:11 PM

Gregory W Guiza

Just got off the phone with my realty specialist. And she says it is not on trust land, and that it must be privately owned by the tribe.

10/27/2022 1:24:29 PM

Ok thanks

Exported from Jose (DL9V7MWQH9) on 11/5/2024 12:43:29 PM with iMazing by DigiDNA. Database date when extracted: 11/5/2024 11:36:35 AM

Page 10 of 13

COUNTY 00380

**CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER**

Messages - Gregory W Guiza

+19095800863, +17608513930, jvillase907@icloud.com, +19515501069, jvillase@riversidesheriff.org

10/27/2022 1:25:19 PM

> You guys mind if we eradicate it chemically

10/27/2022 1:25:48 PM

Gregory W Guiza

I don't mind that at all. When do you plan on having this done.?

10/27/2022 1:26:21 PM

> First week of December

10/27/2022 1:26:37 PM

Gregory W Guiza

Liked "First week of December "

10/28/2022 9:28:02 AM

Gregory W Guiza

Jose, my supervisor would like to know the exact amount of cash that was seized. Also, did you get an actual weight on the marijuana. I know it's crunchy crap weed. But if you have a weight that would be good. My boss is writing an SIR.

10/28/2022 9:28:19 AM

> Ok

10/28/2022 9:30:09 AM

> 1    209 N. Valley Center Ave., Glendora:        1 firearm (pistol), $87,680 taken in cash as evidence.
>
> 2    83878 Corte La Morada, Coachella:        Paperwork/records
>
> 3    70615 Grant St., Mecca:        3 firearms (1 pistol, 1 shot-gun, 1 rifle), 10 lbs. of processed MJ.
>
> 4    42231 Hideaway St., Indio:        Paperwork/records
>
> 5    90123 81st Ave. Space 35, Mecca:        1 firearm (pistol), $43,046 taken in cash as AF, 13 lbs. of processed MJ., paperwork/records
>
>                                         Totals:        5 firearms, 23 lbs. of processed MJ, and $130,726.

10/28/2022 9:30:52 AM

Gregory W Guiza

Awesome. Thank you.

11/16/2022 9:11:13 PM

> Sir!

11/16/2022 9:13:03 PM

> Sorry for the late text, we're planning a MJ erad at one of the grows located on 68 Ave. it's owned by the tribe but not trusted as a reservation on DEC 7.

11/16/2022 9:13:52 PM

> Let me know if you guys want to participate or just to be kept in the loop

**COUNTY 00381**

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Messages - Gregory W Guiza

+19095800863, +17608513930, jvillase907@icloud.com, +19515501069,
jvillase@riversidesheriff.org

11/16/2022 9:14:14 PM

About 300 green houses

11/16/2022 9:15:04 PM

Gregory W Guiza

Let me talk with my boss in the morning. I will be flying out to Georgia for firearms school on the 4th.

11/16/2022 9:15:20 PM

Ah ok

11/16/2022 9:15:39 PM

Gregory W Guiza

Is this the one you want to chemically erad

11/16/2022 9:16:26 PM

yeah, but our admin shut it down, so we're back to curing and hauling to land fill

11/16/2022 9:16:35 PM

Cutting

11/16/2022 9:16:47 PM

Gregory W Guiza

Damn. Gotcha.

11/16/2022 9:16:53 PM

Gregory W Guiza

Will let you know very soon

11/16/2022 9:17:32 PM

Also, what's the other bia agent that was with us on grant st?

11/16/2022 9:17:57 PM

Gregory W Guiza

Marc Scott.

11/16/2022 9:18:04 PM

Liked "Marc Scott. "

11/17/2022 8:53:09 AM

Gregory W Guiza

Morning. My boss has to decline our participation.  The non-trust land that this particular grow is on is the reason.

11/17/2022 8:53:34 AM

Great, thanks!

11/17/2022 8:55:05 AM

Gregory W Guiza

Sorry about that, I really want to assist as much as possible.

Exported from Jose (DL9V7MWQH9) on 11/5/2024 12:43:29 PM with iMazing by DigiDNA. Database date when
extracted: 11/5/2024 11:36:35 AM

Page 12 of 13

COUNTY 00382

# EXHIBIT C
## [REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]

# EXHIBIT D

**Policy**

**208**

Riverside County Sheriff's Department

Riverside County Sheriff's Department Standards Manual (DSM)

# Training

### 208.1  PURPOSE AND SCOPE

The policy of the Riverside County Sheriff's Office is to administer a training program that will provide for the professional growth and continued development of its personnel. By so doing, the Sheriff's Office will ensure its personnel possess the knowledge and skills necessary to provide a professional level of service that meets the needs of the community.

The Sheriff's Office shall adhere to the training and background requirements as set by the California Commission on Peace Officer Standards and Training (POST) and the Standards and Training for Correctional Officers (STC). The Sheriff's Office may provide training for its members as the Sheriff deems necessary for the proper execution of assigned duties.

The Support Services Division Chief shall be responsible for the development and maintenance of Sheriff's Office training.

### 208.2  PHILOSOPHY

The Riverside County Sheriff's Office seeks to provide on-going training and encourages all personnel to participate in advanced training and formal education on a continual basis. Training is provided within the confines of funding, requirements of a given assignment, staffing levels, and legal mandates. Whenever possible, the Sheriff's Office will use courses certified by the California Commission on POST.

### 208.3  OBJECTIVES

The objectives of the Training Program are to:

(a)   Enhance the level of law enforcement service to the public.

(b)   Increase the technical expertise and overall effectiveness of our personnel.

(c)   Provide for continued professional development of Sheriff's Office personnel.

(d)   Ensure compliance with POST rules and regulations concerning law enforcement training.

### 208.4  TRAINING PLAN

A training plan will be developed and maintained by the Training Coordinator. It is the responsibility of the Commander of the Training and Education Bureau to maintain, review, and update the Training Plan on an annual basis. The plan will address the following areas:

(a)   Legislative changes and case law;

(b)   State mandated training;

(c)   Critical issues training.

### 208.4.1  COMMANDER RESPONSIBILITIES

The commander of each station or bureau within the Sheriff's Office shall ensure that members of all classifications within their command receive training necessary to perform their duties.

Copyright Lexipol, LLC 2025/07/29, All Rights Reserved.
Published with permission by Riverside County Sheriff's Department

# Riverside County Sheriff's Department
Riverside County Sheriff's Department Standards Manual (DSM)

## *Training*

Commanders may designate a training coordinator to record, track, and assist with scheduling of all assigned training. All training shall be consistent with the standards established and approved by the Training and Education Bureau.

### 208.4.2   INITIAL TRAINING PROGRAMS
The Sheriff's Office administers and maintains a variety of training programs related to an employee's initial assignment to one of the Sheriff's primary functions. Station or Bureau training personnel shall adhere to policies and procedures set forth in the applicable training manual and shall remain aware of current training mandates as required by POST or the Training and Education Bureau.

The Sheriff's Office shall have a Field Training Program (FTO), a Corrections Training Program (CTO), a Court Services Training Program (CSTO) and a Communications Training Program (CTO) to provide on-the-job training and prepare the most qualified Sheriff's Office members for independent performance.

The training programs will follow procedures that are specified in the Sheriff's Office training program manuals and approved by the Training and Education Bureau.

### 208.4.3   SUPPLEMENTAL TRAINING
The Sheriff or designee, may assign any Sheriff's Office employee to attend supplemental training, in addition to what is mandated, for the purpose of improving overall performance or a specific skill. Such assignment to supplemental training may be to reduce the likelihood of misconduct or unsatisfactory performance, to minimize civil liability and practice sound risk management, to meet/maintain the requirements of a specialized license or enforcement authority, to prepare an employee for a specific assignment or task, or be intended to restore an employee to satisfactory performance during a Performance Improvement Plan (PIP).

### 208.4.4   TRAINING ORDERS AND ASSIGNED TRAINING
Training orders, as published by the Sheriff's Office, are orders from the Sheriff to attend training. Such orders may direct Sheriff's Office members to a location away from their assigned duty station. The assigned location is the Sheriff's Office member's duty station for the prescribed time period. Attendance is not optional and assigned personnel shall communicate with their supervisors regarding the orders.

### 208.4.5   SPECIAL ORDERS AND ASSIGNED TRAINING
Special orders, as published by the Sheriff's Office, require a completed Form 320 to request a payment from the County of Riverside for but not limited to: registration fee, tuition fee, membership fee, airline tickets, lodging, meals, car rental, parking fees, taxi, shuttle, bus, etc.

### 208.4.6   EARLY RELEASE
If released from any training more than one hour before its scheduled end time, Sheriff's Office members shall call an on-duty supervisor for instructions regarding the remaining time.

Copyright Lexipol, LLC 2025/07/29, All Rights Reserved.
Published with permission by Riverside County Sheriff's
Department

Riverside County Sheriff's Department

Riverside County Sheriff's Department Standards Manual (DSM)

*Training*

### 208.5  TRAINING NEEDS ASSESSMENT

The Training Bureau will conduct an on-going needs assessment of the Sheriff's Office training component. This assessment will be conveyed to the Chief Deputy of the Training and Education Bureau and will, in part, form the basis for the training plan for the fiscal year.

### 208.6  TRAINING ATTIRE

The Sheriff, or his designee, has discretion to adjust the attire to be worn during assigned training based on the training goals and to facilitate a realistic training experience. For example, deputies assigned to the Perishable Skills Program training, Annual Jail Training, Range Training, Firearms Qualifications, and Force Options Simulator, may be required to wear their regular duty uniforms and all corresponding equipment. Sheriff's Office members shall carefully read and adhere to the specific uniform and equipment requirements indicated in Sheriff's Office training and special orders.

### 208.7  TRAINING RESTRICTION

Pursuant to Government Code 7286(b), deputies who have a sustained abuse of force complaint, are restricted from training other deputies for a period of at least three years from the date the complaint was substantiated.

Copyright Lexipol, LLC 2025/07/29, All Rights Reserved.
Published with permission by Riverside County Sheriff's
Department

# Policing Tribal Lands

### 407.1  PURPOSE AND SCOPE

The Riverside County Sheriff's Office has regular contact with Tribal lands and their residents and must manage the legal nuances of policing in these areas. This policy will outline specific protocols unique to tribal lands and is intended to assist Sheriff's Office members in delivering consistent law enforcement service, criminal investigations and compliance with Public Law 83-280 while serving the twelve Riverside County Tribal Communities, which include:

Agua Caliente Band of Cahuilla Indians- Palm Desert Station

Augustine Band of Cahuilla Indians - Thermal Station

Cabazon Band of Mission Indians - Thermal Station

Cahuilla Band of Indians- Hemet Station

Colorado River Indian Tribes - Colorado River Station

Morongo Band of Mission Indians- Cabazon Station

Pechanga Band of Luiseno Indians- Southwest Station

Ramona Band of Cahuilla Indians- Hemet Station

Santa Rosa Band of Cahuilla Indians- Hemet Station

Soboba Band of Luiseno Indians- Hemet Station

Torres Martinez Desert Cahuilla Indians- Thermal Station

Twenty Nine Palms Band of Mission Indians- Thermal Station

### 407.2  PUBLIC LAW 83-280

PL 83-280, as enacted by the federal government in 1953, sought to clarify the role of law enforcement upon Indian lands in six states, to include California. The law essentially transferred enforcement of state law to local agencies.

Most basically, PL 83-280 is divided into three areas of governmental concern:

1.  Criminal Section (18 United States Code)

2.  Civil Section (28 United States Code)

3.  Informational Section (25 United States Code)

This policy will focus upon Sheriff's Office policy related to the criminal section under 18 USC and our enforcement of state-level, criminal- prohibitive laws.

### 407.3  LAW ENFORCEMENT AUTHORITY

As stated, PL 83-280 tasked the State of California with enforcement of what are commonly referred to as 'criminal-prohibitive' laws on tribal lands. Criminal-prohibitive laws prohibit certain

Copyright Lexipol, LLC 2025/07/29, All Rights Reserved.
Published with permission by Riverside County Sheriff's
Department

*Policing Tribal Lands*

---

conduct, and do not exist to simply regulate otherwise allowable conduct. For example, criminal-prohibitive laws would include battery, theft, or sexual crimes and all such criminal-prohibitive statutes are enforceable on tribal lands regardless of the membership status of the offender. The enforcement of these laws carries the exact weight as if the violations were committed elsewhere.

Laws known as civil-regulatory merely regulate otherwise allowable conduct. PL 83-280 prohibits the Sheriff from enforcing civil-regulatory laws. For example, driving is a legal activity that is only regulated by rules and limitations set forth in the vehicle code, therefore civil-regulatory laws in the vehicle code are not enforceable on tribal lands. See 407.3.1.

State or county-level environmental regulations, land use, zoning, gambling, licensing, animal control, and hunting/fishing regulations are civil-regulatory laws and cannot be enforced by Sheriff's personnel.

### 407.3.1  ROUTINE PATROL AND TRAFFIC ENFORCEMENT
In general, the function of routine patrol and the calls handled by sheriff's personnel are no different than elsewhere in the county, with some notable exceptions.

### ENTRY PROTOCOL / NOTIFICATION

Some Memorandums of Understanding outline protocols for access to reservation property, buildings, or businesses. Sheriff's personnel shall abide by any MOU requiring that due diligence be given to notify a reservation representative before entry and should know, for safety and confidentiality reasons, when tribal notification is appropriate and when it is not.

### TRAFFIC ENFORCEMENT

The civil-regulatory sections in the California Vehicle Code, such as equipment violations, the requirement to have a valid driver license, current vehicle registration, proof of insurance, or compliance with speed limits, or traffic control signs are not enforceable, and cannot be used as primary detention violations. The majority of misdemeanors and felonies in the vehicle code are enforceable if they prohibit, and not simply regulate, certain conduct.

### VEHICLE STORAGE / IMPOUND

Vehicles shall not be seized on tribal lands pursuant to any authority section that is based upon a violation of a civil-regulatory vehicle code section. For example, suspended or unlicensed driver, expired vehicle registration, or illegal handicapped parking are not grounds for lawful vehicle storage. Vehicles stored for other reasons (e.g. evidence, road hazard, driver arrested) shall be processed, towed, and stored as any other.

### PARKING ENFORCEMENT

Legal differences exist regarding the classification of land possessed and used by tribes (e.g. Tribal land or Fee land). Therefore, parking enforcement should not be conducted by Sheriff's Office members on tribal lands unless the Sheriff's Office member has determined the legal status of the relevant land. If serious parking violations persist, Sheriff's Office personnel should seek the assistance of tribal police, security personnel, or ask the TLU for direction on future enforcement.

---

Copyright Lexipol, LLC 2025/07/29, All Rights Reserved.
Published with permission by Riverside County Sheriff's Department

# Riverside County Sheriff's Department

Riverside County Sheriff's Department Standards Manual (DSM)

## *Policing Tribal Lands*

### CIVIL MATTERS

In general, Sheriff's Office personnel should not play a role in civil disputes on tribal lands such as landlord/tenant disputes, evictions from a reservation or repossessions, unless acting in a peace-keeping role. Regulatory laws related to such matters do not apply on tribal lands.

### TRIBAL ORDINANCES AND LAWS

Sheriff's personnel shall not enforce any tribal ordinances or laws unless specifically given that authority by a Memorandum of Understanding between the Sheriff and the tribe.

### CASINO GAMBLING VIOLATIONS

Unless the elements of a state-level 'criminal prohibitive' law exist, Sheriff's personnel shall not enforce the rules or protocols applicable to casino gaming but should instead keep the peace and allow casino or tribal personnel to investigate and resolve the matter.

### MEMORANDUMS OF UNDERSTANDING (MOU)

While on tribal lands, Sheriff's Office members shall comply with any agreements, contracts, or Memorandums of Understanding that relate to the patrol function at their specific station or assignment.

### 407.3.2   MARIJUANA ENFORCEMENT
Enforcement of state-level laws regarding the illegal possession or sale of marijuana apply on tribal lands and can be enforced as they would anywhere else in the county.

If patrol personnel discover large-scale marijuana possession, sales, or cultivation on tribal land, they should contact the Special Investigations Bureau for direction as soon as possible.

### 407.3.3   CORONER AUTHORITY
All functions and authorities of the Coroner are the same on tribal lands, with the exception of the processing of certain human remains if believed or found to be Native American. Native American remains, funerary objects, and sacred objects found on federal or tribal lands are protected under the Native American Graves Protection and Repatriation Act (NAGPRA) (25 USC 3001 et seq). See DSM 345 for specific procedures and limitations in place when Native American remains are discovered on and off tribal lands.

### 407.3.4   UNATTENDED DEATHS
The Coroner retains all control of bodies on a reservation regardless of the cause or manner of death or tribal membership status of the decedent. Deputies shall respond and process all unattended death incidents according to existing protocols.

Indian Tribes may be allowed to retain possession of a body only after the Coroner has agreed to release it. They then may cremate or bury the body on Reservation land with a properly issued permit from the Health Department.

Copyright Lexipol, LLC 2025/07/29, All Rights Reserved.
Published with permission by Riverside County Sheriff's Department

# Riverside County Sheriff's Department
### Riverside County Sheriff's Department Standards Manual (DSM)

*Policing Tribal Lands*

---

Patrol personnel should consult with the Coroner's office and with the Tribal Liaison Unit to help resolve any disputes or questions during unattended death investigations.

407.3.5 INVESTIGATIONS
All laws and constitutional rights regarding search and seizure, laws of arrest, and Miranda advisement apply on tribal lands.

Investigators responding to tribal lands for a protracted investigation shall notify the Sheriff's Office Tribal Liaison Unit as soon as possible to inform them about the location and circumstances, and to ask for their assistance, if needed.

The passage of PL 83-280 did not diminish a tribe's ability or right to pass and enforce their own laws on their lands. In some instances, concurrent jurisdiction exists between the federal, state and tribal governments. Consideration must be given to what crime has been committed and if the offender is Indian or non-Indian, when determining exclusive or concurrent jurisdictions for prosecution purposes.

## 407.4  PROTECTION ORDERS
Protection orders can be issued by State Courts, US Territory Courts, and Indian Tribal Courts. The 'Full Faith and Credit' portion of the Violence Against Women Act declares that all states, U.S. Territories and Indian Tribes shall honor each other's protection orders as if they were their own. The following outlines what is and is not required for a Tribal Court Order to be lawfully served or enforced:

If issued by a Tribal Court, the order need not;

1. have a certification or original signature affixed to the order.
2. have a "court stamp"
3. be registered or filed in the victim or respondent's current location.

If issued by a Tribal Court, the order must;

1. have the name of the respondent and the petitioner printed;
2. have a valid date;
3. be issued by a court with jurisdiction over the involved parties;
4. have been issued after the respondent had an opportunity to contest the order;
   (a) Family Code section 6403(b) allows, in the absence of a protection order, a peace officer to consider other factors that may establish probable cause to believe that a valid order exists.

407.4.1 ENFORCEMENT OF PROTECTION ORDERS
A Sheriff's Office member assigned to a call alleging a violation of a domestic violence protection order issued by the state court, a US territory, or tribal court shall, when presented with probable cause of the violation;

---

Copyright Lexipol, LLC 2025/07/29, All Rights Reserved.
Published with permission by Riverside County Sheriff's Department

# Riverside County Sheriff's Department
Riverside County Sheriff's Department Standards Manual (DSM)

*Policing Tribal Lands*

---

1. Shall make a lawful arrest of the person without a warrant and take that person into custody whether or not the violation occurred in the peace officer's presence (Penal Code 836(c)(1).

### 407.4.2  UNSERVED PROTECTION ORDERS
If a law enforcement officer of this state determines that an otherwise valid foreign protection order cannot be enforced because the respondent has not been notified or served with the order, the officer shall inform the respondent of the order, make a reasonable effort to serve the order upon the respondent, and allow the respondent a reasonable opportunity to comply with the order before enforcing the order. Verbal notice of the terms of the order is sufficient notice for the purposes of this section (Family Code 6403(c)).

### 407.5  TRIBAL LIAISON UNIT (TLU)
In 2008, the Sheriff's Office established a dedicated Tribal Liaison Unit (TLU) to act in the interests of both the Sheriff's Offices' mission and the service needs of all twelve tribes. The TLU's primary functions include training both Sheriff's Office personnel and tribal residents, engagement with various groups and committees managing Indian/Government affairs, and as a liaison to strengthen law enforcement's relationship with Indian Tribes in Riverside County.

Because this policy cannot cover every possible circumstance, the TLU is available to assist and respond, if needed, to help facilitate a quality response and investigation by our Sheriff's personnel. TLU contact information is available within the SOI screen "SOI Tribal" or by email to TLU@Riversidesheriff.org.

### 407.5.1  TRIBAL LIAISON NOTIFICATIONS
Sheriff's Office members are encouraged to contact the TLU for any questions regarding PL 83-280 or about other aspects of the Sheriff's role and authority on tribal lands. Sheriff's Office members shall notify the Tribal Liaison Unit as soon as possible in the following circumstances:

1. Pursuits on a reservation
2. Deaths
3. Discovery of Human Remains
4. Service of Search Warrants
5. Any other major incident that will likely generate an inquiry by Tribal government

---

Copyright Lexipol, LLC 2025/07/29, All Rights Reserved.
Published with permission by Riverside County Sheriff's
Department

# EXHIBIT E
## "REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL"

# EXHIBIT F

**burke**
BURKE, WILLIAMS & SORENSEN, LLP

444 South Flower Street - 40th Floor
Los Angeles, California 90071-2942
voice 213.236.0600 - fax 213.236.2700
www.bwslaw.com

Direct No.: 213.236.2719
Our File No.: 08695-0006
noyster@bwslaw.com

September 17, 2025

***VIA E-MAIL ONLY***

Gregory J. Morrow
Morrow Law Group Inc.
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
gregory.j.morrow@hotmail.com

     Re:    <u>Preston McCormick et al v. County of Riverside et al</u>
            USDC, Case No. 5:23-cv-02569-SSS-SP

Dear Mr. Morrow:

Let this serve to supplement our ongoing Local Rule 7-3 meet and confer regarding Defendants' intent to file a motion for summary judgment. I propose we conduct a telephone call on **Friday, September 19, 2025, at 10:00 a.m.** to continue our meet and confer efforts. If that time does not work, please provide me with alternative availability such that the Local Rule 7-3 conference will be completed this week.

**A.    <u>Procedural History and Plaintiffs' 100 *Stipulated* Admissions</u>**

As you may recall, on January 14, 2025, Defendants served eight sets of Discovery on Plaintiffs. Two of these eight sets consisted of requests for admission propounded by Jose Trujillo Villasenor and County of Riverside on Plaintiffs Preston McCormick and East Wind AG, respectively. These requests contained a total of 132 requests for admissions. Plaintiffs had failed to respond to all eight sets of discovery by the February 13, 2025 deadline and all 132 requests were deemed admitted under the Federal Rules of Civil Procedure.

On April 3, 2025, Plaintiffs subsequently identified thirty-two admissions that they would be seeking to withdraw.

On April 26, 2025, to resolve procedural issues regarding the timing and scope of Plaintiffs' motion to withdraw the thirty-two (32) specific deemed admissions [Dkt. 53], the Parties entered into a stipulation [Dkt. 52]. In particular, Plaintiffs voluntarily *stipulated* that the remaining one hundred (100) deemed admissions, which

4921-9572-3316



Gregory J. Morrow, Esq.
McCormick v. County of Riverside
September 17, 2025
Page 2

substantively cover all of Plaintiffs' claims, *"shall remain deemed admitted."* Attached to this letter as **Exhibits A and B** are documents that highlight Plaintiffs' *stipulated* deemed admissions. Accordingly, Defendants are entitled to summary judgment on all of Plaintiffs claims on the basis of the one hundred *stipulated* deemed admissions, which substantively cover all of Plaintiffs' claims, and other evidence as outlined below.

**B.    Brief Overview of Undisputed Facts**

On or about December 15, 2020, approximately two years prior to the Incident that is the subject of this litigation, a valid warrant was served at 91521 Avenue 68, Mecca, CA 92254 (the "Subject Property") with respect to illegal marijuana grow operations. During execution of this warrant, approximately 41,331 marijuana plants were found at the Subject Property.

Throughout the next approximately one and a half years, the Riverside County Sheriff's Department served and executed valid warrants on multiple other properties where marijuana or marijuana cultivation related items were discovered. During service of one of these warrants, an individual named Wing Chik was arrested. Wing Chik informed the Riverside County Sheriff's Department that Plaintiff Preston McCormick was now in charge of the marijuana cultivation operation that was still continuing at the Subject Property. The Riverside Sheriff's Department diligently investigated, conducted surveillance, and corroborated the information provided by Wing Chik.

The ongoing investigation revealed that Plaintiffs were illegally cultivating marijuana without a valid license or permit from the State of California. As such, Plaintiffs were in violation of multiple criminal offenses, including but not limited to violations of various provisions in the California Health and Safety Code. In part, Plaintiffs were cultivating more than six marijuana plants on the land of a private residence, as well as illegally selling, distributing, and/or transporting marijuana to non-tribal individuals off of Tribal lands.

Throughout the duration of their investigation, Investigator Villasenor and Investigator Barros diligently inquired about whether the Subject Property was land held in trust for the Torres Martinez Desert Cahuilla Indians (the "Tribe") or whether it remained fee land like it was when the first search warrant was executed in December 2020. As part of their efforts, Villasenor had contacted agent Greg Guiza at the Bureau of Indian Affairs ("BIA") who informed Villasenor that he would speak to a "BIA realtor" and get back to Villasenor. Subsequently, Guiza of the BIA informed Villasenor that a BIA "realty specialist" had indicated that the Subject Property "is not on trust land" and "must be privately owned." Further, Guiza of the BIA informed Villasenor that his "boss

4921-9572-3316

**BURKE, WILLIAMS & SORENSEN, LLP**

Gregory J. Morrow, Esq.
McCormick v. County of Riverside
September 17, 2025
Page 3

[at the BIA] has to decline [their] participation. The non-trust land that this particular grow [the Subject Property] is on is the reason." Additionally, Investigator Villasenor had also spoken with Gilbert Espinoza, who is a Land Use Tech II in the Riverside Planning Department. While Tech Espinoza does not recall a specific conversation with Investigator Villasenor back in October 2022, the Riverside County Parcel Report for the Subject Property, which Tech Espinoza would have referred to in responding to Investigator Villasenor's inquiry, further indicates that the Subject Property is *not* on tribal land. Investigator Barros similarly made repeated inquiries regarding the status of the land during the investigation and up to the execution of the warrant.

While Inv. Villasenor and Inv. Barros diligently inquired into whether the land was owned by the Tribe or held in trust for the Tribe, the ownership status of the land is irrelevant where the warrant was enforceable on both Tribal and non-tribal land as a matter of law, as discussed in detail in Section C(1) below.

The Riverside County Sheriff's Department obtained a valid warrant that was signed by a judge regarding the Subject Property. On December 7, 2022, the Riverside County Sheriff's Department executed the valid warrant in accordance with the warrant's terms. Finally, the Riverside County Sheriff's Department never requested that the water supply to the Subject Property be turned off at any time.

**C.**     **Defendants Are Entitled To Summary Judgment on All of Plaintiffs' Claims**

Defendants are entitled to summary judgment on all of Plaintiffs' claims for the foregoing reasons. First, Defendants are entitled to summary judgment on all of Plaintiffs' claims where the existence of one hundred (100) *stipulated* deemed admissions, which substantively cover of all of Plaintiffs' claims, and Defendants intend to move for summary judgment based on all of these stipulated deemed admissions. *See* Attached **Exhibits A and B**. Second, assuming *arguendo* that there were no deemed admissions, Defendants are entitled to summary judgment on all of Plaintiffs' claims where the uncontroverted facts establish that Plaintiffs' claims fail as a matter of law.

**1.**     **42 U.S.C. § 1983 *Monell* Customs, Practices, Policies claim against Defendant County of Riverside (also sued as Riverside Sheriff's Department)**

In *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the Supreme Court held that to maintain a claim against a governmental entity for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must establish that the governmental

4921-9572-3316



Gregory J. Morrow, Esq.
<u>McCormick v. County of Riverside</u>
September 17, 2025
Page 4

entity had a "custom, practice, and policy" that led to a violation of the plaintiff's civil rights.  Id. at 694.  The Ninth Circuit Model Jury Instructions identify four essential elements that the plaintiff must establish to succeed on a *Monell* claim: (1) the deputies acted under color of law; (2) the actions of the deputies deprived McCormick or East Wind AG of their particular rights under the United States Constitution; (3) the deputies acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the County of Riverside; and, (4) the County of Riverside's policy, practice or custom caused (i.e. was the moving force behind) the deprivation of McCormick's or East Wind AG's rights.  See 9th Cir. Model Jury Instr. 9.5 (2017); see also *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).  There is no such evidence here.

Summary judgment is appropriate on Plaintiffs' first claim for many reasons.

First, Plaintiffs' 100 *stipulated* deemed admissions foreclose all liability. Plaintiff McCormick's relevant *stipulated* deemed admissions include but are not limited to: RFA 22, admitting that *Plaintiff McCormick has no evidence to support his allegations that the Riverside County Sheriff's Department has policies, customs, or practices that result in constitutional violations*; RFAs 7-8, admitting that Van Wagenen, Villasenor, and Chad Bianco did not breach a duty owed to McCormick, if any; RFAs 17-18, admitting that McCormick was comparatively and contributorily negligent in causing his alleged damages; RFAs 19-20, admitting that the Riverside Sheriff's Department ("RCSD") were not reckless or negligent with filing the Warrant application and did not intentionally list the Subject Property as fee land on the Warrant; RFAs 23-41, 45, 46-50, 54-57, which admit, *inter alia*, that McCormick was in violation of multiple criminal offenses, that the Warrant was valid and enforceable as a matter of law at the Subject Property, and that McCormick did not have a valid permit from the State of California or the Tribe to cultivate marijuana on the Subject Property; RFAs 68-69 admitting that the RCSD and its employees were not responsible in any way for the fire that occurred on the Subject Property, and RFA 70, admitting that McCormick did not suffer any economic damages.

Second, Plaintiff East Wind AG's relevant *stipulated* admissions include but are not limited to, RFA 20, *admitting that the Riverside Sheriff's Department, its employees, and its agents did not violate Plaintiff East Wind AG's constitutional rights*; RFAs 4-10, admitting that Defendants Riverside County, Villasenor, Chad Bianco, Van Wagenen did not breach a duty owed, if any and that a breach of duty, if any, did not cause East Wind AG's alleged damages; RFAs 16-17, admitting that East Wind AG was comparatively and contributorily negligence in causing its alleged



Gregory J. Morrow, Esq.
<u>McCormick v. County of Riverside</u>
September 17, 2025
Page 5

damages; RFAs 18-19, admitting that the RCSD and its employees were not negligent or reckless in filing the Warrant application and that they did not intentionally list the Subject Property as fee land on the Warrant; RFAs 22-37, 44-50, 54-55, admitting, *inter alia*, that East Wind AG was in violation of multiple criminal offenses, did not have a valid permit from the State of California or the Tribe to cultivate marijuana on the Subject Property, and that enforcement of the Warrant was lawful, RFAs 60-61, admitting that the RCSD and its employees were not responsible for the fire that occurred on the Subject Property, and RFA 70, admitting that East Wind AG did not suffer economic damages.

Third, even if there were no ***stipulated*** deemed admissions, Defendants are entitled to summary judgment on this claim where there is no evidence of a Constitutional Violation, as discussed in depth below. Further, Plaintiffs have not presented any evidence of a specific custom, practice, or policy that caused a deprivation of Constitutional rights. What is more, is that even if Plaintiffs had presented evidence of a specific custom, practice or policy at the County (which Plaintiffs have not), Plaintiffs' claim would still fail because there is no evidence of a "direct causal link" between a custom, practice or policy and any deprivation of Plaintiffs' rights. *Wallis v. Spencer*, 202 F.3d 1126, 1143 (9th Cir. 2000).

Fourth, the Warrant was enforceable on the Subject Property whether or not the Subject Property was on "sovereign" land for the following reasons: (1) Plaintiffs were in violation of criminal offenses, including but not limited to the California Health and Safety Code – criminal offenses "have the same force and effect" on "sovereign" land pursuant to Public Law 280; and (2) assuming *arguendo* that there were no criminal offenses, state and local regulations are enforceable on "sovereign" land under the ***Bracker*** test articulated by the United States Supreme Court.

> a.    <u>California's Criminal Laws Are Enforceable on "Sovereign / Tribal Land" Pursuant to Public Law 280</u>

"When a State seeks to enforce a law within an Indian reservation under the authority of Pub.L. 280, it must be determined whether the law is criminal in nature, and thus fully applicable to the reservation under § 2…" *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 208, 107 S. Ct. 1083, 1088, 94 L. Ed. 2d 244 (1987) (superseded by statute on other grounds, see *United States v. E.C. Invs., Inc.*, 77 F.3d 327, 330 (9th Cir. 1996) (IGRA supersedes Public Law 280 ***with respect to Class III gaming*** conducted without a Tribal–State compact). "California's 'criminal laws ... ***have the same force and effect' within tribal lands in the state***." *Cordova v. Mendocino Cnty. Sheriff's Off.*, No. 23-CV-03830-RFL, 2024 WL 1090012, at *1 (N.D. Cal. Feb. 2,



Gregory J. Morrow, Esq.
McCormick v. County of Riverside
September 17, 2025
Page 6

2024), appeal dismissed, No. 24-2177, 2024 WL 3325701 (9th Cir. Apr. 19, 2024) (emphasis added).

The "criminal/prohibitory" versus "civil/regulatory" distinction was set out by the Court in *Cabazon* as follows: "[I]f the intent of a state law is generally to prohibit certain conduct, it falls within Pub. L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Publ. L. 280 does not authorize its enforcement on an Indian reservation …***The shorthand test is whether the conduct at issue violates the State's public policy***." See *California v. Cabazon Band of Mission Indians*, 107 S. Ct. 1083, 1088 (1987) (emphasis added).

Here, assuming *arguendo*, even if the Subject Property was properly recorded as Tribal or "sovereign" land, which it was not, the uncontroverted evidence shows that McCormick and East Wind AG were in violation of multiple criminal offenses, which authorized service of the Warrant on "sovereign / Tribal land" pursuant to Public Law 280. Further, McCormick and East Wind AG were in violation of multiple criminal offenses of the California Health and Safety Code, including but not limited to: possession (§ 11357), synthetic cannabinoid compound or derivative prohibited sale, and dispensing (§ 11357.5), planting, harvesting, or processing (§ 11358), possession for sale (§ 11359), unlawful transportation, importation, sale, or gift (§ 11360), adults employing or selling to minors, minors under or over 14 years of age, punishments (§ 11361), drug education and counseling requirements (§ 11361.1), destruction of arrest and conviction records (§ 11361.5), accuracy relevancy, timeliness, and completeness of record subject to destruction (§ 11361.7), recall or dismissal of sentence (§ 11361.8), criminal history information review by department (§ 11361.9), possession of cannabis by persons 21 years of age or older (§ 11362.1), personal cultivation of cannabis (§ 11362.2), prohibited smoking, ingesting, possession, or manufacture of cannabis (§ 11362.3), penalties for violations (§ 11362.4), and medical use (§ 11362.5). See California Health and Safety Code, Article 2, Cannabis. If the law "is criminal in nature, ***[it is] fully applicable to the reservation under § 2***…" *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 208, 107 S. Ct. 1083, 1088, 94 L. Ed. 2d 244 (1987)

Thus, service of the Warrant at the Subject Property was valid pursuant to Public Law 280.

4921-9572-3316



BURKE, WILLIAMS & SORENSEN, LLP

Gregory J. Morrow, Esq.
McCormick v. County of Riverside
September 17, 2025
Page 7

        b.        **California State and Local Marijuana Regulations Are Enforceable on "Sovereign / Tribal Land" under *Bracker***

"There is no rigid rule by which to resolve the question whether a particular state law may be applied to an Indian reservation or to tribal members." *White Mountain Apache Tribe v. Bracker*, 100 S. Ct. 2578, 2583 (1980) "The validity of the state regulation directed to on-reservation activities by nonmembers, as reflected in *Bracker*, is judged by a fact-specific 'particularized inquiry into the nature of the state, federal, and tribal interests at stake[.]'" See § 5:18. State regulation of nonmembers— Bracker interest-balancing standards, American Indian Law Deskbook § 5:18

"This inquiry is not dependent on mechanical or absolute conceptions of state or tribal sovereignty, but has called for a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry **designed to determine whether, in the specific context, the exercise of state authority would violate federal law**." *White Mountain Apache Tribe v. Bracker*, 100 S. Ct. 2578, 2583 (1980) **"[A]pplicable regulatory interest of the State must be given weight…and "automatic exemptions 'as a matter of constitutional law' " are unusual**." Id. at 2584.

Here, even if the Subject Property had been properly recorded as Tribal land, which it was not, and assuming that McCormick and East Wind AG were not in violation of multiple criminal offenses, which they were, service of the Warrant was lawful under *Bracker*. First, the State's interests in regulating marijuana are high where the State of California has enacted a comprehensive regulatory system to control marijuana cultivation and use. Indeed, California has created the Department of Cannabis Control ("DCC") which states that the cannabis industry is strictly regulated to ensure "businesses operate safely," "products are contaminant-free and labeled to inform purchasers," and "Cannabis is kept away from children." See Department of Cannabis Control, https://cannabis.ca.gov/cannabis-laws/laws-and-regulations/.

Moreover, the State of California has enacted the Medicinal and Adult Use Cannabis Regulation and Safety Act ("MAUCRSA"). The MAUCRSA is intended to "establish a comprehensive system to control and regulate the cultivation, distribution, transport, storage, manufacturing, processing, and sale of both of the following: (1) Medicinal cannabis and medicinal cannabis products for patients with valid physician's recommendations; and (2) Adult-use cannabis and adult-use cannabis products for adults 21 years of age and over and cannabis products intended for use on, or consumption by, animals." Cal. Bus. & Prof. Code § 26000 *et seq*. This division sets forth the power and duties of the state agencies responsible for controlling and regulating the commercial medicinal and adult-use cannabis industry.



Gregory J. Morrow, Esq.
<u>McCormick v. County of Riverside</u>
September 17, 2025
Page 8

Further, this division specifically grants authority to the DCC. The DCC "has the power, duty, purpose, responsibility, and jurisdiction to regulate commercial cannabis activity as provided in this division." Cal. Bus. & Prof. Code § 26000 *et seq*. "The protection of the public shall be the highest priority for the department in exercising licensing, regulatory, and disciplinary functions under this division. ***Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount***. Cal. Bus. & Prof. Code § 26011.5 (emphasis added).

Additionally, the exercise of state authority in serving the Warrant at the Subject Property and preventing unlawful cultivation of marijuana would not violate federal law where federal law prohibits marijuana entirely. Indeed, preventing cultivation of marijuana furthers the Federal Government's interests where marijuana is entirely prohibited at the Federal level.

Thus, service of the Warrant at the Subject Property was lawful under *Bracker*. Therefore, Defendants are entitled to summary judgment on Plaintiffs' first claim for relief.

  **2.  42 U.S.C. § 1983 Supervisory Liability and Failure to Train claim against Defendants Van Wagenen, Bianco, and Villasenor**

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

Plaintiffs must demonstrate "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). "'The critical question is whether it was reasonably foreseeable [to the supervisor] that the actions' of his or her subordinates would lead to the violations of the plaintiff's constitutional rights which are alleged to have occurred." *Greer v. Cty. of San Diego*, 726 F. Supp. 3d 1058, 1080 (S.D. Cal. 2023).

Qualified immunity shields Defendants from liability.  In this regard, the individual County Defendants are "protected from liability for civil damages insofar as [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The doctrine of qualified immunity balances "competing values: not only the importance of a damages remedy to protect the rights of citizens . . . but also 'the need

4921-9572-3316

burke
BURKE, WILLIAMS & SORENSEN, LLP

Gregory J. Morrow, Esq.
McCormick v. County of Riverside
September 17, 2025
Page 9

to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" Id. at 807; see also Morales v. Fry, 873 F.3d 817, 822 (9th Cir. 2017) (noting that qualified immunity balances "the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes.").

Because Defendants have asserted that they are entitled to qualified immunity, the "burden is on the plaintiff to prove two elements: (1) that the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct." Isayeva v. Sacramento Sheriff's Dep't, 872 F.3d 938, 946 (9th Cir. 2017).

Here, summary judgment is appropriate on Plaintiffs' second claim for many reasons. First, Plaintiffs' 100 *stipulated* deemed admissions foreclose all liability. As discussed in detail in Section 1 *supra*, Defendants are entitled to summary judgment based on Plaintiffs' 100 *stipulated* deemed admissions.

Second, as discussed in detail in Sections 1(a)-(b) above, the uncontroverted facts establish that there was no constitutional deprivation where the Warrant was valid and enforceable as a matter of law.

Third, assuming *arguendo* that there was a constitutional violation, Plaintiffs cannot prove that there was a causal connection between any supervisory Defendant and the alleged constitutional violation. "'The critical question is whether it was reasonably foreseeable [to the supervisor] that the actions' of his or her subordinates would lead to the violations of the plaintiff's constitutional rights which are alleged to have occurred." Greer v. Cty. of San Diego, 726 F. Supp. 3d 1058, 1080 (S.D. Cal. 2023). The uncontroverted facts establish, and Plaintiffs do not dispute, that the Warrant was valid, signed by a judge, and enforced according to its terms. Accordingly, it was not "reasonably foreseeable" that any "subordinate's actions" would lead to a violation of McCormick's or East Wind AG's constitutional rights.

Fourth, the individual Defendants are entitled to qualified immunity. The predicate element for any claim under 42 U.S.C. § 1983 is proof that a constitutional violation occurred. As demonstrated above, Plaintiffs cannot establish that. Still further, qualified immunity shields Defendants from liability. In this regard, the individual County Defendants are "protected from liability for civil damages insofar as [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The doctrine of qualified immunity balances "competing values: not only the importance of a

4921-9572-3316

Gregory J. Morrow, Esq.
<u>McCormick v. County of Riverside</u>
September 17, 2025
Page 10

damages remedy to protect the rights of citizens . . . but also 'the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" Id. at 807; see also *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017) (noting that qualified immunity balances "the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes."). Indeed, as discussed above, Public law 280 makes it clear that California's criminal laws, which Plaintiffs were in violation of, are enforceable on "Sovereign / Tribal land." Accordingly, a reasonable person would not have known that service of the Warrant would violate any constitutional rights. Moreover, even under *Bracker*, a reasonable person would not have known that executing the Warrant at the Subject Property would lead to a constitutional violation, when the United States Supreme Court expressly states: "***There is no rigid rule by which to resolve the question whether a particular state law may be applied to an Indian reservation or to tribal members.***" *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142, 100 S. Ct. 2578, 2583, 65 L. Ed. 2d 665 (1980)

Thus, all individual Defendants are entitled to qualified immunity ***for all of Plaintiffs' claims with allegations of Constitutional violations***. Therefore, Defendants are entitled to summary judgment on Plaintiffs' second claim for relief.

3.    **42 U.S.C. § 1983 Failure to Protect From Harm claim against all Defendants**

To prove a failure to harm claim Plaintiffs must show that (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries. See *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily "turn on the 'facts and circumstances of each particular case.'" <u>Id</u>. Plaintiff "must demonstrate that the defendant knew of and disregarded an excessive risk to his safety: 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Aguirre v. Cnty. of Sacramento*, No. 2:12-CV-2165 TLN KJN, 2014 WL 996271, at 4 (E.D. Cal. Mar. 13, 2014), report and recommendation adopted, No. 2:12-

4921-9572-3316

Gregory J. Morrow, Esq.
McCormick v. County of Riverside
September 17, 2025
Page 11

CV-2165 TLN KJN, 2014 WL 1377969 (E.D. Cal. Apr. 8, 2014) *citing Farmer v. Brennan*, 511 U.S. 825, 829, 114 S. Ct. (1994). A mere lack of due care does not violate the Fourteenth Amendment. See *Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (holding that the Due Process clause is not violated by negligence). A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro, supra* at 1071.

Defendants are entitled to summary judgment on Plaintiffs' third claim for relief for numerous reasons. As an initial matter, in addition to Plaintiffs' stipulated RFAs discussed above in Section 1, Plaintiff McCormick also stipulated to the following deemed admission: RFA 62, admitting that McCormick has no evidence to support his failure to protect from harm claim.

Second, as discussed in more detail above, each of the Defendants acted reasonably in obtaining and executing the Warrant and no defendant acted with deliberate indifference. Indeed, the uncontroverted facts establish that a diligent and reasonable investigation was conducted prior to obtaining the Warrant, the Warrant was valid and signed by a judge (which Plaintiffs do not dispute), the Warrant was executed in accordance with its terms (which Plaintiffs do not dispute), and service of the Warrant was lawful.

Finally, as set forth above, all individual Defendants are entitled to qualified immunity. Thus, Defendants are entitled to summary judgment on Plaintiffs' third claim for relief.

4.      **42 U.S.C. § 1983 Failure to Provide Medical Care against all Defendants**

Pretrial detainees alleging that jail officials failed to provide constitutionally adequate medical care must show: (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined (including a decision with respect to medical treatment); (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries. See *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021). To satisfy the third element, Plaintiffs must show that Defendants' actions were "objectively unreasonable," which requires a showing of "more than



Gregory J. Morrow, Esq.
<u>McCormick v. County of Riverside</u>
September 17, 2025
Page 12

negligence but less than subjective intent—something akin to reckless disregard." <u>Id</u>. "In addition, where delay in treatment is alleged, "the delay must have caused substantial harm." *Shapley v. Nevada Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985); see also *Hertig v. Cambra*, No. 1:04-CV-5633-ROS, 2009 WL 62126, at 4 (E.D. Cal. Jan. 8, 2009) ("[A] delay in receiving medical care, without more, is insufficient to state a claim against a jailor for deliberate indifference unless the plaintiff can show that the delay in treatment harmed him.")

Defendants are entitled to summary judgment on Plaintiffs' fourth claim for relief for many reasons. First, as discussed above in Section 1, Plaintiffs' 100 *stipulated* deemed admission foreclose all liability.

Second, as discussed above, the uncontroverted facts establish that Defendants' actions were reasonable and that no Defendant acted with "reckless disregard" or with a "subjective intent" to cause McCormick's alleged injuries.

Third, as previously noted, each of the individual Defendants are entitled to qualified immunity. Thus, Defendants are entitled to summary judgment on Plaintiffs' fourth claim for relief.

### 5. Negligence claim against all Defendants

To establish a claim for negligence, a plaintiff must establish: (1) the defendant had a legal duty to use due care, (2) the defendant breached such duty, and (3) the breach was the proximate or legal cause of the resulting injury. *Ladd v. Cty. of San Matero*, 12 Cal. 4th 913, 917 (1996).

"[T]here is no common law tort liability for public entities in California." *Torres v. Dep't of Corr. & Rehab.*, 217 Cal. App. 4th 844, 850, 158 Cal. Rptr. 3d 876, 881 (2013) Sovereign immunity is the rule and a public entity may be held liable only if there is a statute subjecting it to civil liability. Id. "A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815(a). "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Cal. Gov't Code § 815.2(b) "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2

4921-9572-3316

Gregory J. Morrow, Esq.
<u>McCormick v. County of Riverside</u>
September 17, 2025
Page 13

Defendants are entitled to summary judgment on Plaintiffs' fifth claim for relief for multiple reasons. First, as discussed above, Plaintiffs' 100 *stipulated* admissions foreclose all liability.

Second, it is clearly evident that pursuant to the California Government Code, the County and individual County Defendants are immune. "A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815(a). "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Cal. Gov't Code § 815.2(b) "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2 Indeed, the uncontroverted facts establish that Villasenor had discretion vested in him to conduct the investigation leading up to obtaining the Warrant.

Third, even if Van Wagenen and Chad Bianco had no immunity for discretion vested in them, which they do, Van Wagenen and Chad Bianco had no participation in any manner or form regarding the investigation and the Incident. Further, neither Van Wagenen nor Chad Bianco ever interacted with or communicated with McCormick in any respect.

Fourth, all Defendants acted reasonably and there were no duties breached. As discussed above, the Warrant was valid (which Plaintiffs do not dispute), signed by a judge (which Plaintiffs do not dispute), and executed in accordance with its terms (which Plaintiffs do not dispute). Moreover, as discussed above, service of the Warrant was lawful. Thus, Defendants are entitled to summary judgment on Plaintiffs' fifth claim for relief.

**6.      Battery against all Defendants**

The elements of a cause of action for battery are: (1) the defendant touched the plaintiff, or caused the plaintiff to be touched, with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by the defendant's conduct; and (4) a reasonable person in the plaintiff's position would have been offended by the touching. *Carlsen v. Koivumaki*, 227 Cal. App. 4th 879, 890, 174 Cal. Rptr. 3d 339, 351 (2014) "A state law battery claim is a counterpart to a federal claim of excessive use of force. In both, a plaintiff must prove



Gregory J. Morrow, Esq.
<u>McCormick v. County of Riverside</u>
September 17, 2025
Page 14

that the peace officer's use of force was unreasonable." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527, 89 Cal. Rptr. 3d 801, 811 (2009)

Here, Defendants are entitled to summary judgment on Plaintiffs' sixth claim for relief for many reasons. First, Plaintiffs' *stipulated* deemed admissions foreclose all liability. In addition to the stipulated RFAs discussed in Section 1 above, Plaintiff McCormick stipulated to the following admission: RFA 63, admitting that McCormick has no evidence to support his claim for battery.

Second, as discussed above, Defendants' actions were reasonable. The uncontroverted evidence establishes that deputies did not use excessive force. . .

Third, as discussed above in Section 5, the County and individual defendants are immune from tort liability.

Finally, even if Van Wagenen and Chad Bianco had no immunity for discretion vested in them, which they do, Van Wagenen and Chad Bianco had absolutely no participation in any manner or form regarding the investigation and the Incident. What is more, is that Van Wagenen and Chad Bianco have never interacted with or communicated with McCormick in any manner or form. Thus, Defendants are entitled to summary judgment on Plaintiffs' sixth claim for relief.

### 7.    Assault against all Defendants

Plaintiff McCormick is also asserting a claim for assault. "The elements of a cause of action for assault are: (1) the defendant acted with intent to cause harmful or offensive contact, or threatened to touch the plaintiff in a harmful or offensive manner; (2) the plaintiff reasonably believed he was about to be touched in a harmful or offensive manner or it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm." *Carlsen v. Koivumaki*, 227 Cal. App. 4th 879, 890, 174 Cal. Rptr. 3d 339, 351 (2014) "[T]he standard for proving [assault] is the same standard applied to section 1983 actions. (See *Edson v. City of Anaheim* (1998) 63 Cal.App.4th 1269, 1274-1275, 74 Cal.Rptr.2d 614 (both § 1983 actions and state law assault and battery by a peace officer claims *require plaintiff to demonstrate the unreasonableness of the force used*].) *Murchison v. Cnty. of Tehama*, 69 Cal. App. 5th 867, 898, 284 Cal. Rptr. 3d 742, 767 (2021) (brackets and parenthesis in original) (emphasis added).

**BURKE, WILLIAMS & SORENSEN, LLP**

Gregory J. Morrow, Esq.
McCormick v. County of Riverside
September 17, 2025
Page 15

Defendants are entitled to summary judgment on Plaintiffs' seventh claim for relief for multiple reasons. First, Plaintiffs' 100 *stipulated* deemed admissions foreclose all liability. In addition to Plaintiffs' stipulated deemed admission discussed above in Section 1, Plaintiff McCormick stipulated to the following deemed admission: RFA 64, admitting that McCormick has no evidence to support his claim for assault.

Second, as discussed above, Defendants acted reasonably in taking Plaintiff into custody and the uncontroverted evidence establishes that no unreasonable force was used against Plaintiff McCormick.

Third, as discussed above in Section 5, the County and individual defendants are immune from tort liability.

Fourth, as discussed above, even if Van Wagenen and Chad Bianco had no immunity for discretion vested in them, which they do, Van Wagenen and Chad Bianco had absolutely no participation in any manner or form regarding the investigation and the Incident. Further, neither Van Wagenen nor Chad Bianco ever interacted with or communicated with McCormick in any manner. Thus, Defendants are entitled to summary judgment on Plaintiffs' seventh claim for relief.

8. **Intentional Infliction of Emotional Distress claim against all Defendants**

"The elements of a cause of action for IIED are as follows: (1) defendant engaged in extreme and outrageous conduct (conduct so extreme as to exceed all bounds of decency in a civilized community) with the intent to cause, or with reckless disregard to the probability of causing, emotional distress; and (2) as a result, plaintiff suffered extreme or severe emotional distress." *Berry v. Frazier*, 90 Cal. App. 5th 1258, 1273, 307 Cal. Rptr. 3d 778, 793 (2023) (parenthesis in original).

Defendants are entitled to summary judgment on Plaintiffs' eighth claim for relief. First, Plaintiffs' 100 *stipulated* deemed admissions foreclose all liability. In addition to Plaintiffs' *stipulated* deemed admission discussed above in Section 1, Plaintiff McCormick stipulated to the following deemed admissions: RFA 65, admitting that McCormick has no evidence to support his claim for intentional infliction of emotional distress.

Second, the uncontroverted evidence establishes that all Defendants acted reasonably and that no action or omission by any Defendant was "extreme and

4921-9572-3316

**BURKE**
BURKE, WILLIAMS & SORENSEN, LLP

Gregory J. Morrow, Esq.
McCormick v. County of Riverside
September 17, 2025
Page 16

outrageous." As discussed above, the Warrant was valid (which Plaintiffs do not dispute), signed by a judge, and executed in accordance with its terms (which Plaintiffs do not dispute). Moreover, as discussed above, service of the Warrant was lawful.

Third, as discussed above in Section 5, the County and individual defendants are immune from tort liability.

Fourth, as discussed above, even if Van Wagenen and Chad Bianco had no immunity for discretion vested in them, which they do, Van Wagenen and Chad Bianco had absolutely no participation in any manner or form regarding the investigation and the Incident, nor did Van Wagenen and/or Chad Bianco ever interact or communicate with McCormick in any respect. Thus, Defendants are entitled to summary judgment on Plaintiffs' eighth claim for relief.

> **9.    Intentional Interference with Contractual Relations claim against All Defendants**

Plaintiffs are also asserting a cause of action for intentional interference with contractual relations. "To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148, 95 P.3d 513, 517 (2004)

Defendants are entitled to summary judgment on Plaintiffs' ninth claim for relief for many reasons. First, Plaintiffs' 100 *stipulated* deemed admission foreclose all liability. In addition to Plaintiffs' *stipulated* deemed admissions identified above in Section 1, Plaintiff McCormick stipulated to the following deemed admissions: RFAs 40-41, 58 admitting that Defendants did not intentionally interfere with McCormick's contractual relations. Further, East Wind AG stipulated to the following admissions: RFAs 38-39, and 56, admitting that Defendants County of Riverside and its employees did not intentionally interfere with McCormick's contractual relations.

Second, the uncontroverted evidence establishes that Defendants' actions were not "designed to induce a breach or disruption of [a] contractual relationship." Instead, Defendants' actions were clearly designed to enforce California's criminal and/or regulatory statutes regarding illegal marijuana cultivation and use in furtherance of the

4921-9572-3316

Gregory J. Morrow, Esq.
<u>McCormick v. County of Riverside</u>
September 17, 2025
Page 17


State of California's public policy interests. Moreover, Defendants' actions were based on a lengthy and diligent  investigation, a valid warrant signed by a judge and executed in accordance with its terms, and the execution  of the Warrant that was lawful.  Indeed, the actions of Defendants were intended to, and did, uphold the law, and were not intended to disrupt a "contract" between Plaintiffs and the Tribe of which Defendants had no knowledge.

Third, as discussed above in Section 5, the County and individual defendants are immune from tort liability.

Fourth, as discussed above, even if Van Wagenen and Chad Bianco had no immunity for discretion vested in them, which they do, Van Wagenen and Chad Bianco had absolutely no participation in any manner or form regarding the investigation and the Incident. What is more, is that Van Wagenen and Chad Bianco have never interacted with or communicated with McCormick in any manner or form. Thus, Defendants are entitled to summary judgment on Plaintiffs' ninth claim for relief.

## 10.    Negligent Interference with Prospective Economic Advantage claim against all Defendants

Plaintiffs will also fail to prevail in their claim for negligent interference with prospective economic advantage. "The elements of negligent interference with contract or prospective economic advantage are (1) the existence of a valid contractual relationship or other economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge (actual or construed) of the relationship; (3) the defendant's knowledge (actual or construed) that the relationship would be disrupted if the defendant failed to act with reasonable care; (4) the defendant's failure to act with reasonable care; (5) actual disruption of the relationship; and (6) resulting economic harm." *Nelson v. Tucker Ellis, LLP*, 48 Cal. App. 5th 827, 844, 262 Cal. Rptr. 3d 250, 264 (2020) (parenthesis in original).

Defendants are entitled to summary judgment on Plaintiffs' tenth claim for relief for many reasons. First, Plaintiffs' 100 *stipulated* deemed admission foreclose all liability. In addition to Plaintiffs' stipulated deemed admissions listed above in Section 1, Plaintiff McCormick stipulated to the following admissions: RFAs 60, 61, and 70, admitting that Defendants did not intentionally or negligently interfere with McCormick's prospective economic relations and that McCormick suffered no economic damages. Further, Plaintiff East Wind AG stipulated to the following admissions: RFAs 58, 59, and

**burke**
BURKE, WILLIAMS & SORENSEN, LLP

Gregory J. Morrow, Esq.
McCormick v. County of Riverside
September 17, 2025
Page 18

70, admitting that Defendants did not intentionally or negligently interfere with East Wind AG's prospective economic relations and that East Wind AG suffered no economic damages.

Second, as discussed above in Sections 1-9 *supra*, the uncontroverted evidence establishes that Defendants acted reasonably in obtaining and executing the valid Warrant (which Plaintiffs do not dispute), that service of the Warrant was lawful, and that Defendants did not breach any duties owed to Plaintiffs, if any.

Third, as discussed above in Section 5, the County and individual defendants are immune from tort liability.

Fourth, as discussed above, even if Van Wagenen and Chad Bianco had no immunity for discretion vested in them, which they do, Van Wagenen and Chad Bianco had absolutely no participation in any manner or form regarding the investigation and the Incident. What is more, is that Van Wagenen and Chad Bianco have never interacted with or communicated with McCormick in any manner or form. Thus, Defendants are entitled to summary judgment on Plaintiffs' tenth claim for relief.

## 11. Intentional Interference with Prospective Economic Advantage against all Defendants

As a matter of law, Plaintiffs cannot prevail in their claim for intentional interference with prospective economic advantage. "To prevail on a cause of action for intentional interference with prospective economic advantage in California, a plaintiff must plead and prove (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152, 95 P.3d 513, 520 (2004)

Defendants are entitled to summary judgment on Plaintiffs' eleventh claim for relief for many reasons. First, Plaintiffs' 100 *stipulated* deemed admission foreclose all liability. In addition to Plaintiffs' stipulated deemed admissions listed above in Section 1, Plaintiff McCormick stipulated to the following admissions: RFAs 60, 61, and 70, admitting that Defendants did not intentionally or negligently interfere with McCormick's prospective economic relations and that McCormick suffered no economic damages. Further, Plaintiff East Wind AG stipulated to the following admissions: RFAs 58, 59, and

4921-9572-3316

**burke**
BURKE, WILLIAMS & SORENSEN, LLP

Gregory J. Morrow, Esq.
<u>McCormick v. County of Riverside</u>
September 17, 2025
Page 19

70, admitting that Defendants did not intentionally or negligently interfere with East Wind AG's prospective economic relations and that East Wind AG suffered no economic damages.

Second, as discussed above in Sections 1-10 *supra*, the uncontroverted evidence establishes that Defendants acted reasonably in obtaining and executing the valid Warrant (which Plaintiffs do not dispute), that service of the Warrant was lawful, and that Defendants did not breach any duties owed to Plaintiffs, if any. Again, as demonstrated by the undisputed facts, Defendants conduct was aimed toward upholding the law; not disrupting any business relationship that Plaintiffs may have had with the Tribe with respect to their illegal marijuana grow operation.

Third, as discussed above in Section 5, the County and individual defendants are immune from tort liability.

Fourth, as discussed above, even if Van Wagenen and Chad Bianco had no immunity for discretion vested in them, which they do, Van Wagenen and Chad Bianco had absolutely no participation in any manner or form regarding the investigation and the Incident. Further, neither Van Wagenen nor Chad Bianco ever interacted with or communicated with McCormick in any manner. Thus, Defendants are entitled to summary judgment on Plaintiffs' eleventh claim for relief.

## 12. Vicarious Liability in Tort against all Defendants

Plaintiffs are also asserting a claim for Vicarious Liability in Tort. However, "there is no common law tort liability for public entities in California." *Torres v. Dep't of Corr. & Rehab.*, 217 Cal. App. 4th 844, 850, 158 Cal. Rptr. 3d 876, 881 (2013) Sovereign immunity is the rule and a public entity may be held liable only if there is a statute subjecting it to civil liability. *Id.* "A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815(a). "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Cal. Gov't Code § 815.2(b) "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2

4921-9572-3316

Gregory J. Morrow, Esq.
<u>McCormick v. County of Riverside</u>
September 17, 2025
Page 20

Defendants are entitled to summary judgment on Plaintiffs' twelfth claim for relief for many reasons. First, Plaintiffs' 100 *stipulated* deemed admissions foreclose all liability. In addition to Plaintiffs' stipulated deemed admissions listed above in Section 1, Plaintiff East Wind AG stipulated to the following admissions: RFA 40, admitting that Defendant County of Riverside is not vicariously liable for any claims resulting from the Incident, and RFA 62, admitting that East Wind AG did not suffer any economic damages. Further, Plaintiff McCormick stipulated to the following admission: RFA 70, admitting that McCormick did not suffer any economic damages.

Second, as discussed in this herein, the uncontroverted evidence establishes that all Defendants acted reasonably and breached no duties owed to Plaintiffs. Further, the County is not vicariously liable for any claim when all Defendants are entitled to summary judgment on all of Plaintiffs' claims and there is no evidence of an underlying constitutional violation or tort.

Third, as discussed above in Section 5, the County and individual defendants are immune from tort liability.

Fourth, as discussed above, even if Van Wagenen and Chad Bianco had no immunity for discretion vested in them, which they do, Van Wagenen and Chad Bianco had absolutely no participation in any manner or form regarding the investigation and the Incident. What is more, is that Van Wagenen and Chad Bianco have never interacted with or communicated with McCormick in any manner or form. Thus, Defendants are entitled to summary judgment on Plaintiffs' twelfth claim for relief.

13.    **Claim for Violations of Civil Code § 52.1 (Bane Act) against all Defendants**

The Bane Act provides a civil cause of action against anyone who "interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment . . . of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist*, 149 Cal.App.4th 860, 883 (2007). "The statutory framework of section 52.1 indicates that the Legislature meant the statute to address interference with constitutional rights involving

Gregory J. Morrow, Esq.
McCormick v. County of Riverside
September 17, 2025
Page 21

more egregious conduct than mere negligence." *Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947, 958, 137 Cal. Rptr. 3d 839, 848 (2012)

Defendants are entitled to summary judgment on Plaintiffs' thirteenth claim for relief for many reasons. First, Plaintiffs' 100 *stipulated* deemed admissions foreclose all liability. In addition to the stipulated admissions identified in Section 1 above, Plaintiff East Wind AG stipulated to the following admission: RFA 20, admitting that Defendants did not violate its constitutional rights.

Second, as discussed herein, the uncontroverted evidence establishes that there is no underlying constitutional violation where the Warrant was valid , signed by a judge, and served in accordance with its terms.Thus, execution of the Warrant was lawful. Indeed, there is no evidence that any Defendant engaged in any conduct that would constitute a threat, intimidation, or coercion, or other egregious conduct, that would violate Plaintiffs' Constitutional rights.

Third, Defendants Van Wagenen and Chad Bianco did not participate in the investigation leading up to obtaining the Warrant, were not present when the Warrant was served, and did not interact or communicate with McCormick in any manner or form. Accordingly, there is no basis for a Bane Act claim against Defendants.  Thus, Defendants are entitled to summary judgment on Plaintiffs' thirteenth claim for relief.

### 14.    Claim for Declaratory Relief under 28 U.S.C. § 2201

Here, Plaintiff alleges that they are entitled to Declaratory Relief under 28 U.S.C. § 220. However, as discussed above, Plaintiffs' 100 *stipulated* admissions foreclose all liability. Here, Defendants are entitled to summary judgment on  this claim as there is no "case of actual controversy" to form the required basis of a request for declaratory relief. See 28 U.S.C. § 220 ("*In a case of actual controversy*…may declare the rights and other legal relations of any interested party seeking such declaration…"). As there is no actual controversy, Defendants are entitled to summary judgment on Plaintiffs' fourteenth claim for relief.

### 15.    Conclusion

As set forth in detail above,  Defendants are entitled to summary judgment on all of Plaintiffs' claims.

4921-9572-3316

BURKE, WILLIAMS & SORENSEN, LLP

Gregory J. Morrow, Esq.
McCormick v. County of Riverside
September 17, 2025
Page 22

      As noted above, I propose that we conduct a telephone call on **Friday, September 19, 2025, at 10:00 a.m.** to continue our Local Rule 7-3 meet and confer efforts regarding Defendants' forthcoming motion for summary judgment on each of Plaintiffs' claims. If you are unavailable on this date, please provide me with alternative availability such that the Local Rule 7-3 conference will be completed this week.

      Thank you for your attention to this matter and anticipated prompt response.

      Sincerely,

      BURKE, WILLIAMS & SORENSEN, LLP

      Nathan A. Oyster

NAO:MBS:ZB/tm

4921-9572-3316

# EXHIBIT A

Nathan A. Oyster (SBN 225307)
E-mail: noyster@bwslaw.com
Michaela B. Sozio (SBN 179148)
Email: msozio@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2953
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
COUNTY OF RIVERSIDE (also erroneously sued herein as RIVERSIDE COUNTY SHERIFF'S DEPARTMENT), JEFFREY ANTHONY VAN WAGENEN, JR., SHERIFF CHAD BIANCO, and JOSE TRUJILLO VILLASENOR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON MCCORMICK, an individual; and EAST WIND AG, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF RIVERSIDE, a public entity; JEFFREY ANTHONY VAN WAGENEN, JR., an individual and in his official capacity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a division of a public entity; SHERIFF CHAD BIANCO, an individual and in his official capacity; JOSE-TRUJILLO VILLASENOR, an individual and in his official capacity; IMPERIAL IRRIGATION DISTRICT, a public entity; JAMIE L. ASBURY, an individual and in her official capacity; | Case No. 5:23-cv-02569-SSS-SP<br><br>**DEFENDANT COUNTY OF RIVERSIDE'S FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFF EAST WIND AG**<br><br>Judge Sunshine Suzanne Sykes<br><br>Magistrate Judge Sheri Pym |

and DOES 1 through 150, individually, jointly and severally,

      Defendants.

**PROPOUNDING PARTY:**    DEFENDANT COUNTY OF RIVERSIDE

**RESPONDING PARTY:**    PLAINTIFF EAST WIND AG

**SET NO.:**    One

TO PLAINTIFF EAST WIND AG AND TO THEIR ATTORNEYS OF RECORD:

Pursuant to Federal Rule of Civil Procedure, Rule 36 of the Federal Rules of Civil Procedure, Defendant COUNTY OF RIVERSIDE propounds the requests for admission below to Plaintiff EAST WIND AG Responses are due within 30 days.

**DEFINITIONS AND INSTRUCTIONS**

1. You must deliver a written response to these Requests for Admission to opposing counsel within the time proscribed by the Rule 36 of the Federal Rules of Civil Procedure.

2. If you fail to comply with the provisions of Rule 36 of the Federal Rules of Civil Procedure with respect to this Request for Admissions, each of the matters of which an admission is requested will be deemed admitted.

3. "YOU" and "YOUR" shall mean and refer to Plaintiff EAST WIND AG individually and anyone acting on your behalf, including, but not limited to, agents, employees, representatives, attorneys, accountants, investigators, or anyone else acting in your interest, on your behalf, or at your request, and each of them.

4. "The lawsuit" shall mean the case styled *PRESTON MCCORMICK et al. v. COUNTY OF RIVERSIDE et al.*, now pending in the United States District Court, Central District of California, Case No. 5:23-cv-02569-SSS-SP.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4910-8772-6608 v1      2

5.      "COMMUNICATION" means any type of written and oral communication including but not limited to any statements, inquiries, discussions, conversations, dialogues, correspondence, consultations, negotiations, notices, agreements, meetings, letters, email, interviews, telegrams, and faxes.

6.      "PERSON(S)" as used herein shall mean and include natural persons, governmental entities and agencies, proprietorships, partnerships, corporations and all other forms of organizations or associations.

7.      "IDENTIFY," as used herein in connection with a "document," "documents" or "written statement" means:

(a) State the type of document (letter, memorandum, check, draft, etc.) and the date of document, the name and address of the person, if any, to whom the document was addressed, the names and addresses of all persons to whom copies of the document were to be or have been sent and the firm or firms with which all such persons were associated at the date of the document;

(b) State whether you, or anyone acting on your behalf, are in possession of the original of the document or a copy thereof and if not in possession of the original or a copy, furnish the name and address of the custodian of the original or a copy;

(c) State the present location of the document; and

(d) Attach a copy of the document to your answers.

8.      When used with respect to a person, the word "IDENTIFY" means to state the (i) name, (ii) current address and (iii) employer, if any.

9.      "DESCRIBE" as used herein means:

(a) Describe fully by reference to underlying facts rather than by ultimate facts or conclusions of fact or law;

(b) Where applicable, particularize as to:

i. Time;

ii. Place; and

iii. Manner.

10.     The term "DOCUMENT(S)" is used in its customary broad sense and includes, without limitation, the following items regardless of origin or location, whether printed or recorded, or filmed, or reproduced by any other mechanical, electronic, or magnetic process, or written or produced by hand, whether or hot claimed to be privileged against discovery on any ground, and whether an original, master or copy, namely contracts; agreements; communications, including intercompany communications; correspondence; cablegrams, radiograms and telegrams; records of telephone conversations, meetings and conferences, including lists of persons attending meetings or conferences; summaries and records of personal conversations or interviews, books, manuals; publications and diaries; calendars, laboratory and engineering reports and notebooks; blueprints; charts; plans; sketches and drawings; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents and applications for patents; patent appraisals and patent ability or validity searches and studies; sales records, including purchase orders and invoices; reports and summaries of negotiations; brochures; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press releases; publicity, trade and product releases; draft or original or preliminary notes on, and marginal comments appearing on, any DOCUMENT; other reports and records; and any other information-containing paper, writing or physical thing in the possession, custody or control of YOU or YOUR attorneys. If the original of the DOCUMENT contains information not reflected on the copy, please produce the original. DOCUMENT is broadly defined to include all media on which information is recorded or stored.

11.     The words "OR" and "ANY" appearing in any request should not be read so as to eliminate any part of the request, but whenever applicable, it should have the same meaning as the words "and" and "all," respectively. For example, a

request stating "support or refer" should be read as "support and refer" if an answer that does both can be made.

12. Wherever the word "INCLUDING" appears, the meaning intended is "including, but not limited to."

13. The plural includes the singular and vice versa.

14. The masculine includes the feminine and vice versa.

15. The terms "RELATE," "RELATED" and "RELATING" are intended in their broadest meaning, including, without limitation, the following concepts: anything that embodies, comprises, reflects, identifies, states, refers to, comments on, responds to, describes, analyzes, contains information concerning, or is in any way pertinent to the subject matter. The terms are not restricted to the notion of legal relevance for the purposes of admissibility of evidence at trial.

16. The term "INCIDENT" shall mean the circumstances and events alleged in your Complaint.

17. As used herein, the term "EAST WIND" shall mean and refer to Plaintiff East Wind AG.

18. As used herein, the term "TRIBE" shall mean and refer to the Torres Martinez Desert Cahuilla Indian Tribe.

19. As used herein, the term "SUBJECT PROPERTY" shall mean and refer to the real property located at 91521 68th in Mecca, California.

20. As used here, the term the "FIRE" shall mean and refer to the fire that occurred on the SUBJECT PROPERTY on or about January 8, 2023, which allegedly destroyed PRESTON MCCORMICK's family residence.

21. Instruction Regarding Alleged Ambiguity: To avoid ambiguity, significant effort has been spent to define a number of terms used in the following discovery requests. If you or your attorney claim you do not understand the meaning of a term, please refer to the list of definitions or contact the opposing attorney for

clarification, preferably before responses are due so that the alleged ambiguous term can be clarified.

22.    This request shall be deemed continuing so as to require further and supplemental responses if YOU receive, generate or tardily discover additional information which changes or alters YOUR response in any way within the scope of this request following compliance herewith.

23.    If you claim a privilege as to any information requested by any of these interrogatories, please specify the information involved and the basis for your claim of privilege to allow the court to rule on the validity of the claim.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that YOU have no evidence to support your 42 U.S.C. § Monell claims.

**REQUEST FOR ADMISSION NO. 2:**

Admit that YOU have no evidence to support your supervisory liability claims under 42 U.S.C. § 1983.

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU have no evidence to support your Fourth Amendment claims.

**REQUEST FOR ADMISSION NO. 4:**

Admit that Defendant Riverside County did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Defendant Riverside County did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 6:**

Admit that Defendant Villasenor did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Defendant Sherrif Chad Bianco did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 8:**

Admit that Defendant Jeffrey Anthony Van Wagenen Jr. did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 9:**

Admit that Defendant Jamie L. Asbury did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 10:**

Admit that a breach of a duty of care, if any, by Riverside County did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 11:**

Admit that a breach of a duty of care, if any, by Riverside County agents or employees did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 12:**

Admit that a breach of a duty of care, if any, by the Riverside County Sherrif's department did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 13:**

Admit that a breach of a duty of care, if any, by Defendant Jose-Trujillo Villasenor did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 14:**

Admit that a breach of a duty of care, if any, by Defendant Jeffrey Anthony van Wagenen Jr. did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 15:**

Admit that a breach of a duty of care, if any, by Defendant Jamie L. Asbury, did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 16:**

Admit that YOU were contributorily negligent in causing YOUR claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 17:**

Admit that YOU were comparatively at fault in causing YOUR claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 18:**

Admit that the Riverside County Sheriff's Department and its employees were not reckless or negligent with filing the warrant application.

**REQUEST FOR ADMISSION NO. 19:**

Admit that the Riverside County Sherriff's Department and its employees did not intentionally list 91521 Ave 68, Mecca, California as fee land on the Warrant.

**REQUEST FOR ADMISSION NO. 20:**

Admit that County of Riverside Sheriff's Department agents or employees did not violate your constitutional rights.

**REQUEST FOR ADMISSION NO. 21:**

Admit that YOU have no evidence to support your allegations that the Riverside County Sheriff's Department has policies, customs, or practices that result in constitutional violations.

**REQUEST FOR ADMISSION NO. 22:**

Admit that East Wind AG was conducting business on 91521 Ave 68, Mecca, California on the date of this incident.

**REQUEST FOR ADMISSION NO. 23:**

Admit that East Wind AG was not lawfully conducting its marijuana business on 91521 Ave 68, Mecca, California on the date of this INCIDENT..

**REQUEST FOR ADMISSION NO. 24:**

Admit that there was a private residence located on 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an

apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 25:**

Admit that YOU were cultivating marijuana on the land of a private residence located at 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 26:**

Admit that YOU were manufacturing marijuana or marijuana related products on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 27:**

Admit that YOU were cultivating more than 6 marijuana plants on the land of a private residence located at 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 28:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to cultivate marijuana on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 29:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to sell marijuana.

**REQUEST FOR ADMISSION NO. 30:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to transport marijuana.

**REQUEST FOR ADMISSION NO. 31:**

Admit that California's criminal laws, including the Health and Safety code, have the same force and effect on Torres Martinez Desert Cahuilla tribal reservations as they do on non-Indian Country. "Indian Country" is any land that is

a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 32:**

Admit that California's criminal laws, including the Health and Safety Code, have the same force and effect on property held in trust for the Torres Martinez Desert Cahuilla Tribe as they do on non-Indian Country. "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 33:**

Admit that California's criminal laws, including the Health and Safety Code, have the same force and effect on tribal owned fee property as they do on non-Indian Country. "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 34:**

Admit that state and local county criminal statutes are enforceable on "Indian Country." "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 35:**

Admit that YOU do not have a valid license issued to you by the Torres Martinez Desert Cahuilla Tribe to cultivate marijuana.

**REQUEST FOR ADMISSION NO. 36:**

Admit that YOU do not have a valid license issued to you by the Torres Martinez Desert Cahuilla Tribe to manufacture marijuana related products.

**REQUEST FOR ADMISSION NO. 37:**

Admit that YOU do not have a valid license issued to you by the Torres Martinez Desert Cahuilla Tribe to manufacture marijuana related products.

**REQUEST FOR ADMISSION NO. 38:**

Admit that the County of Riverside and its employees did not intentionally

interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 39:**

Admit that the County of Riverside's Sheriff's Department and its employees did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 40:**

Admit that the County of Riverside is not vicariously liable for any claims resulting from this INCIDENT.

**REQUEST FOR ADMISSION NO. 41:**

Admit that the County of Riverside Sheriff's Department is not vicariously liable for any claims resulting from this INCIDENT.

**REQUEST FOR ADMISSION NO. 42:**

Admit that the Riverside County Sheriff's Department had probable cause to enter and search 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 43:**

Admit that you sold marijuana to persons under the age of 21.

**REQUEST FOR ADMISSION NO. 44:**

Admit that you sold marijuana to persons under the age of 18.

**REQUEST FOR ADMISSION NO. 45:**

Admit that you employed persons under the age of 21 to participate in marijuana related activities, including but not limited to cultivation, manufacture, sale, transport, or distribution.

**REQUEST FOR ADMISSION NO. 46:**

Admit that YOU employed persons under the age of 18 to participate in marijuana related activities, including but not limited to cultivation, manufacture, sale, transport, or distribution.

**REQUEST FOR ADMISSION NO. 47:**

Admit that YOU conducted marijuana related activities with the marijuana cultivated on 91521 Ave 68, Mecca, California (including but not limited to

cultivation, sale, possession, use, transport, and manufacture) outside of the geographical boundaries of 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 48:**

Admit that YOU conducted marijuana related activities with the marijuana cultivated on 91521 Ave 68, Mecca, California (including but not limited to cultivation, sale, possession, use, transport, and manufacture) outside of "Indian Country." "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 49:**

Admit that YOUR marijuana operation on 91521 Ave 68, Mecca, California was not in compliance with California's Business and Professions Code on the date of this INCIDENT, including but not limited to the following: marijuana cultivation, manufacture, sale, use, possession, transportation, or distribution.

**REQUEST FOR ADMISSION NO. 50:**

Admit that YOUR marijuana operation on 91521 Ave 68, Mecca, California was not in compliance with California's Health and Safety Code regarding one or more of the following: marijuana cultivation, manufacture, sale, use, possession, transportation, or distribution.

**REQUEST FOR ADMISSION NO. 51:**

Admit that the Riverside County Sheriff's Department had a lawful basis to search 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 52:**

Admit that Riverside County Sheriff's Department had a lawful basis to seize all items described in the Warrant.

**REQUEST FOR ADMISSION NO. 53:**

Admit that even if the Warrant listed 91521 Ave 68, Mecca, California as trust land instead of fee land, the facts in the Warrant were still sufficient to establish probable cause..

**REQUEST FOR ADMISSION NO. 54:**

Admit that your marijuana operation on 91521 Ave 68, Mecca, California, did not comply with California state marijuana regulations.

**REQUEST FOR ADMISSION NO. 55:**

Admit that your marijuana operation on 91521 Ave 68, Mecca, California, did not comply with local Riverside County marijuana regulations.

**REQUEST FOR ADMISSION NO. 56:**

Admit that Defendants did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 57:**

Admit that Defendants did not negligently interfere with YOUR contractual relations..

**REQUEST FOR ADMISSION NO. 58:**

Admit that Defendants did not negligently interfere YOUR prospective economic relations.

**REQUEST FOR ADMISSION NO. 59:**

Admit that Defendants did not intentionally interfere with YOUR prospective economic relations.

**REQUEST FOR ADMISSION NO. 60:**

Admit that the County of Riverside and its employees are not responsible in any way for the fire that occurred and the damages from that fire on 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 61:**

Admit that the County of Riverside Sheriff's Department and its employees

are not responsible in any way for the fire that occurred and the damages from that fire on 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 62:**

Admit that you did not suffer any economic damages as a result of the INCIDENT that is the subject of this litigation..

DATED: _January 14, 2025          BURKE, WILLIAMS & SORENSEN, LLP


By:   _/s/ Nathan A. Oyster_
          Nathan A. Oyster
          Michaela B. Sozio
          Caylin W. Jones

Attorneys for Defendants
COUNTY OF RIVERSIDE, SHERIFF CHAD BIANCO, JEFFREY ANTHONY VAN WAGENEN, AND JOSE TRUJILLO VILLASENOR

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4910-8772-6608 v1                    14

## PROOF OF SERVICE

**Preston McCormick, et al. v. County of Riverside et al.**
**Case No. 5:23-cv-02569-SSS-SP**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 444 South Flower Street, 40th Floor, Los Angeles, CA 90071-2953.

On January 14, 2025, I served true copies of the following document(s) described as **DEFENDANT COUNTY OF RIVERSIDE'S FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFF EAST WIND AG** on the interested parties in this action as follows:

Gregory J. Morrow, Esq.                          Attorneys for Plaintiffs,
MORROW LAW GROUP INC                  *Preston McCormick and East*
1801 Century Park East                            *Wind Ag*
24th Floor
Los Angeles, CA 90067
Email: gregory.j.morrow@hotmail.com

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address gmitchell@bwslaw.com to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 14, 2025, at Los Angeles, California.


*Leticia Espinoza*
Leticia Espinozal

# EXHIBIT B

Nathan A. Oyster (SBN 225307)
E-mail: noyster@bwslaw.com
Michaela B. Sozio (SBN 179148)
Email: msozio@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2953
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
COUNTY OF RIVERSIDE (also erroneously sued herein as RIVERSIDE COUNTY SHERIFF'S DEPARTMENT), JEFFREY ANTHONY VAN WAGENEN, JR., SHERIFF CHAD BIANCO, and JOSE TRUJILLO VILLASENOR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON MCCORMICK, an individual; and EAST WIND AG, a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF RIVERSIDE, a public entity; JEFFREY ANTHONY VAN WAGENEN, JR., an individual and in his official capacity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a division of a public entity; SHERIFF CHAD BIANCO, an individual and in his official capacity; JOSE-TRUJILLO VILLASENOR, an individual and in his official capacity; IMPERIAL IRRIGATION DISTRICT, a public entity; JAMIE L. ASBURY, an individual and in her official capacity; | Case No. 5:23-cv-02569-SSS-SP <br><br> **DEFENDANT JOSE TRUJILLO VILLASENOR'S FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFF PRESTON MCCORMICK** <br><br> Judge Sunshine Suzanne Sykes <br><br> Magistrate Judge Sheri Pym |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4925-2324-0460 v2                    1

and DOES 1 through 150, individually, jointly and severally,

Defendants.

**PROPOUNDING PARTY:**    DEFENDANT JOSE TRUJILLO VILLASENOR

**RESPONDING PARTY:**    PLAINTIFF PRESTON MCCORMICK

**SET NO.:**    One

TO PLAINTIFF PRESTON MCCORMICK AND TO HIS ATTORNEYS OF RECORD:

Pursuant to Federal Rule of Civil Procedure, Rule 36 of the Federal Rules of Civil Procedure, Defendant JOSE TRUJILLO VILLASENOR propounds the requests for admission below to Plaintiff PRESTON MCCORMICK Responses are due within 30 days.

### DEFINITIONS AND INSTRUCTIONS

1. You must deliver a written response to these Requests for Admission to opposing counsel within the time proscribed by the Rule 36 of the Federal Rules of Civil Procedure.

2. If you fail to comply with the provisions of Rule 36 of the Federal Rules of Civil Procedure with respect to this Request for Admissions, each of the matters of which an admission is requested will be deemed admitted.

3. "YOU" and "YOUR" shall mean and refer to Plaintiff PRESTON MCCORMICK individually and anyone acting on your behalf, including, but not limited to, agents, employees, representatives, attorneys, accountants, investigators, or anyone else acting in your interest, on your behalf, or at your request, and each of them.

4.     "The lawsuit" shall mean the case styled *PRESTON MCCORMICK et al. v. COUNTY OF RIVERSIDE et al.*, now pending in the United States District Court, Central District of California, Case No. 5:23-cv-02569-SSS-SP.

5.     "COMMUNICATION" means any type of written and oral communication including but not limited to any statements, inquiries, discussions, conversations, dialogues, correspondence, consultations, negotiations, notices, agreements, meetings, letters, email, interviews, telegrams, and faxes.

6.     "PERSON(S)" as used herein shall mean and include natural persons, governmental entities and agencies, proprietorships, partnerships, corporations and all other forms of organizations or associations.

7.     "IDENTIFY," as used herein in connection with a "document," "documents" or "written statement" means:

(a) State the type of document (letter, memorandum, check, draft, etc.) and the date of document, the name and address of the person, if any, to whom the document was addressed, the names and addresses of all persons to whom copies of the document were to be or have been sent and the firm or firms with which all such persons were associated at the date of the document;

(b) State whether you, or anyone acting on your behalf, are in possession of the original of the document or a copy thereof and if not in possession of the original or a copy, furnish the name and address of the custodian of the original or a copy;

(c) State the present location of the document; and

(d) Attach a copy of the document to your answers.

8.     When used with respect to a person, the word "IDENTIFY" means to state the (i) name, (ii) current address and (iii) employer, if any.

9.     "DESCRIBE" as used herein means:

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4925-2324-0460 v2                                                3

(a) Describe fully by reference to underlying facts rather than by ultimate facts or conclusions of fact or law;

(b) Where applicable, particularize as to:

i. Time;

ii. Place; and

iii. Manner.

10.    The term "DOCUMENT(S)" is used in its customary broad sense and includes, without limitation, the following items regardless of origin or location, whether printed or recorded, or filmed, or reproduced by any other mechanical, electronic, or magnetic process, or written or produced by hand, whether or hot claimed to be privileged against discovery on any ground, and whether an original, master or copy, namely contracts; agreements; communications, including intercompany communications; correspondence; cablegrams, radiograms and telegrams; records of telephone conversations, meetings and conferences, including lists of persons attending meetings or conferences; summaries and records of personal conversations or interviews, books, manuals; publications and diaries; calendars, laboratory and engineering reports and notebooks; blueprints; charts; plans; sketches and drawings; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents and applications for patents; patent appraisals and patent ability or validity searches and studies; sales records, including purchase orders and invoices; reports and summaries of negotiations; brochures; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press releases; publicity, trade and product releases; draft or original or preliminary notes on, and marginal comments appearing on, any DOCUMENT; other reports and records; and any other information-containing paper, writing or physical thing in the possession, custody or control of YOU or YOUR attorneys. If the original of the DOCUMENT contains information not

reflected on the copy, please produce the original. DOCUMENT is broadly defined to include all media on which information is recorded or stored.

11.    The words "OR" and "ANY" appearing in any request should not be read so as to eliminate any part of the request, but whenever applicable, it should have the same meaning as the words "and" and "all," respectively. For example, a request stating "support or refer" should be read as "support and refer" if an answer that does both can be made.

12.    Wherever the word "INCLUDING" appears, the meaning intended is "including, but not limited to."

13.    The plural includes the singular and vice versa.

14.    The masculine includes the feminine and vice versa.

15.    The terms "RELATE," "RELATED" and "RELATING" are intended in their broadest meaning, including, without limitation, the following concepts: anything that embodies, comprises, reflects, identifies, states, refers to, comments on, responds to, describes, analyzes, contains information concerning, or is in any way pertinent to the subject matter. The terms are not restricted to the notion of legal relevance for the purposes of admissibility of evidence at trial.

16.    The term "INCIDENT" shall mean the circumstances and events alleged in your Complaint.

17.    As used herein, the term "EAST WIND" shall mean and refer to Plaintiff East Wind AG.

18.    As used herein, the term "TRIBE" shall mean and refer to the Torres Martinez Desert Cahuilla Indian Tribe.

19.    As used herein, the term "SUBJECT PROPERTY" shall mean and refer to the real property located at 91521 68th in Mecca, California.

20.    As used here, the term the "FIRE" shall mean and refer to the fire that occurred on the SUBJECT PROPERTY on or about January 8, 2023, which allegedly destroyed PRESTON MCCORMICK's family residence.

21.    Instruction Regarding Alleged Ambiguity: To avoid ambiguity, significant effort has been spent to define a number of terms used in the following discovery requests. If you or your attorney claim you do not understand the meaning of a term, please refer to the list of definitions or contact the opposing attorney for clarification, preferably before responses are due so that the alleged ambiguous term can be clarified.

22.    This request shall be deemed continuing so as to require further and supplemental responses if YOU receive, generate or tardily discover additional information which changes or alters YOUR response in any way within the scope of this request following compliance herewith.

23.    If you claim a privilege as to any information requested by any of these interrogatories, please specify the information involved and the basis for your claim of privilege to allow the court to rule on the validity of the claim.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that YOU have no evidence to support your 42 U.S.C. § Monell claims.

**REQUEST FOR ADMISSION NO. 2:**

Admit that YOU have no evidence to support your supervisory liability claims under 42 U.S.C. § 1983.

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU have no evidence to support your Fourth Amendment claims.

**REQUEST FOR ADMISSION NO. 4:**

Admit that YOU have no evidence to support your Fourteenth Amendment claims.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Defendant Riverside County did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 6:**

Admit that Defendant Riverside County Sheriff's Department did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Defendant Villasenor did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 8:**

Admit that Defendant Sherrif Chad Bianco did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 9:**

Admit that Defendant Jeffrey Anthony Van Wagenen Jr. did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 10:**

Admit that Defendant Jamie L. Asbury did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 11:**

Admit that a breach of a duty of care, if any, by Riverside County did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 12:**

Admit that a breach of a duty of care, if any, by Riverside County agents or employees did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 13:**

Admit that a breach of a duty of care, if any, by the Riverside County Sherrif's department did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 14:**

Admit that a breach of a duty of care, if any, by Defendant Jose-Trujillo Villasenor did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 15:**

Admit that a breach of a duty of care, if any, by Defendant Jeffrey Anthony van Wagenen Jr. did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 16:**

Admit that a breach of a duty of care, if any, by Defendant Jamie L. Asbury, did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 17:**

Admit that YOU were contributorily negligent in causing YOUR claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 18:**

Admit that YOU were comparatively at fault in causing YOUR claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 19:**

Admit that the Riverside County Sheriff's Department and its employees were not reckless or negligent with filing the warrant application.

**REQUEST FOR ADMISSION NO. 20:**

Admit that the Riverside County Sherriff's Department and its employees did not intentionally list 91521 Ave 68, Mecca, California as fee land on the Warrant.

**REQUEST FOR ADMISSION NO. 21:**

Admit that County of Riverside Sheriff's Department agents or employees did not violate your constitutional rights.

**REQUEST FOR ADMISSION NO. 22:**

Admit that YOU have no evidence to support your allegations that the Riverside County Sheriff's Department has policies, customs, or practices that result in constitutional violations.

**REQUEST FOR ADMISSION NO. 23:**

Admit that YOU owned East Wind AG on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 24:**

Admit that East Wind AG, was conducting business on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 25:**

Admit that East Wind AG was not lawfully conducting its marijuana business on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 26:**

Admit that there was a private residence located on 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 27:**

Admit that YOU lived, for ANY period of time, in a private residence located on 91521 Ave 68, Mecca, California. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 28:**

Admit that YOU were cultivating marijuana on the land of a private residence located at 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 29:**

Admit that YOU were manufacturing marijuana or marijuana related products on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 30:**

Admit that YOU were cultivating more than 6 marijuana plants on the land of a private residence located at 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home,

or other similar dwelling.

**REQUEST FOR ADMISSION NO. 31:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to cultivate marijuana on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 32:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to sell marijuana.

**REQUEST FOR ADMISSION NO. 33:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to transport marijuana.

**REQUEST FOR ADMISSION NO. 34:**

Admit that California's criminal laws, including the Health and Safety code, have the same force and effect on Torres Martinez Desert Cahuilla tribal reservations as they do on non-Indian Country. "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 35:**

Admit that California's criminal laws, including the Health and Safety Code, have the same force and effect on property held in trust for the Torres Martinez Desert Cahuilla Tribe as they do on non-Indian Country. "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 36:**

Admit that California's criminal laws, including the Health and Safety Code, have the same force and effect on tribal owned fee property as they do anywhere else in California.

**REQUEST FOR ADMISSION NO. 37:**

Admit that state and local county criminal statutes are enforceable on "Indian Country." "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 38:**

Admit that YOU do not have a valid license or permit issued to YOU by the Torres Martinez Desert Cahuilla Tribe to cultivate marijuana.

**REQUEST FOR ADMISSION NO. 39:**

Admit that YOU do not have a valid license or permit issued to YOU by the Torres Martinez Desert Cahuilla Tribe to manufacture marijuana related products.

**REQUEST FOR ADMISSION NO. 40:**

Admit that the County of Riverside and its employees did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 41:**

Admit that the County of Riverside's Sheriff's Department and its employees did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 42:**

Admit that the County of Riverside is not vicariously liable for any claims resulting from this INCIDENT.

**REQUEST FOR ADMISSION NO. 43:**

Admit that the County of Riverside Sheriff's Department is not vicariously liable for any claims resulting from this INCIDENT.

**REQUEST FOR ADMISSION NO. 44:**

Admit that the Riverside County Sheriff's Department had probable cause to enter and search 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 45:**

Admit that you sold marijuana to persons under the age of 21.

**REQUEST FOR ADMISSION NO. 46:**

Admit that you sold marijuana to persons under the age of 18.

**REQUEST FOR ADMISSION NO. 47:**

Admit that you employed persons under the age of 21 to participate in marijuana related activities, including but not limited to cultivation, manufacture, sale, transport, or distribution.

**REQUEST FOR ADMISSION NO. 48:**

Admit that YOU employed persons under the age of 18 to participate in marijuana related activities, including but not limited to cultivation, manufacture, sale, transport, or distribution.

**REQUEST FOR ADMISSION NO. 49:**

Admit that you conducted marijuana related activities with the marijuana cultivated on 91521 Ave 68, Mecca, California (including but not limited to cultivation, sale, possession, use, transport, and manufacture) outside of the geographical boundaries of 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 50:**

Admit that you conducted marijuana related activities with the marijuana cultivated on 91521 Ave 68, Mecca, California (including but not limited to cultivation, sale, possession, use, transport, and manufacture) outside of "Indian Country." "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 51:**

Admit that YOUR marijuana operation on 91521 Ave 68, Mecca, California was not in compliance with California's Business and Professions Code on the date of this INCIDENT, including but not limited to the following: marijuana cultivation, manufacture, sale, use, possession, transportation, or distribution.

**REQUEST FOR ADMISSION NO. 52:**

Admit that YOUR marijuana operation on 91521 Ave 68, Mecca, California

was not in compliance with California's Health and Safety Code regarding one or more of the following: marijuana cultivation, manufacture, sale, use, possession, transportation, or distribution.

**REQUEST FOR ADMISSION NO. 53:**

Admit that the Riverside County Sheriff's Department had a lawful basis to search 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 54:**

Admit that Riverside County Sheriff's Department had a lawful basis to seize all items described in the Warrant.

**REQUEST FOR ADMISSION NO. 55:**

Admit that even if the Warrant listed 91521 Ave 68, Mecca, California as trust land instead of fee land, the facts in the Warrant were still sufficient to establish probable cause.

**REQUEST FOR ADMISSION NO. 56:**

Admit that your marijuana operation on 91521 Ave 68, Mecca, California, did not comply with California state marijuana regulations.

**REQUEST FOR ADMISSION NO. 57:**

Admit that your marijuana operation on 91521 Ave 68, Mecca, California, did not comply with local Riverside County marijuana regulations.

**REQUEST FOR ADMISSION NO. 58:**

Admit that Defendants did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 59:**

Admit that Defendants did not negligently interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 60:**

Admit that Defendants did not negligently interfere YOUR prospective economic relations.

**REQUEST FOR ADMISSION NO. 61:**

Admit that Defendants did not intentionally interfere with YOUR prospective economic relations.

**REQUEST FOR ADMISSION NO. 62:**

Admit that YOU have no evidence to support your claim for failure to protect from harm.

**REQUEST FOR ADMISSION NO. 63:**

Admit that YOU have no evidence to support your claim for battery

**REQUEST FOR ADMISSION NO. 64:**

Admit that YOU have no evidence to support your claim for assault.

**REQUEST FOR ADMISSION NO. 65:**

Admit that YOU have no evidence to support your claim for intentional infliction of emotional distress.

**REQUEST FOR ADMISSION NO. 66:**

Admit that YOU have no evidence to support your claim for negligent infliction of emotional distress.

**REQUEST FOR ADMISSION NO. 67:**

Admit that if any force was used on you during this INCIDENT, it was reasonable.

**REQUEST FOR ADMISSION NO. 68:**

Admit that the County of Riverside and its employees are not responsible in any way for the fire that occurred and the damages from that fire on 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 69:**

Admit that the County of Riverside Sheriff's Department and its employees are not responsible in any way for the fire that occurred and the damages from that fire on 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 70:**

Admit that you did not suffer any economic damages as a result of the INCIDENT that is the subject of this litigation.

DATED: _January 14, 2025        BURKE, WILLIAMS & SORENSEN, LLP


By:   _/s/ Nathan A. Oyster_____
        Nathan A. Oyster
        Michaela B. Sozio
        Caylin W. Jones

Attorneys for Defendants
COUNTY OF RIVERSIDE, SHERIFF CHAD BIANCO, JEFFREY ANTHONY VAN WAGENEN, AND JOSE TRUJILLO VILLASENOR

## PROOF OF SERVICE

### Preston McCormick, et al. v. County of Riverside et al.
### Case No. 5:23-cv-02569-SSS-SP

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 444 South Flower Street, 40th Floor, Los Angeles, CA 90071-2953.

On January 14, 2025, I served true copies of the following document(s) described as **DEFENDANT JOSE TRUJILLO VILLASENOR'S FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFF PRESTON MCCORMICK** on the interested parties in this action as follows:

Gregory J. Morrow, Esq.                    Attorneys for Plaintiffs,
MORROW LAW GROUP INC                *Preston McCormick and East*
1801 Century Park East                     *Wind Ag*
24th Floor
Los Angeles, CA 90067
Email: gregory.j.morrow@hotmail.com

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address gmitchell@bwslaw.com to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 14, 2025, at Los Angeles, California.

*Leticia Espinoza*
Leticia Espinozal

# EXHIBIT G

Nathan A. Oyster (SBN 225307)
E-mail: noyster@bwslaw.com
Michaela B. Sozio (SBN 179148)
Email: msozio@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2953
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
COUNTY OF RIVERSIDE (also erroneously sued herein as RIVERSIDE COUNTY SHERIFF'S DEPARTMENT), JEFFREY ANTHONY VAN WAGENEN, JR., SHERIFF CHAD BIANCO, and JOSE TRUJILLO VILLASENOR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON MCCORMICK, an individual; and EAST WIND AG, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF RIVERSIDE, a public entity; JEFFREY ANTHONY VAN WAGENEN, JR., an individual and in his official capacity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a division of a public entity; SHERIFF CHAD BIANCO, an individual and in his official capacity; JOSE-TRUJILLO VILLASENOR, an individual and in his official capacity; IMPERIAL IRRIGATION DISTRICT, a public entity; JAMIE L. ASBURY, an individual and in her official capacity; | Case No. 5:23-cv-02569-SSS-SP<br><br>**DEFENDANT JOSE TRUJILLO VILLASENOR'S FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFF PRESTON MCCORMICK**<br><br>Judge Sunshine Suzanne Sykes<br><br>Magistrate Judge Sheri Pym |

and DOES 1 through 150, individually, jointly and severally,

Defendants.

**PROPOUNDING PARTY:**   DEFENDANT JOSE TRUJILLO VILLASENOR

**RESPONDING PARTY:**   PLAINTIFF PRESTON MCCORMICK

**SET NO.:**   One

TO PLAINTIFF PRESTON MCCORMICK AND TO HIS ATTORNEYS OF RECORD:

Pursuant to Federal Rule of Civil Procedure, Rule 36 of the Federal Rules of Civil Procedure, Defendant JOSE TRUJILLO VILLASENOR propounds the requests for admission below to Plaintiff PRESTON MCCORMICK Responses are due within 30 days.

### DEFINITIONS AND INSTRUCTIONS

1. You must deliver a written response to these Requests for Admission to opposing counsel within the time proscribed by the Rule 36 of the Federal Rules of Civil Procedure.

2. If you fail to comply with the provisions of Rule 36 of the Federal Rules of Civil Procedure with respect to this Request for Admissions, each of the matters of which an admission is requested will be deemed admitted.

3. "YOU" and "YOUR" shall mean and refer to Plaintiff PRESTON MCCORMICK individually and anyone acting on your behalf, including, but not limited to, agents, employees, representatives, attorneys, accountants, investigators, or anyone else acting in your interest, on your behalf, or at your request, and each of them.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4925-2324-0460 v2                                   2

4.    "The lawsuit" shall mean the case styled *PRESTON MCCORMICK et al. v. COUNTY OF RIVERSIDE et al.*, now pending in the United States District Court, Central District of California, Case No. 5:23-cv-02569-SSS-SP.

5.    "COMMUNICATION" means any type of written and oral communication including but not limited to any statements, inquiries, discussions, conversations, dialogues, correspondence, consultations, negotiations, notices, agreements, meetings, letters, email, interviews, telegrams, and faxes.

6.    "PERSON(S)" as used herein shall mean and include natural persons, governmental entities and agencies, proprietorships, partnerships, corporations and all other forms of organizations or associations.

7.    "IDENTIFY," as used herein in connection with a "document," "documents" or "written statement" means:

(a) State the type of document (letter, memorandum, check, draft, etc.) and the date of document, the name and address of the person, if any, to whom the document was addressed, the names and addresses of all persons to whom copies of the document were to be or have been sent and the firm or firms with which all such persons were associated at the date of the document;

(b) State whether you, or anyone acting on your behalf, are in possession of the original of the document or a copy thereof and if not in possession of the original or a copy, furnish the name and address of the custodian of the original or a copy;

(c) State the present location of the document; and

(d) Attach a copy of the document to your answers.

8.    When used with respect to a person, the word "IDENTIFY" means to state the (i) name, (ii) current address and (iii) employer, if any.

9.    "DESCRIBE" as used herein means:

(a) Describe fully by reference to underlying facts rather than by ultimate facts or conclusions of fact or law;

(b) Where applicable, particularize as to:

i. Time;

ii. Place; and

iii. Manner.

10. The term "DOCUMENT(S)" is used in its customary broad sense and includes, without limitation, the following items regardless of origin or location, whether printed or recorded, or filmed, or reproduced by any other mechanical, electronic, or magnetic process, or written or produced by hand, whether or hot claimed to be privileged against discovery on any ground, and whether an original, master or copy, namely contracts; agreements; communications, including intercompany communications; correspondence; cablegrams, radiograms and telegrams; records of telephone conversations, meetings and conferences, including lists of persons attending meetings or conferences; summaries and records of personal conversations or interviews, books, manuals; publications and diaries; calendars, laboratory and engineering reports and notebooks; blueprints; charts; plans; sketches and drawings; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents and applications for patents; patent appraisals and patent ability or validity searches and studies; sales records, including purchase orders and invoices; reports and summaries of negotiations; brochures; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press releases; publicity, trade and product releases; draft or original or preliminary notes on, and marginal comments appearing on, any DOCUMENT; other reports and records; and any other information-containing paper, writing or physical thing in the possession, custody or control of YOU or YOUR attorneys. If the original of the DOCUMENT contains information not

reflected on the copy, please produce the original. DOCUMENT is broadly defined to include all media on which information is recorded or stored.

11.     The words "OR" and "ANY" appearing in any request should not be read so as to eliminate any part of the request, but whenever applicable, it should have the same meaning as the words "and" and "all," respectively. For example, a request stating "support or refer" should be read as "support and refer" if an answer that does both can be made.

12.     Wherever the word "INCLUDING" appears, the meaning intended is "including, but not limited to."

13.     The plural includes the singular and vice versa.

14.     The masculine includes the feminine and vice versa.

15.     The terms "RELATE," "RELATED" and "RELATING" are intended in their broadest meaning, including, without limitation, the following concepts: anything that embodies, comprises, reflects, identifies, states, refers to, comments on, responds to, describes, analyzes, contains information concerning, or is in any way pertinent to the subject matter. The terms are not restricted to the notion of legal relevance for the purposes of admissibility of evidence at trial.

16.     The term "INCIDENT" shall mean the circumstances and events alleged in your Complaint.

17.     As used herein, the term "EAST WIND" shall mean and refer to Plaintiff East Wind AG.

18.     As used herein, the term "TRIBE" shall mean and refer to the Torres Martinez Desert Cahuilla Indian Tribe.

19.     As used herein, the term "SUBJECT PROPERTY" shall mean and refer to the real property located at 91521 68th in Mecca, California.

20.     As used here, the term the "FIRE" shall mean and refer to the fire that occurred on the SUBJECT PROPERTY on or about January 8, 2023, which allegedly destroyed PRESTON MCCORMICK's family residence.

21.    Instruction Regarding Alleged Ambiguity: To avoid ambiguity, significant effort has been spent to define a number of terms used in the following discovery requests. If you or your attorney claim you do not understand the meaning of a term, please refer to the list of definitions or contact the opposing attorney for clarification, preferably before responses are due so that the alleged ambiguous term can be clarified.

22.    This request shall be deemed continuing so as to require further and supplemental responses if YOU receive, generate or tardily discover additional information which changes or alters YOUR response in any way within the scope of this request following compliance herewith.

23.    If you claim a privilege as to any information requested by any of these interrogatories, please specify the information involved and the basis for your claim of privilege to allow the court to rule on the validity of the claim.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that YOU have no evidence to support your 42 U.S.C. § Monell claims.

**REQUEST FOR ADMISSION NO. 2:**

Admit that YOU have no evidence to support your supervisory liability claims under 42 U.S.C. § 1983.

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU have no evidence to support your Fourth Amendment claims.

**REQUEST FOR ADMISSION NO. 4:**

Admit that YOU have no evidence to support your Fourteenth Amendment claims.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Defendant Riverside County did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 6:**

Admit that Defendant Riverside County Sheriff's Department did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Defendant Villasenor did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 8:**

Admit that Defendant Sherrif Chad Bianco did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 9:**

Admit that Defendant Jeffrey Anthony Van Wagenen Jr. did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 10:**

Admit that Defendant Jamie L. Asbury did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 11:**

Admit that a breach of a duty of care, if any, by Riverside County did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 12:**

Admit that a breach of a duty of care, if any, by Riverside County agents or employees did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 13:**

Admit that a breach of a duty of care, if any, by the Riverside County Sherrif's department did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 14:**

Admit that a breach of a duty of care, if any, by Defendant Jose-Trujillo Villasenor did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 15:**

Admit that a breach of a duty of care, if any, by Defendant Jeffrey Anthony van Wagenen Jr. did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 16:**

Admit that a breach of a duty of care, if any, by Defendant Jamie L. Asbury, did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 17:**

Admit that YOU were contributorily negligent in causing YOUR claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 18:**

Admit that YOU were comparatively at fault in causing YOUR claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 19:**

Admit that the Riverside County Sheriff's Department and its employees were not reckless or negligent with filing the warrant application.

**REQUEST FOR ADMISSION NO. 20:**

Admit that the Riverside County Sherriff's Department and its employees did not intentionally list 91521 Ave 68, Mecca, California as fee land on the Warrant.

**REQUEST FOR ADMISSION NO. 21:**

Admit that County of Riverside Sheriff's Department agents or employees did not violate your constitutional rights.

**REQUEST FOR ADMISSION NO. 22:**

Admit that YOU have no evidence to support your allegations that the Riverside County Sheriff's Department has policies, customs, or practices that result in constitutional violations.

**REQUEST FOR ADMISSION NO. 23:**

Admit that YOU owned East Wind AG on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 24:**

Admit that East Wind AG, was conducting business on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 25:**

Admit that East Wind AG was not lawfully conducting its marijuana business on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 26:**

Admit that there was a private residence located on 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 27:**

Admit that YOU lived, for ANY period of time, in a private residence located on 91521 Ave 68, Mecca, California. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 28:**

Admit that YOU were cultivating marijuana on the land of a private residence located at 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 29:**

Admit that YOU were manufacturing marijuana or marijuana related products on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 30:**

Admit that YOU were cultivating more than 6 marijuana plants on the land of a private residence located at 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home,

or other similar dwelling.

**REQUEST FOR ADMISSION NO. 31:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to cultivate marijuana on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 32:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to sell marijuana.

**REQUEST FOR ADMISSION NO. 33:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to transport marijuana.

**REQUEST FOR ADMISSION NO. 34:**

Admit that California's criminal laws, including the Health and Safety code, have the same force and effect on Torres Martinez Desert Cahuilla tribal reservations as they do on non-Indian Country. "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 35:**

Admit that California's criminal laws, including the Health and Safety Code, have the same force and effect on property held in trust for the Torres Martinez Desert Cahuilla Tribe as they do on non-Indian Country. "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 36:**

Admit that California's criminal laws, including the Health and Safety Code, have the same force and effect on tribal owned fee property as they do anywhere else in California.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4925-2324-0460 v2                    10

**REQUEST FOR ADMISSION NO. 37:**

Admit that state and local county criminal statutes are enforceable on "Indian Country." "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 38:**

Admit that YOU do not have a valid license or permit issued to YOU by the Torres Martinez Desert Cahuilla Tribe to cultivate marijuana.

**REQUEST FOR ADMISSION NO. 39:**

Admit that YOU do not have a valid license or permit issued to YOU by the Torres Martinez Desert Cahuilla Tribe to manufacture marijuana related products.

**REQUEST FOR ADMISSION NO. 40:**

Admit that the County of Riverside and its employees did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 41:**

Admit that the County of Riverside's Sheriff's Department and its employees did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 42:**

Admit that the County of Riverside is not vicariously liable for any claims resulting from this INCIDENT.

**REQUEST FOR ADMISSION NO. 43:**

Admit that the County of Riverside Sheriff's Department is not vicariously liable for any claims resulting from this INCIDENT.

**REQUEST FOR ADMISSION NO. 44:**

Admit that the Riverside County Sheriff's Department had probable cause to enter and search 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 45:**

Admit that you sold marijuana to persons under the age of 21.

**REQUEST FOR ADMISSION NO. 46:**

Admit that you sold marijuana to persons under the age of 18.

**REQUEST FOR ADMISSION NO. 47:**

Admit that you employed persons under the age of 21 to participate in marijuana related activities, including but not limited to cultivation, manufacture, sale, transport, or distribution.

**REQUEST FOR ADMISSION NO. 48:**

Admit that YOU employed persons under the age of 18 to participate in marijuana related activities, including but not limited to cultivation, manufacture, sale, transport, or distribution.

**REQUEST FOR ADMISSION NO. 49:**

Admit that you conducted marijuana related activities with the marijuana cultivated on 91521 Ave 68, Mecca, California (including but not limited to cultivation, sale, possession, use, transport, and manufacture) outside of the geographical boundaries of 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 50:**

Admit that you conducted marijuana related activities with the marijuana cultivated on 91521 Ave 68, Mecca, California (including but not limited to cultivation, sale, possession, use, transport, and manufacture) outside of "Indian Country." "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 51:**

Admit that YOUR marijuana operation on 91521 Ave 68, Mecca, California was not in compliance with California's Business and Professions Code on the date of this INCIDENT, including but not limited to the following: marijuana cultivation, manufacture, sale, use, possession, transportation, or distribution.

**REQUEST FOR ADMISSION NO. 52:**

Admit that YOUR marijuana operation on 91521 Ave 68, Mecca, California

was not in compliance with California's Health and Safety Code regarding one or more of the following: marijuana cultivation, manufacture, sale, use, possession, transportation, or distribution.

**REQUEST FOR ADMISSION NO. 53:**

Admit that the Riverside County Sheriff's Department had a lawful basis to search 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 54:**

Admit that Riverside County Sheriff's Department had a lawful basis to seize all items described in the Warrant.

**REQUEST FOR ADMISSION NO. 55:**

Admit that even if the Warrant listed 91521 Ave 68, Mecca, California as trust land instead of fee land, the facts in the Warrant were still sufficient to establish probable cause.

**REQUEST FOR ADMISSION NO. 56:**

Admit that your marijuana operation on 91521 Ave 68, Mecca, California, did not comply with California state marijuana regulations.

**REQUEST FOR ADMISSION NO. 57:**

Admit that your marijuana operation on 91521 Ave 68, Mecca, California, did not comply with local Riverside County marijuana regulations.

**REQUEST FOR ADMISSION NO. 58:**

Admit that Defendants did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 59:**

Admit that Defendants did not negligently interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 60:**

Admit that Defendants did not negligently interfere YOUR prospective economic relations.

**REQUEST FOR ADMISSION NO. 61:**

Admit that Defendants did not intentionally interfere with YOUR prospective economic relations.

**REQUEST FOR ADMISSION NO. 62:**

Admit that YOU have no evidence to support your claim for failure to protect from harm.

**REQUEST FOR ADMISSION NO. 63:**

Admit that YOU have no evidence to support your claim for battery

**REQUEST FOR ADMISSION NO. 64:**

Admit that YOU have no evidence to support your claim for assault.

**REQUEST FOR ADMISSION NO. 65:**

Admit that YOU have no evidence to support your claim for intentional infliction of emotional distress.

**REQUEST FOR ADMISSION NO. 66:**

Admit that YOU have no evidence to support your claim for negligent infliction of emotional distress.

**REQUEST FOR ADMISSION NO. 67:**

Admit that if any force was used on you during this INCIDENT, it was reasonable.

**REQUEST FOR ADMISSION NO. 68:**

Admit that the County of Riverside and its employees are not responsible in any way for the fire that occurred and the damages from that fire on 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 69:**

Admit that the County of Riverside Sheriff's Department and its employees are not responsible in any way for the fire that occurred and the damages from that fire on 91521 Ave 68, Mecca, California.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4925-2324-0460 v2

14

**REQUEST FOR ADMISSION NO. 70:**

Admit that you did not suffer any economic damages as a result of the INCIDENT that is the subject of this litigation.

DATED: _January 14, 2025          BURKE, WILLIAMS & SORENSEN, LLP


By:  _/s/ Nathan A. Oyster_
                    Nathan A. Oyster
                    Michaela B. Sozio
                    Caylin W. Jones

Attorneys for Defendants
COUNTY OF RIVERSIDE, SHERIFF CHAD BIANCO, JEFFREY ANTHONY VAN WAGENEN, AND JOSE TRUJILLO VILLASENOR

## PROOF OF SERVICE

**Preston McCormick, et al. v. County of Riverside et al.**
**Case No. 5:23-cv-02569-SSS-SP**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 444 South Flower Street, 40th Floor, Los Angeles, CA 90071-2953.

On January 14, 2025, I served true copies of the following document(s) described as **DEFENDANT JOSE TRUJILLO VILLASENOR'S FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFF PRESTON MCCORMICK** on the interested parties in this action as follows:

| | |
|---|---|
| Gregory J. Morrow, Esq.<br>MORROW LAW GROUP INC<br>1801 Century Park East<br>24th Floor<br>Los Angeles, CA 90067<br>Email: gregory.j.morrow@hotmail.com | Attorneys for Plaintiffs,<br>*Preston McCormick and East Wind Ag* |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address gmitchell@bwslaw.com to the persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 14, 2025, at Los Angeles, California.

*Leticia Espinoza*
Leticia Espinozal

# EXHIBIT H

Nathan A. Oyster (SBN 225307)
E-mail: noyster@bwslaw.com
Michaela B. Sozio (SBN 179148)
Email: msozio@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2953
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
COUNTY OF RIVERSIDE (also erroneously sued herein as RIVERSIDE COUNTY SHERIFF'S DEPARTMENT), JEFFREY ANTHONY VAN WAGENEN, JR., SHERIFF CHAD BIANCO, and JOSE TRUJILLO VILLASENOR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON MCCORMICK, an individual; and EAST WIND AG, a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF RIVERSIDE, a public entity; JEFFREY ANTHONY VAN WAGENEN, JR., an individual and in his official capacity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a division of a public entity; SHERIFF CHAD BIANCO, an individual and in his official capacity; JOSE-TRUJILLO VILLASENOR, an individual and in his official capacity; IMPERIAL IRRIGATION DISTRICT, a public entity; JAMIE L. ASBURY, an individual and in her official capacity; | Case No. 5:23-cv-02569-SSS-SP<br><br>**DEFENDANT COUNTY OF RIVERSIDE'S FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFF EAST WIND AG**<br><br>Judge Sunshine Suzanne Sykes<br><br>Magistrate Judge Sheri Pym |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4910-8772-6608 v1                    1

and DOES 1 through 150, individually, jointly and severally,

Defendants.

| | |
|---|---|
| **PROPOUNDING PARTY:** | DEFENDANT COUNTY OF RIVERSIDE |
| **RESPONDING PARTY:** | PLAINTIFF EAST WIND AG |
| **SET NO.:** | One |

TO PLAINTIFF EAST WIND AG AND TO THEIR ATTORNEYS OF RECORD:

Pursuant to Federal Rule of Civil Procedure, Rule 36 of the Federal Rules of Civil Procedure, Defendant COUNTY OF RIVERSIDE propounds the requests for admission below to Plaintiff EAST WIND AG Responses are due within 30 days.

## DEFINITIONS AND INSTRUCTIONS

1. You must deliver a written response to these Requests for Admission to opposing counsel within the time proscribed by the Rule 36 of the Federal Rules of Civil Procedure.

2. If you fail to comply with the provisions of Rule 36 of the Federal Rules of Civil Procedure with respect to this Request for Admissions, each of the matters of which an admission is requested will be deemed admitted.

3.    "YOU" and "YOUR" shall mean and refer to Plaintiff EAST WIND AG individually and anyone acting on your behalf, including, but not limited to, agents, employees, representatives, attorneys, accountants, investigators, or anyone else acting in your interest, on your behalf, or at your request, and each of them.

4.    "The lawsuit" shall mean the case styled *PRESTON MCCORMICK et al. v. COUNTY OF RIVERSIDE et al.*, now pending in the United States District Court, Central District of California, Case No. 5:23-cv-02569-SSS-SP.

5.     "COMMUNICATION" means any type of written and oral communication including but not limited to any statements, inquiries, discussions, conversations, dialogues, correspondence, consultations, negotiations, notices, agreements, meetings, letters, email, interviews, telegrams, and faxes.

6.     "PERSON(S)" as used herein shall mean and include natural persons, governmental entities and agencies, proprietorships, partnerships, corporations and all other forms of organizations or associations.

7.     "IDENTIFY," as used herein in connection with a "document," "documents" or "written statement" means:

(a) State the type of document (letter, memorandum, check, draft, etc.) and the date of document, the name and address of the person, if any, to whom the document was addressed, the names and addresses of all persons to whom copies of the document were to be or have been sent and the firm or firms with which all such persons were associated at the date of the document;

(b) State whether you, or anyone acting on your behalf, are in possession of the original of the document or a copy thereof and if not in possession of the original or a copy, furnish the name and address of the custodian of the original or a copy;

(c) State the present location of the document; and

(d) Attach a copy of the document to your answers.

8.     When used with respect to a person, the word "IDENTIFY" means to state the (i) name, (ii) current address and (iii) employer, if any.

9.     "DESCRIBE" as used herein means:

(a) Describe fully by reference to underlying facts rather than by ultimate facts or conclusions of fact or law;

(b) Where applicable, particularize as to:

i. Time;

ii. Place; and

iii. Manner.

10.    The term "DOCUMENT(S)" is used in its customary broad sense and includes, without limitation, the following items regardless of origin or location, whether printed or recorded, or filmed, or reproduced by any other mechanical, electronic, or magnetic process, or written or produced by hand, whether or hot claimed to be privileged against discovery on any ground, and whether an original, master or copy, namely contracts; agreements; communications, including intercompany communications; correspondence; cablegrams, radiograms and telegrams; records of telephone conversations, meetings and conferences, including lists of persons attending meetings or conferences; summaries and records of personal conversations or interviews, books, manuals; publications and diaries; calendars, laboratory and engineering reports and notebooks; blueprints; charts; plans; sketches and drawings; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents and applications for patents; patent appraisals and patent ability or validity searches and studies; sales records, including purchase orders and invoices; reports and summaries of negotiations; brochures; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press releases; publicity, trade and product releases; draft or original or preliminary notes on, and marginal comments appearing on, any DOCUMENT; other reports and records; and any other information-containing paper, writing or physical thing in the possession, custody or control of YOU or YOUR attorneys. If the original of the DOCUMENT contains information not reflected on the copy, please produce the original. DOCUMENT is broadly defined to include all media on which information is recorded or stored.

11.    The words "OR" and "ANY" appearing in any request should not be read so as to eliminate any part of the request, but whenever applicable, it should have the same meaning as the words "and" and "all," respectively. For example, a

request stating "support or refer" should be read as "support and refer" if an answer that does both can be made.

12.     Wherever the word "INCLUDING" appears, the meaning intended is "including, but not limited to."

13.     The plural includes the singular and vice versa.

14.     The masculine includes the feminine and vice versa.

15.     The terms "RELATE," "RELATED" and "RELATING" are intended in their broadest meaning, including, without limitation, the following concepts: anything that embodies, comprises, reflects, identifies, states, refers to, comments on, responds to, describes, analyzes, contains information concerning, or is in any way pertinent to the subject matter. The terms are not restricted to the notion of legal relevance for the purposes of admissibility of evidence at trial.

16.     The term "INCIDENT" shall mean the circumstances and events alleged in your Complaint.

17.     As used herein, the term "EAST WIND" shall mean and refer to Plaintiff East Wind AG.

18.     As used herein, the term "TRIBE" shall mean and refer to the Torres Martinez Desert Cahuilla Indian Tribe.

19.     As used herein, the term "SUBJECT PROPERTY" shall mean and refer to the real property located at 91521 68th in Mecca, California.

20.     As used here, the term the "FIRE" shall mean and refer to the fire that occurred on the SUBJECT PROPERTY on or about January 8, 2023, which allegedly destroyed PRESTON MCCORMICK's family residence.

21.     Instruction Regarding Alleged Ambiguity: To avoid ambiguity, significant effort has been spent to define a number of terms used in the following discovery requests. If you or your attorney claim you do not understand the meaning of a term, please refer to the list of definitions or contact the opposing attorney for

clarification, preferably before responses are due so that the alleged ambiguous term can be clarified.

22.    This request shall be deemed continuing so as to require further and supplemental responses if YOU receive, generate or tardily discover additional information which changes or alters YOUR response in any way within the scope of this request following compliance herewith.

23.    If you claim a privilege as to any information requested by any of these interrogatories, please specify the information involved and the basis for your claim of privilege to allow the court to rule on the validity of the claim.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that YOU have no evidence to support your 42 U.S.C. § Monell claims.

**REQUEST FOR ADMISSION NO. 2:**

Admit that YOU have no evidence to support your supervisory liability claims under 42 U.S.C. § 1983.

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU have no evidence to support your Fourth Amendment claims.

**REQUEST FOR ADMISSION NO. 4:**

Admit that Defendant Riverside County did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Defendant Riverside County did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 6:**

Admit that Defendant Villasenor did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Defendant Sherrif Chad Bianco did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 8:**

Admit that Defendant Jeffrey Anthony Van Wagenen Jr. did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 9:**

Admit that Defendant Jamie L. Asbury did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 10:**

Admit that a breach of a duty of care, if any, by Riverside County did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 11:**

Admit that a breach of a duty of care, if any, by Riverside County agents or employees did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 12:**

Admit that a breach of a duty of care, if any, by the Riverside County Sherrif's department did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 13:**

Admit that a breach of a duty of care, if any, by Defendant Jose-Trujillo Villasenor did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 14:**

Admit that a breach of a duty of care, if any, by Defendant Jeffrey Anthony van Wagenen Jr. did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 15:**

Admit that a breach of a duty of care, if any, by Defendant Jamie L. Asbury, did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 16:**

Admit that YOU were contributorily negligent in causing YOUR claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 17:**

Admit that YOU were comparatively at fault in causing YOUR claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 18:**

Admit that the Riverside County Sheriff's Department and its employees were not reckless or negligent with filing the warrant application.

**REQUEST FOR ADMISSION NO. 19:**

Admit that the Riverside County Sherriff's Department and its employees did not intentionally list 91521 Ave 68, Mecca, California as fee land on the Warrant.

**REQUEST FOR ADMISSION NO. 20:**

Admit that County of Riverside Sheriff's Department agents or employees did not violate your constitutional rights.

**REQUEST FOR ADMISSION NO. 21:**

Admit that YOU have no evidence to support your allegations that the Riverside County Sheriff's Department has policies, customs, or practices that result in constitutional violations.

**REQUEST FOR ADMISSION NO. 22:**

Admit that East Wind AG was conducting business on 91521 Ave 68, Mecca, California on the date of this incident.

**REQUEST FOR ADMISSION NO. 23:**

Admit that East Wind AG was not lawfully conducting its marijuana business on 91521 Ave 68, Mecca, California on the date of this INCIDENT..

**REQUEST FOR ADMISSION NO. 24:**

Admit that there was a private residence located on 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an

apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 25:**

Admit that YOU were cultivating marijuana on the land of a private residence located at 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 26:**

Admit that YOU were manufacturing marijuana or marijuana related products on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 27:**

Admit that YOU were cultivating more than 6 marijuana plants on the land of a private residence located at 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 28:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to cultivate marijuana on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 29:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to sell marijuana.

**REQUEST FOR ADMISSION NO. 30:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to transport marijuana.

**REQUEST FOR ADMISSION NO. 31:**

Admit that California's criminal laws, including the Health and Safety code, have the same force and effect on Torres Martinez Desert Cahuilla tribal reservations as they do on non-Indian Country. "Indian Country" is any land that is

a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 32:**

Admit that California's criminal laws, including the Health and Safety Code, have the same force and effect on property held in trust for the Torres Martinez Desert Cahuilla Tribe as they do on non-Indian Country. "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 33:**

Admit that California's criminal laws, including the Health and Safety Code, have the same force and effect on tribal owned fee property as they do on non-Indian Country. "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 34:**

Admit that state and local county criminal statutes are enforceable on "Indian Country." "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 35:**

Admit that YOU do not have a valid license issued to you by the Torres Martinez Desert Cahuilla Tribe to cultivate marijuana.

**REQUEST FOR ADMISSION NO. 36:**

Admit that YOU do not have a valid license issued to you by the Torres Martinez Desert Cahuilla Tribe to manufacture marijuana related products.

**REQUEST FOR ADMISSION NO. 37:**

Admit that YOU do not have a valid license issued to you by the Torres Martinez Desert Cahuilla Tribe to manufacture marijuana related products.

**REQUEST FOR ADMISSION NO. 38:**

Admit that the County of Riverside and its employees did not intentionally

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4910-8772-6608 v1                                    10

interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 39:**

Admit that the County of Riverside's Sheriff's Department and its employees did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 40:**

Admit that the County of Riverside is not vicariously liable for any claims resulting from this INCIDENT.

**REQUEST FOR ADMISSION NO. 41:**

Admit that the County of Riverside Sheriff's Department is not vicariously liable for any claims resulting from this INCIDENT.

**REQUEST FOR ADMISSION NO. 42:**

Admit that the Riverside County Sheriff's Department had probable cause to enter and search 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 43:**

Admit that you sold marijuana to persons under the age of 21.

**REQUEST FOR ADMISSION NO. 44:**

Admit that you sold marijuana to persons under the age of 18.

**REQUEST FOR ADMISSION NO. 45:**

Admit that you employed persons under the age of 21 to participate in marijuana related activities, including but not limited to cultivation, manufacture, sale, transport, or distribution.

**REQUEST FOR ADMISSION NO. 46:**

Admit that YOU employed persons under the age of 18 to participate in marijuana related activities, including but not limited to cultivation, manufacture, sale, transport, or distribution.

**REQUEST FOR ADMISSION NO. 47:**

Admit that YOU conducted marijuana related activities with the marijuana cultivated on 91521 Ave 68, Mecca, California (including but not limited to

cultivation, sale, possession, use, transport, and manufacture) outside of the geographical boundaries of 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 48:**

Admit that YOU conducted marijuana related activities with the marijuana cultivated on 91521 Ave 68, Mecca, California (including but not limited to cultivation, sale, possession, use, transport, and manufacture) outside of "Indian Country." "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 49:**

Admit that YOUR marijuana operation on 91521 Ave 68, Mecca, California was not in compliance with California's Business and Professions Code on the date of this INCIDENT, including but not limited to the following: marijuana cultivation, manufacture, sale, use, possession, transportation, or distribution.

**REQUEST FOR ADMISSION NO. 50:**

Admit that YOUR marijuana operation on 91521 Ave 68, Mecca, California was not in compliance with California's Health and Safety Code regarding one or more of the following: marijuana cultivation, manufacture, sale, use, possession, transportation, or distribution.

**REQUEST FOR ADMISSION NO. 51:**

Admit that the Riverside County Sheriff's Department had a lawful basis to search 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 52:**

Admit that Riverside County Sheriff's Department had a lawful basis to seize all items described in the Warrant.

**REQUEST FOR ADMISSION NO. 53:**

Admit that even if the Warrant listed 91521 Ave 68, Mecca, California as trust land instead of fee land, the facts in the Warrant were still sufficient to establish probable cause..

**REQUEST FOR ADMISSION NO. 54:**

Admit that your marijuana operation on 91521 Ave 68, Mecca, California, did not comply with California state marijuana regulations.

**REQUEST FOR ADMISSION NO. 55:**

Admit that your marijuana operation on 91521 Ave 68, Mecca, California, did not comply with local Riverside County marijuana regulations.

**REQUEST FOR ADMISSION NO. 56:**

Admit that Defendants did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 57:**

Admit that Defendants did not negligently interfere with YOUR contractual relations..

**REQUEST FOR ADMISSION NO. 58:**

Admit that Defendants did not negligently interfere YOUR prospective economic relations.

**REQUEST FOR ADMISSION NO. 59:**

Admit that Defendants did not intentionally interfere with YOUR prospective economic relations.

**REQUEST FOR ADMISSION NO. 60:**

Admit that the County of Riverside and its employees are not responsible in any way for the fire that occurred and the damages from that fire on 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 61:**

Admit that the County of Riverside Sheriff's Department and its employees

are not responsible in any way for the fire that occurred and the damages from that fire on 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 62:**

Admit that you did not suffer any economic damages as a result of the INCIDENT that is the subject of this litigation..

DATED: _January 14, 2025          BURKE, WILLIAMS & SORENSEN, LLP


By:   */s/ Nathan A. Oyster*
          Nathan A. Oyster
          Michaela B. Sozio
          Caylin W. Jones

Attorneys for Defendants
COUNTY OF RIVERSIDE, SHERIFF CHAD BIANCO, JEFFREY ANTHONY VAN WAGENEN, AND JOSE TRUJILLO VILLASENOR

## PROOF OF SERVICE

**Preston McCormick, et al. v. County of Riverside et al.
Case No. 5:23-cv-02569-SSS-SP**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 444 South Flower Street, 40th Floor, Los Angeles, CA 90071-2953.

On January 14, 2025, I served true copies of the following document(s) described as **DEFENDANT COUNTY OF RIVERSIDE'S FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFF EAST WIND AG** on the interested parties in this action as follows:

Gregory J. Morrow, Esq.     Attorneys for Plaintiffs,
MORROW LAW GROUP INC   *Preston McCormick and East*
1801 Century Park East     *Wind Ag*
24th Floor
Los Angeles, CA 90067
Email: gregory.j.morrow@hotmail.com

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address gmitchell@bwslaw.com to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 14, 2025, at Los Angeles, California.


*Leticia Espinoza*
Leticia Espinozal

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4910-8772-6608 v1      1

# EXHIBIT I

Nathan A. Oyster (SBN 225307)
E-mail:  noyster@bwslaw.com
Michaela Battista Sozio (SBN 179148)
E-mail:  msozio@bwslaw.com
Zareh Bursalyan (SBN 356603)
E-mail:  zbursalyan@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2942
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
COUNTY OF RIVERSIDE (also sued
herein as RIVERSIDE COUNTY
SHERIFF'S DEPARTMENT), JEFFREY
ANTHONY VAN WAGENEN, JR.,
SHERIFF CHAD BIANCO, and JOSE
TRUJILLO VILLASENOR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON MCCORMICK, an individual; and EAST WIND AG, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF RIVERSIDE, a public entity; JEFFREY ANTHONY VAN WAGENEN, JR., an individual and in his official capacity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a division of a public entity; SHERIFF CHAD BIANCO, an individual and in his official capacity; JOSE-TRUJILLO VILLASENOR, an individual and in his official capacity; IMPERIAL IRRIGATION DISTRICT, a public entity; JAMIE L. ASBURY, an individual and in her official capacity; and DOES 1 through 150, individually, jointly and severally,<br><br>Defendant. | Case No. 5:23-cv-02569-SSS-SP<br><br>**DISCOVERY MATTER**<br><br>**STIPULATION REGARDING PLAINTIFFS' MOTION TO WITHDRAW AND AMEND DEEMED ADMISSIONS**<br><br>*Filed concurrently with [Proposed] Order*<br><br>Magistrate Judge Sheri Pym |

/ / /

4905-0549-2538 v5

1

**TO THE HONORABLE COURT:**

By and through their counsel of record in this action, Plaintiffs PRESTON MCCORMICK and EAST WIND AG ("Plaintiffs"), on the one hand, and Defendants COUNTY OF RIVERSIDE, JEFFREY ANTHONY VAN WAGENEN JR., SHERIFF CHAD BIANCO, and JOSE TRUJILLO VILLASENOR, ("Defendants"), on the other hand, hereby stipulate as follows:

1.      The parties offer this stipulation as part of Plaintiffs' forthcoming Motion to Withdraw and Amend Admissions, to resolve any procedural issues regarding the timing and scope of Plaintiffs' Motion.  The parties' agreement is set forth below.

2.      On April 22, 2025, Plaintiffs served their portion of a Local Rule 37-2 Joint Stipulation as well as completed declaration(s) and exhibits in support thereof on the Defendants regarding Plaintiffs' intent to withdraw and amend certain deemed admissions.

3.      Defendants agree that they will not assert that the Joint Stipulation did not comply with the time requirements of Local Rule 37-2 and further agree that Defendants will provide their portion of the Joint Stipulation along with supporting declaration(s) and exhibits as well as Defendants' authorization to affix Defendants' signature thereto with sufficient time on April 29, 2025 to allow Plaintiffs to assemble the completed Joint Stipulation for filing on April 29, 2025 once the final assembled document is approved by Defendants.

4.      In exchange for Defendants' agreement set forth in paragraph 3 above, Plaintiffs agree that the only deemed admissions that Plaintiffs will move to withdraw and amend are the Requests for Admission identified below:

a.      Defendant County of Riverside's First Set of Requests for Admissions to Plaintiff East Wind Ag, Nos.  1, 2, 3, 11, 12, 13, 14, 15, 21, 42, 43, 51, 52, and 53.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4905-0549-2538 v5

2

Case No. 5:23-cv-02569-SSS-SP
STIPULATION RE PLAINTIFFS' MOTION TO
WITHDRAW DEEMED ADMISSIONS

b. Defendant Jose Trujillo Villasenor's First Set of Request for Admissions to Plaintiff Preston McCormick, Nos. 1, 2, 3, 4, 5, 6, 11, 12, 13, 14, 15, 21, 42, 43, 44, 51, 52, and 53.

5. The parties agree that Plaintiffs shall not seek withdrawal or amendment of any other Requests for Admissions in either Defendant County of Riverside's First Set of Requests for Admissions to Plaintiff East Wind Ag or Defendant Jose Trujillo Villasenor's First Set of Request for Admissions to Plaintiff Preston McCormick. All Requests for Admissions in either Defendant County of Riverside's First Set of Requests for Admissions to Plaintiff East Wind Ag or Defendant Jose Trujillo Villasenor's First Set of Request for Admissions to Plaintiff Preston McCormick, except for those identified in paragraph 4, shall remain deemed admitted.

6. With respect to the Requests for Admissions identified in paragraphs 4(a) and 4(b), Plaintiffs shall retain the right to seek the withdrawal and amendment of those admissions, and Defendants shall retain the right to oppose Plaintiffs' efforts to withdraw those admissions.

7. Plaintiffs shall revise their portion of the Joint Stipulation to reflect that Plaintiffs only seek withdrawal and amendment of the deemed admissions identified in paragraphs 4(a) and 4(b). Plaintiffs shall provide their portion of the revised Local Rule 37-2 Joint Stipulation that conforms to this Stipulation to the Defendants by no later than 10:00 A.M. on Sunday, April 27, 2025.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4905-0549-2538 v5

3

Case No. 5:23-cv-02569-SSS-SP
STIPULATION RE PLAINTIFFS' MOTION TO WITHDRAW DEEMED ADMISSIONS

8.      Once Plaintiffs provide their revised Local Rule 37-2 Joint Stipulation to Defendants in conformity with this Stipulation, Defendants shall provide their portion of the Local Rule 37-2 Joint Stipulation together with all supporting declaration(s) and exhibits as well as Defendants' written authorization to affix Defendants' electronic signature on the Joint Stipulation on or before April 29, 2025.

**IT IS SO STIPULATED.**

Dated:  April 26, 2025                    BURKE, WILLIAMS & SORENSEN, LLP


By: _/s/ Nathan A. Oyster_
    Nathan A. Oyster[1]
    Michaela Battista Sozio
    Zareh Bursalyan
Attorneys for Defendants
COUNTY OF RIVERSIDE, JEFFREY ANTHONY VAN WAGENEN JR., SHERIFF CHAD BIANCO, and JOSE TRUJILLO VILLASENOR


Dated:  April 26, 2025                    MORROW LAW GROUP INC


By: _/s/ Gregory J. Morrow_
    Gregory J. Morrow
Attorney for Plaintiffs
PRESTON MCCORMICK and EAST WIND AG

---

[1] As the filer of this Stipulation, I attest that counsel for Plaintiff concurs in the content of the Stipulation and has authorized its filing.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4905-0549-2538 v5

4

Case No. 5:23-cv-02569-SSS-SP
STIPULATION RE PLAINTIFFS' MOTION TO WITHDRAW DEEMED ADMISSIONS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON MCCORMICK, an individual; and EAST WIND AG, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF RIVERSIDE, a public entity; JEFFREY ANTHONY VAN WAGENEN, JR., an individual and in his official capacity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a division of a public entity; SHERIFF CHAD BIANCO, an individual and in his official capacity; JOSE-TRUJILLO VILLASENOR, an individual and in his official capacity; IMPERIAL IRRIGATION DISTRICT, a public entity; JAMIE L. ASBURY, an individual and in her official capacity; and DOES 1 through 150, individually, jointly and severally,<br><br>Defendant. | Case No. 5:23-cv-02569-SSS-SP<br><br>**DISCOVERY MATTER**<br><br>**[PROPOSED] ORDER GRANTING STIPULATION REGARDING PLAINTIFFS' MOTION TO WITHDRAW AND AMEND DEEMED ADMISSIONS** |

The Court, having considered the Parties' Stipulation regarding Plaintiffs' Motion to Withdraw Deemed Admissions, and finding good cause, **hereby GRANTS the Stipulation and ORDERS as follows:**

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-4860-0891 v5

1

Case No. 5:23-cv-02569-SSS-SP
[PROPOSED] ORDER

1. On April 22, 2025, Plaintiffs served their portion of a Local Rule 37-2 Joint Stipulation on the Defendants regarding Plaintiffs' intent to withdraw and amend certain deemed admissions.

2. In opposing the Motion, Defendants shall not assert that the Joint Stipulation did not comply with the time requirements of Local Rule 37-2.

3. The only deemed admissions that Plaintiffs will move to withdraw and amend are the Requests for Admission identified below:

   a. Defendant County of Riverside's First Set of Requests for Admissions to Plaintiff East Wind Ag, Nos. 1, 2, 3, 11, 12, 13, 14, 15, 21, 42, 43, 51, 52, and 53.

   b. Defendant Jose Trujillo Villasenor's First Set of Request for Admissions to Plaintiff Preston McCormick, Nos. 1, 2, 3, 4, 5, 6, 11, 12, 13, 14, 15, 21, 42, 43, 44, 51, 52, and 53.

4. Plaintiffs shall not seek withdrawal or amendment of any other Requests for Admissions in either Defendant County of Riverside's First Set of Requests for Admissions to Plaintiff East Wind Ag or Defendant Jose Trujillo Villasenor's First Set of Request for Admissions to Plaintiff Preston McCormick. All Requests for Admissions in either Defendant County of Riverside's First Set of Requests for Admissions to Plaintiff East Wind Ag or Defendant Jose Trujillo Villasenor's First Set of Request for Admissions to Plaintiff Preston McCormick, except for those identified in paragraph 3, shall remain deemed admitted.

5. With respect to the Requests for Admissions identified in paragraphs 3(a) and 3(b), Plaintiffs shall retain the right seek the withdrawal and amendment of those admissions, and Defendants shall retain the right to oppose Plaintiffs' efforts to withdraw those admissions.

6. Plaintiffs shall revise their portion of the Joint Stipulation to reflect that Plaintiffs only seek withdrawal and amendment of the deemed admissions identified in paragraphs 3(a) and 3(b). Plaintiffs shall provide their portion of the revised

Local Rule 37-2 Joint Stipulation that conforms to this Stipulation to the Defendants by no later than 10:00 a.m. on Sunday, April 27, 2025.

7.    Once Plaintiffs provide their revised Local Rule 37-2 Joint Stipulation to Defendants in conformity with this Stipulation, Defendants shall provide their portion of the Local Rule 37-2 Joint Stipulation together with all supporting declarations and exhibits, and Defendants' written authorization to affix Defendants' electronic signature on the Joint Stipulation on or before April 29, 2025.

**IT IS SO ORDERED.**

DATED: _____, 2025

_____
Honorable Sheri Pym
United States Magistrate Judge

# Responses, Replies and Other Motion Related Documents

5:23-cv-02569-SSS-SP Preston
McCormick et al v. County of Riverside et
al

ACCO,
(SPx),DISCOVERY,MANADR,PROTORD

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Oyster, Nathan on 4/26/2025 at 11:18 AM PDT and filed on 4/26/2025

**Case Name:**        Preston McCormick et al v. County of Riverside et al
**Case Number:**     5:23-cv-02569-SSS-SP
**Filer:**           Chad Bianco
                     County of Riverside
                     Jose-Trujillo Villasenor
                     Jeffrey Anthony Van Wagenen, Jr
**Document Number:** 52

**Docket Text:**
**JOINT STIPULATION to First EX PARTE APPLICATION for Order for Modify Scheduling Order *to Allow Hearing on Plaintiffs' Motion to Withdraw Admissions*First EX PARTE APPLICATION to Extend Discovery Cut-Off Date to 5/16/2025[46] filed by Defendants Chad Bianco, County of Riverside, Jose-Trujillo Villasenor, Jeffrey Anthony Van Wagenen, Jr. (Attachments: # (1) Proposed Order)(Oyster, Nathan)**

**5:23-cv-02569-SSS-SP Notice has been electronically mailed to:**

Caylin Jones     cjones@bwslaw.com, lespinoza@bwslaw.com

Gregory J Morrow     gregory.j.morrow@hotmail.com

Michaela Battista Sozio     msozio@bwslaw.com, tpaik@bwslaw.com

Nathan A. Oyster     noyster@bwslaw.com, dfavela@bwslaw.com, LEspinoza@bwslaw.com

Zareh Bursalyan     zbursalyan@bwslaw.com, tmehra@bwslaw.com

**5:23-cv-02569-SSS-SP Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\MCCORMICK - Stipulation re Motion to Withdraw Deemed Admissions.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=4/26/2025] [FileNumber=39997598-0
] [72453394b66edc19774cfd39cb34d68c1960932662390bf67635d6e0bf4645e9023

b7da493320220bab110a9b5155b5e47bd9e9e632ff0e926d2163c6db2eb59]]

**Document description:**Proposed Order

**Original filename:**C:\fakepath\MCCORMICK - Proposed Order Stipulation re Motion to Withdraw Deemed Admissions.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=4/26/2025] [FileNumber=39997598-1

] [6ff1cdd174e1a71d84452a0e46818ebc149623da0a9c16c250d27dc48d4b6cf0da3

b735db4f548c7dd738fda149817fc3a304b05497476882e3e2c6002d1dba9]]

**Favela, Diana**

| | |
|---|---|
| **From:** | ProposedOrder_DoNotReply@cacd.uscourts.gov |
| **Sent:** | Saturday, April 26, 2025 11:22 AM |
| **To:** | Favela, Diana; Oyster, Nathan A. |
| **Subject:** | Proposed Orders (Confirmation): 5:23-cv-02569-SSS-SP |
| **Attachments:** | 52.pdf; MCCORMICK - Proposed Order Stipulation re Motion to Withdraw Deemed Admissions.docx |

[EXTERNAL]

Thank you for submitting Proposed Order documents for Case: 5:23-cv-02569-SSS-SP

Files you attached:

   52.pdf

   MCCORMICK - Proposed Order Stipulation re Motion to Withdraw Deemed Admissions.docx

United States District Court, Central District of California.

1

# EXHIBIT J

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON MCCORMICK, an individual; and EAST WIND AG, a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF RIVERSIDE, a public entity; JEFFREY ANTHONY VAN WAGENEN, JR., an individual and in his official capacity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a division of a public entity; SHERIFF CHAD BIANCO, an individual and in his official capacity; JOSE-TRUJILLO VILLASENOR, an individual and in his official capacity; IMPERIAL IRRIGATION DISTRICT, a public entity; JAMIE L. ASBURY, an individual and in her official capacity; and DOES 1 through 150, individually, jointly and severally,<br><br>    Defendant. | Case No. 5:23-cv-02569-SSS-SPx<br><br>**DISCOVERY MATTER**<br><br>**ORDER GRANTING STIPULATION REGARDING PLAINTIFFS' MOTION TO WITHDRAW AND AMEND DEEMED ADMISSIONS** |

The Court, having considered the Parties' Stipulation regarding Plaintiffs' Motion to Withdraw Deemed Admissions (docket no. 52), and finding good cause, **hereby GRANTS the Stipulation and ORDERS as follows:**

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-4860-0891 v5

1

Case No. 5:23-cv-02569-SSS-SP
[PROPOSED] ORDER

1.      On April 22, 2025, Plaintiffs served their portion of a Local Rule 37-2 Joint Stipulation on the Defendants regarding Plaintiffs' intent to withdraw and amend certain deemed admissions.

2.      In opposing the Motion, Defendants shall not assert that the Joint Stipulation did not comply with the time requirements of Local Rule 37-2.

3.      The only deemed admissions that Plaintiffs will move to withdraw and amend are the Requests for Admission identified below:

      a.      Defendant County of Riverside's First Set of Requests for Admissions to Plaintiff East Wind Ag, Nos.  1, 2, 3, 11, 12, 13, 14, 15, 21, 42, 43, 51, 52, and 53.

      b.      Defendant Jose Trujillo Villasenor's First Set of Request for Admissions to Plaintiff Preston McCormick, Nos. 1, 2, 3, 4, 5, 6, 11, 12, 13, 14, 15, 21, 42, 43, 44, 51, 52, and 53.

4.      Plaintiffs shall not seek withdrawal or amendment of any other Requests for Admissions in either Defendant County of Riverside's First Set of Requests for Admissions to Plaintiff East Wind Ag or Defendant Jose Trujillo Villasenor's First Set of Request for Admissions to Plaintiff Preston McCormick. All Requests for Admissions in either Defendant County of Riverside's First Set of Requests for Admissions to Plaintiff East Wind Ag or Defendant Jose Trujillo Villasenor's First Set of Request for Admissions to Plaintiff Preston McCormick, except for those identified in paragraph 3, shall remain deemed admitted.

5.      With respect to the Requests for Admissions identified in paragraphs 3(a) and 3(b), Plaintiffs shall retain the right seek the withdrawal and amendment of those admissions, and Defendants shall retain the right to oppose Plaintiffs' efforts to withdraw those admissions.

6.      Plaintiffs shall revise their portion of the Joint Stipulation to reflect that Plaintiffs only seek withdrawal and amendment of the deemed admissions identified in paragraphs 3(a) and 3(b).  Plaintiffs shall provide their portion of the revised

Local Rule 37-2 Joint Stipulation that conforms to this Stipulation to the Defendants by no later than 10:00 a.m. on Sunday, April 27, 2025.

7.    Once Plaintiffs provide their revised Local Rule 37-2 Joint Stipulation to Defendants in conformity with this Stipulation, Defendants shall provide their portion of the Local Rule 37-2 Joint Stipulation together with all supporting declarations and exhibits, and Defendants' written authorization to affix Defendants' electronic signature on the Joint Stipulation on or before April 29, 2025.

**IT IS SO ORDERED.**

DATED:  April 30, 2025

_____
Honorable Sheri Pym
United States Magistrate Judge

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-4860-0891 v5

3

Case No. 5:23-cv-02569-SSS-SP
[PROPOSED] ORDER

**Paik, Trish**

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **Sent:** | Wednesday, April 30, 2025 3:14 PM |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 5:23-cv-02569-SSS-SP Preston McCormick et al v. County of Riverside et al Order on Motion for Admissions |

[EXTERNAL]

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

## Notice of Electronic Filing

The following transaction was entered on 4/30/2025 at 3:13 PM PDT and filed on 4/30/2025

**Case Name:** Preston McCormick et al v. County of Riverside et al

**Case Number:** 5:23-cv-02569-SSS-SP

**Filer:**

**Document Number:** 54

**Docket Text:**
**ORDER GRANTING STIPULATION REGARDING PLAINTIFFS' MOTION TO WITHDRAW AND AMEND DEEMED ADMISSIONS by Magistrate Judge Sheri Pym. [53] The Court, having considered the Parties' Stipulation regarding Plaintiffs' Motion to Withdraw Deemed Admissions (docket no. 52), and finding good cause, hereby GRANTS the Stipulation. [See Order for further details.] (san)**

**5:23-cv-02569-SSS-SP Notice has been electronically mailed to:**

Nathan A. Oyster    lespinoza@bwslaw.com, dfavela@bwslaw.com, noyster@bwslaw.com

Gregory J Morrow    gregory.j.morrow@hotmail.com

Zareh Bursalyan    zbursalyan@bwslaw.com, tmehra@bwslaw.com

1

Caylin Jones    lespinoza@bwslaw.com, cjones@bwslaw.com

Michaela Battista Sozio    tpaik@bwslaw.com, msozio@bwslaw.com

**5:23-cv-02569-SSS-SP Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

# EXHIBIT K

Nathan A. Oyster (SBN 225307)
E-mail: noyster@bwslaw.com
Michaela B. Sozio (SBN 179148)
Email: msozio@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2953
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
COUNTY OF RIVERSIDE (also erroneously sued herein as RIVERSIDE COUNTY SHERIFF'S DEPARTMENT), JEFFREY ANTHONY VAN WAGENEN, JR., SHERIFF CHAD BIANCO, and JOSE TRUJILLO VILLASENOR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON MCCORMICK, an individual; and EAST WIND AG, a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF RIVERSIDE, a public entity; JEFFREY ANTHONY VAN WAGENEN, JR., an individual and in his official capacity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a division of a public entity; SHERIFF CHAD BIANCO, an individual and in his official capacity; JOSE-TRUJILLO VILLASENOR, an individual and in his official capacity; IMPERIAL IRRIGATION DISTRICT, a public entity; JAMIE L. ASBURY, an individual and in her official capacity; | Case No. 5:23-cv-02569-SSS-SP <br><br> **DEFENDANT JOSE TRUJILLO VILLASENOR'S FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFF PRESTON MCCORMICK** <br><br> Judge Sunshine Suzanne Sykes <br><br> Magistrate Judge Sheri Pym |

and DOES 1 through 150, individually, jointly and severally,

Defendants.

**PROPOUNDING PARTY:**   DEFENDANT JOSE TRUJILLO VILLASENOR

**RESPONDING PARTY:**   PLAINTIFF PRESTON MCCORMICK

**SET NO.:**   One

TO PLAINTIFF PRESTON MCCORMICK AND TO HIS ATTORNEYS OF RECORD:

Pursuant to Federal Rule of Civil Procedure, Rule 36 of the Federal Rules of Civil Procedure, Defendant JOSE TRUJILLO VILLASENOR propounds the requests for admission below to Plaintiff PRESTON MCCORMICK Responses are due within 30 days.

## DEFINITIONS AND INSTRUCTIONS

1. You must deliver a written response to these Requests for Admission to opposing counsel within the time proscribed by the Rule 36 of the Federal Rules of Civil Procedure.

2. If you fail to comply with the provisions of Rule 36 of the Federal Rules of Civil Procedure with respect to this Request for Admissions, each of the matters of which an admission is requested will be deemed admitted.

3. "YOU" and "YOUR" shall mean and refer to Plaintiff PRESTON MCCORMICK individually and anyone acting on your behalf, including, but not limited to, agents, employees, representatives, attorneys, accountants, investigators, or anyone else acting in your interest, on your behalf, or at your request, and each of them.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4925-2324-0460 v2                              2

4.      "The lawsuit" shall mean the case styled *PRESTON MCCORMICK et al. v. COUNTY OF RIVERSIDE et al.*, now pending in the United States District Court, Central District of California, Case No. 5:23-cv-02569-SSS-SP.

5.      "COMMUNICATION" means any type of written and oral communication including but not limited to any statements, inquiries, discussions, conversations, dialogues, correspondence, consultations, negotiations, notices, agreements, meetings, letters, email, interviews, telegrams, and faxes.

6.      "PERSON(S)" as used herein shall mean and include natural persons, governmental entities and agencies, proprietorships, partnerships, corporations and all other forms of organizations or associations.

7.      "IDENTIFY," as used herein in connection with a "document," "documents" or "written statement" means:

(a) State the type of document (letter, memorandum, check, draft, etc.) and the date of document, the name and address of the person, if any, to whom the document was addressed, the names and addresses of all persons to whom copies of the document were to be or have been sent and the firm or firms with which all such persons were associated at the date of the document;

(b) State whether you, or anyone acting on your behalf, are in possession of the original of the document or a copy thereof and if not in possession of the original or a copy, furnish the name and address of the custodian of the original or a copy;

(c) State the present location of the document; and

(d) Attach a copy of the document to your answers.

8.      When used with respect to a person, the word "IDENTIFY" means to state the (i) name, (ii) current address and (iii) employer, if any.

9.      "DESCRIBE" as used herein means:

(a) Describe fully by reference to underlying facts rather than by ultimate facts or conclusions of fact or law;

(b) Where applicable, particularize as to:

i. Time;

ii. Place; and

iii. Manner.

10. The term "DOCUMENT(S)" is used in its customary broad sense and includes, without limitation, the following items regardless of origin or location, whether printed or recorded, or filmed, or reproduced by any other mechanical, electronic, or magnetic process, or written or produced by hand, whether or hot claimed to be privileged against discovery on any ground, and whether an original, master or copy, namely contracts; agreements; communications, including intercompany communications; correspondence; cablegrams, radiograms and telegrams; records of telephone conversations, meetings and conferences, including lists of persons attending meetings or conferences; summaries and records of personal conversations or interviews, books, manuals; publications and diaries; calendars, laboratory and engineering reports and notebooks; blueprints; charts; plans; sketches and drawings; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents and applications for patents; patent appraisals and patent ability or validity searches and studies; sales records, including purchase orders and invoices; reports and summaries of negotiations; brochures; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press releases; publicity, trade and product releases; draft or original or preliminary notes on, and marginal comments appearing on, any DOCUMENT; other reports and records; and any other information-containing paper, writing or physical thing in the possession, custody or control of YOU or YOUR attorneys. If the original of the DOCUMENT contains information not

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4925-2324-0460 v2

4

reflected on the copy, please produce the original. DOCUMENT is broadly defined to include all media on which information is recorded or stored.

11.    The words "OR" and "ANY" appearing in any request should not be read so as to eliminate any part of the request, but whenever applicable, it should have the same meaning as the words "and" and "all," respectively. For example, a request stating "support or refer" should be read as "support and refer" if an answer that does both can be made.

12.    Wherever the word "INCLUDING" appears, the meaning intended is "including, but not limited to."

13.    The plural includes the singular and vice versa.

14.    The masculine includes the feminine and vice versa.

15.    The terms "RELATE," "RELATED" and "RELATING" are intended in their broadest meaning, including, without limitation, the following concepts: anything that embodies, comprises, reflects, identifies, states, refers to, comments on, responds to, describes, analyzes, contains information concerning, or is in any way pertinent to the subject matter. The terms are not restricted to the notion of legal relevance for the purposes of admissibility of evidence at trial.

16.    The term "INCIDENT" shall mean the circumstances and events alleged in your Complaint.

17.    As used herein, the term "EAST WIND" shall mean and refer to Plaintiff East Wind AG.

18.    As used herein, the term "TRIBE" shall mean and refer to the Torres Martinez Desert Cahuilla Indian Tribe.

19.    As used herein, the term "SUBJECT PROPERTY" shall mean and refer to the real property located at 91521 68th in Mecca, California.

20.    As used here, the term the "FIRE" shall mean and refer to the fire that occurred on the SUBJECT PROPERTY on or about January 8, 2023, which allegedly destroyed PRESTON MCCORMICK's family residence.

21.    Instruction Regarding Alleged Ambiguity: To avoid ambiguity, significant effort has been spent to define a number of terms used in the following discovery requests. If you or your attorney claim you do not understand the meaning of a term, please refer to the list of definitions or contact the opposing attorney for clarification, preferably before responses are due so that the alleged ambiguous term can be clarified.

22.    This request shall be deemed continuing so as to require further and supplemental responses if YOU receive, generate or tardily discover additional information which changes or alters YOUR response in any way within the scope of this request following compliance herewith.

23.    If you claim a privilege as to any information requested by any of these interrogatories, please specify the information involved and the basis for your claim of privilege to allow the court to rule on the validity of the claim.

**REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:**

Admit that YOU have no evidence to support your 42 U.S.C. § Monell claims.

**REQUEST FOR ADMISSION NO. 2:**

Admit that YOU have no evidence to support your supervisory liability claims under 42 U.S.C. § 1983.

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU have no evidence to support your Fourth Amendment claims.

**REQUEST FOR ADMISSION NO. 4:**

Admit that YOU have no evidence to support your Fourteenth Amendment claims.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Defendant Riverside County did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 6:**

Admit that Defendant Riverside County Sheriff's Department did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Defendant Villasenor did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 8:**

Admit that Defendant Sherrif Chad Bianco did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 9:**

Admit that Defendant Jeffrey Anthony Van Wagenen Jr. did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 10:**

Admit that Defendant Jamie L. Asbury did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 11:**

Admit that a breach of a duty of care, if any, by Riverside County did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 12:**

Admit that a breach of a duty of care, if any, by Riverside County agents or employees did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 13:**

Admit that a breach of a duty of care, if any, by the Riverside County Sherrif's department did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 14:**

Admit that a breach of a duty of care, if any, by Defendant Jose-Trujillo Villasenor did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 15:**

Admit that a breach of a duty of care, if any, by Defendant Jeffrey Anthony van Wagenen Jr. did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 16:**

Admit that a breach of a duty of care, if any, by Defendant Jamie L. Asbury, did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 17:**

Admit that YOU were contributorily negligent in causing YOUR claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 18:**

Admit that YOU were comparatively at fault in causing YOUR claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 19:**

Admit that the Riverside County Sheriff's Department and its employees were not reckless or negligent with filing the warrant application.

**REQUEST FOR ADMISSION NO. 20:**

Admit that the Riverside County Sherriff's Department and its employees did not intentionally list 91521 Ave 68, Mecca, California as fee land on the Warrant.

**REQUEST FOR ADMISSION NO. 21:**

Admit that County of Riverside Sheriff's Department agents or employees did not violate your constitutional rights.

**REQUEST FOR ADMISSION NO. 22:**

Admit that YOU have no evidence to support your allegations that the Riverside County Sheriff's Department has policies, customs, or practices that result in constitutional violations.

**REQUEST FOR ADMISSION NO. 23:**

Admit that YOU owned East Wind AG on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 24:**

Admit that East Wind AG, was conducting business on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 25:**

Admit that East Wind AG was not lawfully conducting its marijuana business on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 26:**

Admit that there was a private residence located on 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 27:**

Admit that YOU lived, for ANY period of time, in a private residence located on 91521 Ave 68, Mecca, California. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 28:**

Admit that YOU were cultivating marijuana on the land of a private residence located at 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 29:**

Admit that YOU were manufacturing marijuana or marijuana related products on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 30:**

Admit that YOU were cultivating more than 6 marijuana plants on the land of a private residence located at 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home,

or other similar dwelling.

**REQUEST FOR ADMISSION NO. 31:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to cultivate marijuana on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 32:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to sell marijuana.

**REQUEST FOR ADMISSION NO. 33:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to transport marijuana.

**REQUEST FOR ADMISSION NO. 34:**

Admit that California's criminal laws, including the Health and Safety code, have the same force and effect on Torres Martinez Desert Cahuilla tribal reservations as they do on non-Indian Country. "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 35:**

Admit that California's criminal laws, including the Health and Safety Code, have the same force and effect on property held in trust for the Torres Martinez Desert Cahuilla Tribe as they do on non-Indian Country. "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 36:**

Admit that California's criminal laws, including the Health and Safety Code, have the same force and effect on tribal owned fee property as they do anywhere else in California.

**REQUEST FOR ADMISSION NO. 37:**

Admit that state and local county criminal statutes are enforceable on "Indian Country." "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 38:**

Admit that YOU do not have a valid license or permit issued to YOU by the Torres Martinez Desert Cahuilla Tribe to cultivate marijuana.

**REQUEST FOR ADMISSION NO. 39:**

Admit that YOU do not have a valid license or permit issued to YOU by the Torres Martinez Desert Cahuilla Tribe to manufacture marijuana related products.

**REQUEST FOR ADMISSION NO. 40:**

Admit that the County of Riverside and its employees did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 41:**

Admit that the County of Riverside's Sheriff's Department and its employees did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 42:**

Admit that the County of Riverside is not vicariously liable for any claims resulting from this INCIDENT.

**REQUEST FOR ADMISSION NO. 43:**

Admit that the County of Riverside Sheriff's Department is not vicariously liable for any claims resulting from this INCIDENT.

**REQUEST FOR ADMISSION NO. 44:**

Admit that the Riverside County Sheriff's Department had probable cause to enter and search 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 45:**

Admit that you sold marijuana to persons under the age of 21.

**REQUEST FOR ADMISSION NO. 46:**

Admit that you sold marijuana to persons under the age of 18.

**REQUEST FOR ADMISSION NO. 47:**

Admit that you employed persons under the age of 21 to participate in marijuana related activities, including but not limited to cultivation, manufacture, sale, transport, or distribution.

**REQUEST FOR ADMISSION NO. 48:**

Admit that YOU employed persons under the age of 18 to participate in marijuana related activities, including but not limited to cultivation, manufacture, sale, transport, or distribution.

**REQUEST FOR ADMISSION NO. 49:**

Admit that you conducted marijuana related activities with the marijuana cultivated on 91521 Ave 68, Mecca, California (including but not limited to cultivation, sale, possession, use, transport, and manufacture) outside of the geographical boundaries of 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 50:**

Admit that you conducted marijuana related activities with the marijuana cultivated on 91521 Ave 68, Mecca, California (including but not limited to cultivation, sale, possession, use, transport, and manufacture) outside of "Indian Country." "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 51:**

Admit that YOUR marijuana operation on 91521 Ave 68, Mecca, California was not in compliance with California's Business and Professions Code on the date of this INCIDENT, including but not limited to the following: marijuana cultivation, manufacture, sale, use, possession, transportation, or distribution.

**REQUEST FOR ADMISSION NO. 52:**

Admit that YOUR marijuana operation on 91521 Ave 68, Mecca, California

was not in compliance with California's Health and Safety Code regarding one or more of the following: marijuana cultivation, manufacture, sale, use, possession, transportation, or distribution.

**REQUEST FOR ADMISSION NO. 53:**

Admit that the Riverside County Sheriff's Department had a lawful basis to search 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 54:**

Admit that Riverside County Sheriff's Department had a lawful basis to seize all items described in the Warrant.

**REQUEST FOR ADMISSION NO. 55:**

Admit that even if the Warrant listed 91521 Ave 68, Mecca, California as trust land instead of fee land, the facts in the Warrant were still sufficient to establish probable cause.

**REQUEST FOR ADMISSION NO. 56:**

Admit that your marijuana operation on 91521 Ave 68, Mecca, California, did not comply with California state marijuana regulations.

**REQUEST FOR ADMISSION NO. 57:**

Admit that your marijuana operation on 91521 Ave 68, Mecca, California, did not comply with local Riverside County marijuana regulations.

**REQUEST FOR ADMISSION NO. 58:**

Admit that Defendants did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 59:**

Admit that Defendants did not negligently interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 60:**

Admit that Defendants did not negligently interfere YOUR prospective economic relations.

**REQUEST FOR ADMISSION NO. 61:**

Admit that Defendants did not intentionally interfere with YOUR prospective economic relations.

**REQUEST FOR ADMISSION NO. 62:**

Admit that YOU have no evidence to support your claim for failure to protect from harm.

**REQUEST FOR ADMISSION NO. 63:**

Admit that YOU have no evidence to support your claim for battery

**REQUEST FOR ADMISSION NO. 64:**

Admit that YOU have no evidence to support your claim for assault.

**REQUEST FOR ADMISSION NO. 65:**

Admit that YOU have no evidence to support your claim for intentional infliction of emotional distress.

**REQUEST FOR ADMISSION NO. 66:**

Admit that YOU have no evidence to support your claim for negligent infliction of emotional distress.

**REQUEST FOR ADMISSION NO. 67:**

Admit that if any force was used on you during this INCIDENT, it was reasonable.

**REQUEST FOR ADMISSION NO. 68:**

Admit that the County of Riverside and its employees are not responsible in any way for the fire that occurred and the damages from that fire on 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 69:**

Admit that the County of Riverside Sheriff's Department and its employees are not responsible in any way for the fire that occurred and the damages from that fire on 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 70:**

Admit that you did not suffer any economic damages as a result of the INCIDENT that is the subject of this litigation.

DATED: _January 14, 2025          BURKE, WILLIAMS & SORENSEN, LLP

By:  _/s/ Nathan A. Oyster_____
          Nathan A. Oyster
          Michaela B. Sozio
          Caylin W. Jones

Attorneys for Defendants
COUNTY OF RIVERSIDE, SHERIFF CHAD
BIANCO, JEFFREY ANTHONY VAN
WAGENEN, AND JOSE TRUJILLO
VILLASENOR

**PROOF OF SERVICE**

**Preston McCormick, et al. v. County of Riverside et al.**
**Case No. 5:23-cv-02569-SSS-SP**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 444 South Flower Street, 40th Floor, Los Angeles, CA 90071-2953.

On January 14, 2025, I served true copies of the following document(s) described as **DEFENDANT JOSE TRUJILLO VILLASENOR'S FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFF PRESTON MCCORMICK** on the interested parties in this action as follows:

| | |
|---|---|
| Gregory J. Morrow, Esq.<br>MORROW LAW GROUP INC<br>1801 Century Park East<br>24th Floor<br>Los Angeles, CA 90067<br>Email: gregory.j.morrow@hotmail.com | Attorneys for Plaintiffs,<br>*Preston McCormick and East Wind Ag* |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address gmitchell@bwslaw.com to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 14, 2025, at Los Angeles, California.

*Leticia Espinoza*
Leticia Espinozal

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4925-2324-0460 v2                    1

# EXHIBIT L

Nathan A. Oyster (SBN 225307)
E-mail: noyster@bwslaw.com
Michaela B. Sozio (SBN 179148)
Email: msozio@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2953
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
COUNTY OF RIVERSIDE (also erroneously sued herein as RIVERSIDE COUNTY SHERIFF'S DEPARTMENT), JEFFREY ANTHONY VAN WAGENEN, JR., SHERIFF CHAD BIANCO, and JOSE TRUJILLO VILLASENOR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON MCCORMICK, an individual; and EAST WIND AG, a California corporation, | Case No. 5:23-cv-02569-SSS-SP |
| Plaintiff, | **DEFENDANT COUNTY OF RIVERSIDE'S FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFF EAST WIND AG** |
| v. | Judge Sunshine Suzanne Sykes |
| COUNTY OF RIVERSIDE, a public entity; JEFFREY ANTHONY VAN WAGENEN, JR., an individual and in his official capacity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a division of a public entity; SHERIFF CHAD BIANCO, an individual and in his official capacity; JOSE-TRUJILLO VILLASENOR, an individual and in his official capacity; IMPERIAL IRRIGATION DISTRICT, a public entity; JAMIE L. ASBURY, an individual and in her official capacity; | Magistrate Judge Sheri Pym |

and DOES 1 through 150, individually, jointly and severally,

        Defendants.

**PROPOUNDING PARTY:**   DEFENDANT COUNTY OF RIVERSIDE

**RESPONDING PARTY:**   PLAINTIFF EAST WIND AG

**SET NO.:**   One

TO PLAINTIFF EAST WIND AG AND TO THEIR ATTORNEYS OF RECORD:

Pursuant to Federal Rule of Civil Procedure, Rule 36 of the Federal Rules of Civil Procedure, Defendant COUNTY OF RIVERSIDE propounds the requests for admission below to Plaintiff EAST WIND AG Responses are due within 30 days.

### DEFINITIONS AND INSTRUCTIONS

1. You must deliver a written response to these Requests for Admission to opposing counsel within the time proscribed by the Rule 36 of the Federal Rules of Civil Procedure.

2. If you fail to comply with the provisions of Rule 36 of the Federal Rules of Civil Procedure with respect to this Request for Admissions, each of the matters of which an admission is requested will be deemed admitted.

3.    "YOU" and "YOUR" shall mean and refer to Plaintiff EAST WIND AG individually and anyone acting on your behalf, including, but not limited to, agents, employees, representatives, attorneys, accountants, investigators, or anyone else acting in your interest, on your behalf, or at your request, and each of them.

4.    "The lawsuit" shall mean the case styled *PRESTON MCCORMICK et al. v. COUNTY OF RIVERSIDE et al.*, now pending in the United States District Court, Central District of California, Case No. 5:23-cv-02569-SSS-SP.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4910-8772-6608 v1        2

5.    "COMMUNICATION" means any type of written and oral communication including but not limited to any statements, inquiries, discussions, conversations, dialogues, correspondence, consultations, negotiations, notices, agreements, meetings, letters, email, interviews, telegrams, and faxes.

6.    "PERSON(S)" as used herein shall mean and include natural persons, governmental entities and agencies, proprietorships, partnerships, corporations and all other forms of organizations or associations.

7.    "IDENTIFY," as used herein in connection with a "document," "documents" or "written statement" means:

(a) State the type of document (letter, memorandum, check, draft, etc.) and the date of document, the name and address of the person, if any, to whom the document was addressed, the names and addresses of all persons to whom copies of the document were to be or have been sent and the firm or firms with which all such persons were associated at the date of the document;

(b) State whether you, or anyone acting on your behalf, are in possession of the original of the document or a copy thereof and if not in possession of the original or a copy, furnish the name and address of the custodian of the original or a copy;

(c) State the present location of the document; and

(d) Attach a copy of the document to your answers.

8.    When used with respect to a person, the word "IDENTIFY" means to state the (i) name, (ii) current address and (iii) employer, if any.

9.    "DESCRIBE" as used herein means:

(a) Describe fully by reference to underlying facts rather than by ultimate facts or conclusions of fact or law;

(b) Where applicable, particularize as to:

i. Time;

ii. Place; and

iii. Manner.

10.     The term "DOCUMENT(S)" is used in its customary broad sense and includes, without limitation, the following items regardless of origin or location, whether printed or recorded, or filmed, or reproduced by any other mechanical, electronic, or magnetic process, or written or produced by hand, whether or hot claimed to be privileged against discovery on any ground, and whether an original, master or copy, namely contracts; agreements; communications, including intercompany communications; correspondence; cablegrams, radiograms and telegrams; records of telephone conversations, meetings and conferences, including lists of persons attending meetings or conferences; summaries and records of personal conversations or interviews, books, manuals; publications and diaries; calendars, laboratory and engineering reports and notebooks; blueprints; charts; plans; sketches and drawings; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents and applications for patents; patent appraisals and patent ability or validity searches and studies; sales records, including purchase orders and invoices; reports and summaries of negotiations; brochures; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press releases; publicity, trade and product releases; draft or original or preliminary notes on, and marginal comments appearing on, any DOCUMENT; other reports and records; and any other information-containing paper, writing or physical thing in the possession, custody or control of YOU or YOUR attorneys. If the original of the DOCUMENT contains information not reflected on the copy, please produce the original. DOCUMENT is broadly defined to include all media on which information is recorded or stored.

11.     The words "OR" and "ANY" appearing in any request should not be read so as to eliminate any part of the request, but whenever applicable, it should have the same meaning as the words "and" and "all," respectively. For example, a

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4910-8772-6608 v1                              4

request stating "support or refer" should be read as "support and refer" if an answer that does both can be made.

12. Wherever the word "INCLUDING" appears, the meaning intended is "including, but not limited to."

13. The plural includes the singular and vice versa.

14. The masculine includes the feminine and vice versa.

15. The terms "RELATE," "RELATED" and "RELATING" are intended in their broadest meaning, including, without limitation, the following concepts: anything that embodies, comprises, reflects, identifies, states, refers to, comments on, responds to, describes, analyzes, contains information concerning, or is in any way pertinent to the subject matter. The terms are not restricted to the notion of legal relevance for the purposes of admissibility of evidence at trial.

16. The term "INCIDENT" shall mean the circumstances and events alleged in your Complaint.

17. As used herein, the term "EAST WIND" shall mean and refer to Plaintiff East Wind AG.

18. As used herein, the term "TRIBE" shall mean and refer to the Torres Martinez Desert Cahuilla Indian Tribe.

19. As used herein, the term "SUBJECT PROPERTY" shall mean and refer to the real property located at 91521 68th in Mecca, California.

20. As used here, the term the "FIRE" shall mean and refer to the fire that occurred on the SUBJECT PROPERTY on or about January 8, 2023, which allegedly destroyed PRESTON MCCORMICK's family residence.

21. Instruction Regarding Alleged Ambiguity: To avoid ambiguity, significant effort has been spent to define a number of terms used in the following discovery requests. If you or your attorney claim you do not understand the meaning of a term, please refer to the list of definitions or contact the opposing attorney for

clarification, preferably before responses are due so that the alleged ambiguous term can be clarified.

22.    This request shall be deemed continuing so as to require further and supplemental responses if YOU receive, generate or tardily discover additional information which changes or alters YOUR response in any way within the scope of this request following compliance herewith.

23.    If you claim a privilege as to any information requested by any of these interrogatories, please specify the information involved and the basis for your claim of privilege to allow the court to rule on the validity of the claim.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that YOU have no evidence to support your 42 U.S.C. § Monell claims.

**REQUEST FOR ADMISSION NO. 2:**

Admit that YOU have no evidence to support your supervisory liability claims under 42 U.S.C. § 1983.

**REQUEST FOR ADMISSION NO. 3:**

Admit that YOU have no evidence to support your Fourth Amendment claims.

**REQUEST FOR ADMISSION NO. 4:**

Admit that Defendant Riverside County did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Defendant Riverside County did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 6:**

Admit that Defendant Villasenor did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Defendant Sherrif Chad Bianco did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 8:**

Admit that Defendant Jeffrey Anthony Van Wagenen Jr. did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 9:**

Admit that Defendant Jamie L. Asbury did not breach a duty owed to you, if any.

**REQUEST FOR ADMISSION NO. 10:**

Admit that a breach of a duty of care, if any, by Riverside County did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 11:**

Admit that a breach of a duty of care, if any, by Riverside County agents or employees did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 12:**

Admit that a breach of a duty of care, if any, by the Riverside County Sherrif's department did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 13:**

Admit that a breach of a duty of care, if any, by Defendant Jose-Trujillo Villasenor did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 14:**

Admit that a breach of a duty of care, if any, by Defendant Jeffrey Anthony van Wagenen Jr. did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 15:**

Admit that a breach of a duty of care, if any, by Defendant Jamie L. Asbury, did not proximately cause your claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 16:**

Admit that YOU were contributorily negligent in causing YOUR claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 17:**

Admit that YOU were comparatively at fault in causing YOUR claimed harm, damages, or injuries.

**REQUEST FOR ADMISSION NO. 18:**

Admit that the Riverside County Sheriff's Department and its employees were not reckless or negligent with filing the warrant application.

**REQUEST FOR ADMISSION NO. 19:**

Admit that the Riverside County Sherriff's Department and its employees did not intentionally list 91521 Ave 68, Mecca, California as fee land on the Warrant.

**REQUEST FOR ADMISSION NO. 20:**

Admit that County of Riverside Sheriff's Department agents or employees did not violate your constitutional rights.

**REQUEST FOR ADMISSION NO. 21:**

Admit that YOU have no evidence to support your allegations that the Riverside County Sheriff's Department has policies, customs, or practices that result in constitutional violations.

**REQUEST FOR ADMISSION NO. 22:**

Admit that East Wind AG was conducting business on 91521 Ave 68, Mecca, California on the date of this incident.

**REQUEST FOR ADMISSION NO. 23:**

Admit that East Wind AG was not lawfully conducting its marijuana business on 91521 Ave 68, Mecca, California on the date of this INCIDENT..

**REQUEST FOR ADMISSION NO. 24:**

Admit that there was a private residence located on 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an

apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 25:**

Admit that YOU were cultivating marijuana on the land of a private residence located at 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 26:**

Admit that YOU were manufacturing marijuana or marijuana related products on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 27:**

Admit that YOU were cultivating more than 6 marijuana plants on the land of a private residence located at 91521 Ave 68, Mecca, California on the date of this INCIDENT. "Private residence" means a house, an apartment unit, a mobile home, or other similar dwelling.

**REQUEST FOR ADMISSION NO. 28:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to cultivate marijuana on 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 29:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to sell marijuana.

**REQUEST FOR ADMISSION NO. 30:**

Admit that YOU do not have a license or permit that was issued to YOU by the State of California, its agencies, or its departments to transport marijuana.

**REQUEST FOR ADMISSION NO. 31:**

Admit that California's criminal laws, including the Health and Safety code, have the same force and effect on Torres Martinez Desert Cahuilla tribal reservations as they do on non-Indian Country. "Indian Country" is any land that is

a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 32:**

Admit that California's criminal laws, including the Health and Safety Code, have the same force and effect on property held in trust for the Torres Martinez Desert Cahuilla Tribe as they do on non-Indian Country. "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 33:**

Admit that California's criminal laws, including the Health and Safety Code, have the same force and effect on tribal owned fee property as they do on non-Indian Country. "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 34:**

Admit that state and local county criminal statutes are enforceable on "Indian Country." "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 35:**

Admit that YOU do not have a valid license issued to you by the Torres Martinez Desert Cahuilla Tribe to cultivate marijuana.

**REQUEST FOR ADMISSION NO. 36:**

Admit that YOU do not have a valid license issued to you by the Torres Martinez Desert Cahuilla Tribe to manufacture marijuana related products.

**REQUEST FOR ADMISSION NO. 37:**

Admit that YOU do not have a valid license issued to you by the Torres Martinez Desert Cahuilla Tribe to manufacture marijuana related products.

**REQUEST FOR ADMISSION NO. 38:**

Admit that the County of Riverside and its employees did not intentionally

interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 39:**

Admit that the County of Riverside's Sheriff's Department and its employees did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 40:**

Admit that the County of Riverside is not vicariously liable for any claims resulting from this INCIDENT.

**REQUEST FOR ADMISSION NO. 41:**

Admit that the County of Riverside Sheriff's Department is not vicariously liable for any claims resulting from this INCIDENT.

**REQUEST FOR ADMISSION NO. 42:**

Admit that the Riverside County Sheriff's Department had probable cause to enter and search 91521 Ave 68, Mecca, California on the date of this INCIDENT.

**REQUEST FOR ADMISSION NO. 43:**

Admit that you sold marijuana to persons under the age of 21.

**REQUEST FOR ADMISSION NO. 44:**

Admit that you sold marijuana to persons under the age of 18.

**REQUEST FOR ADMISSION NO. 45:**

Admit that you employed persons under the age of 21 to participate in marijuana related activities, including but not limited to cultivation, manufacture, sale, transport, or distribution.

**REQUEST FOR ADMISSION NO. 46:**

Admit that YOU employed persons under the age of 18 to participate in marijuana related activities, including but not limited to cultivation, manufacture, sale, transport, or distribution.

**REQUEST FOR ADMISSION NO. 47:**

Admit that YOU conducted marijuana related activities with the marijuana cultivated on 91521 Ave 68, Mecca, California (including but not limited to

cultivation, sale, possession, use, transport, and manufacture) outside of the geographical boundaries of 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 48:**

Admit that YOU conducted marijuana related activities with the marijuana cultivated on 91521 Ave 68, Mecca, California (including but not limited to cultivation, sale, possession, use, transport, and manufacture) outside of "Indian Country." "Indian Country" is any land that is a tribal reservation, land held in trust for a tribe, and fee land held by an Indian or Tribe.

**REQUEST FOR ADMISSION NO. 49:**

Admit that YOUR marijuana operation on 91521 Ave 68, Mecca, California was not in compliance with California's Business and Professions Code on the date of this INCIDENT, including but not limited to the following: marijuana cultivation, manufacture, sale, use, possession, transportation, or distribution.

**REQUEST FOR ADMISSION NO. 50:**

Admit that YOUR marijuana operation on 91521 Ave 68, Mecca, California was not in compliance with California's Health and Safety Code regarding one or more of the following: marijuana cultivation, manufacture, sale, use, possession, transportation, or distribution.

**REQUEST FOR ADMISSION NO. 51:**

Admit that the Riverside County Sheriff's Department had a lawful basis to search 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 52:**

Admit that Riverside County Sheriff's Department had a lawful basis to seize all items described in the Warrant.

**REQUEST FOR ADMISSION NO. 53:**

Admit that even if the Warrant listed 91521 Ave 68, Mecca, California as trust land instead of fee land, the facts in the Warrant were still sufficient to establish probable cause..

**REQUEST FOR ADMISSION NO. 54:**

Admit that your marijuana operation on 91521 Ave 68, Mecca, California, did not comply with California state marijuana regulations.

**REQUEST FOR ADMISSION NO. 55:**

Admit that your marijuana operation on 91521 Ave 68, Mecca, California, did not comply with local Riverside County marijuana regulations.

**REQUEST FOR ADMISSION NO. 56:**

Admit that Defendants did not intentionally interfere with YOUR contractual relations.

**REQUEST FOR ADMISSION NO. 57:**

Admit that Defendants did not negligently interfere with YOUR contractual relations..

**REQUEST FOR ADMISSION NO. 58:**

Admit that Defendants did not negligently interfere YOUR prospective economic relations.

**REQUEST FOR ADMISSION NO. 59:**

Admit that Defendants did not intentionally interfere with YOUR prospective economic relations.

**REQUEST FOR ADMISSION NO. 60:**

Admit that the County of Riverside and its employees are not responsible in any way for the fire that occurred and the damages from that fire on 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 61:**

Admit that the County of Riverside Sheriff's Department and its employees

are not responsible in any way for the fire that occurred and the damages from that fire on 91521 Ave 68, Mecca, California.

**REQUEST FOR ADMISSION NO. 62:**

Admit that you did not suffer any economic damages as a result of the INCIDENT that is the subject of this litigation..

DATED: _January 14, 2025        BURKE, WILLIAMS & SORENSEN, LLP

By:  _/s/ Nathan A. Oyster_
            Nathan A. Oyster
            Michaela B. Sozio
            Caylin W. Jones

Attorneys for Defendants
COUNTY OF RIVERSIDE, SHERIFF CHAD BIANCO, JEFFREY ANTHONY VAN WAGENEN, AND JOSE TRUJILLO VILLASENOR

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

08695-0006 4910-8772-6608 v1                              14

## PROOF OF SERVICE

### Preston McCormick, et al. v. County of Riverside et al.
### Case No. 5:23-cv-02569-SSS-SP

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 444 South Flower Street, 40th Floor, Los Angeles, CA 90071-2953.

On January 14, 2025, I served true copies of the following document(s) described as **DEFENDANT COUNTY OF RIVERSIDE'S FIRST SET OF REQUEST FOR ADMISSIONS TO PLAINTIFF EAST WIND AG** on the interested parties in this action as follows:

Gregory J. Morrow, Esq.                  Attorneys for Plaintiffs,
MORROW LAW GROUP INC             *Preston McCormick and East*
1801 Century Park East                     *Wind Ag*
24th Floor
Los Angeles, CA 90067
Email: gregory.j.morrow@hotmail.com

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address gmitchell@bwslaw.com to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 14, 2025, at Los Angeles, California.


*Leticia Espinoza*
Leticia Espinozal

# EXHIBIT M

DOC # 2016-0584694
12/30/2016 08:00 AM Fees: $57.00
Page 1 of 5
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

ᐧ Recording Requested By
Fidelity National Title

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

Torres Martinez Desert Cahuilla Indians

PO. Box 1160
Thermal, CA 92274

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: SOPHIA #466

ORDER NO.: 25000971-MB
Escrow No. 25000971-JK
Parcel No. 729-040-013-2 & 729-040-014-3, 729-040-005-5 & 729-040-006-6, 729-040-004-4 & 729-040-003-3, 729-040-009-9 & 729-040-010-9

TRA 058-017

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
☐ unincorporated area
☐ the city of (Riverside area), Riverside

Documentary Transfer Tax is $7,700.00
☐ computed on full value of interest or property  conveyed, or
☐ full value less value of liens or encumbrances  remaining at the time of sale

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Facilities Management West, Inc., a California corporation**

hereby GRANT(s) to

**Torres Martinez Desert Cahuilla Indians**

the following real property in the County of Riverside, State of California:

Legal Description attached hereto as Exhibit "A" and made a part hereof.

MAIL TAX STATEMENTS AS DIRECTED ABOVE

ORDER NO.:'
ESCROW NO. 25000971-008

Dated: December 23 2016

SELLER:

**Facilities Management West, Inc., a
California corporation**

x _Ken Fait_

Name: Ken Fait

Its:

REANNA NEW – NOTARY PUBLIC
COUNTY OF                STATE OF
TETON                    WYOMING
My Commission Expires __11 | 1 | 2 0__

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfulness.
accuracy, or validity of that document.

STATE OF ~~CALIFORNIA~~ Wyoming )
COUNTY OF ___Teton___        } SS:

On __December 23, 2016__ before me. ~~Reanna~~ Reanna New .
a Notary Public, personally appeared ___Ken Fait___ who proved to me on the basis of satisfactory evidence to
be the person(s)whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies) and that by his/her/their signature(s)on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ___Reanna New___

ORDER NO.:
ESCROW NO.: 25000971-008

## EXHIBIT A
### Legal Description

PARCEL A: APN: 729-040-003 & 729-040-004

THE WEST HALF OF THE NORTHEAST QUARTER AND THE EAST HALF OF THE EAST HALF OF THE NORTHWEST QUARTER OF SECTION 20, TOWNSHIP 7 SOUTH, RANGE 9 EAST, SAN BERNARDINO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL B: APN: 729-040-006

THAT PORTION OF THE EAST HALF OF THE NORTHEAST QUARTER OF SECTION 20, TOWNSHIP 7 SOUTH, RANGE 9 EAST, SAN BERNARDINO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF SECTION 20, TOWNSHIP 7 SOUTH, RANGE 9 EAST, SAN BERNARDINO BASE AND MERIDIAN;
THENCE SOUTH 0° 50' 40" EAST, ALONG THE EAST LINE OF SAID SECTION 20, A DISTANCE OF 59.33 FEET TO THE SOUTHWEST LINE OF THE RIGHT OF WAY OF THE SOUTHERN PACIFIC RAILROAD TO THE TRUE POINT OF BEGINNING;
THENCE CONTINUING ALONG THE EAST LINE OF SECTION 20, SOUTH 0° 50' 40" EAST, A DISTANCE OF 114.72 FEET TO A POINT IN THE NORTH RIGHT OF WAY LINE OF STATE HIGHWAY NO. 111;
THENCE NORTH 61° 30' 15" WEST, ALONG THE NORTH RIGHT OF WAY LINE OF SAID STATE HIGHWAY, A DISTANCE OF 365.10 FEET TO THE NORTH LINE OF SAID SECTION 20;
THENCE SOUTH 89° 58' 19" EAST, ALONG THE NORTH LINE OF SECTION 20, A DISTANCE OF 209.79 FEET TO THE SOUTHWEST LINE OF THE RIGHT OF WAY OF THE SOUTHERN PACIFIC RAILROAD;
THENCE SOUTH 61° 30' 15" EAST ALONG SAID RIGHT OF WAY LINE, A DISTANCE OF 124.45 FEET TO THE TRUE POINT OF BEGINNING.

EXCEPTING THEREFROM THE NORTH 30 FEET AND THE EAST 30 FEET THEREOF.

ALSO EXCEPTING THEREFROM ALL MINERALS, OIL, GAS AND OTHER HYDROCARBONS, AND ALL OTHER SUBSTANCES PRODUCED THEREWITH, AND RIGHTS PERTAINING THERETO, IN, ON, UNDER, OR THAT MAY BE PRODUCED FROM SAID LAND, AS RESERVED BY DANTE A. GAIIANIGA AND ALICE M. GAIIANIGA, AS TRUSTEES UNDER THAT CERTAIN DECLARATION OF TRUST, DATED DECEMBER 6, 1971, IN THE DEED RECORDED MARCH 24, 1976 AS INSTRUMENT NO. 38365 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL C: APN: 729-040-005

THE EAST HALF OF THE NORTHEAST QUARTER OF SECTION 20, TOWNSHIP 7 SOUTH, RANGE 9 EAST, SAN BERNARDINO MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM THAT PORTION INCLUDED IN THE RIGHT-OF-WAY OF THE SOUTHERN PACIFIC RAILROAD COMPANY. ALSO EXCEPTING THEREFROM THOSE PORTIONS CONVEYED TO THE STATE OF CALIFORNIA BY DEED RECORDED MARCH 9, 1948 IN BOOK 894, PAGE 456 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

ALSO EXCEPTING THEREFROM THAT PORTION CONVEYED TO COACHELLA VALLEY COUNTY WATER DISTRICT BY DEED RECORDED JULY 2, 1949 IN BOOK 1089, PAGE 363 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THE NORTH 30 FEET AND THE EAST 30 FEET THEREOF.

ALSO EXCEPTING THEREFROM THE WEST 90, FEET OF THE EAST 150 FEET OF THE SOUTH 1278.18 FEET AS CONVEYED TO THE COACHELLA VALLEY COUNTY WATER DISTRICT, A PUBLIC AGENCY OF THE STATE OF CALIFORNIA, AS SET FORTH AND DESCRIBED IN THAT CERTAIN DOCUMENT RECORDED JUNE 9, 1958 IN BOOK 2282, PAGE 595 OF OFFICIAL RECORDS.

ALSO EXCEPTING THEREFROM THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

ORDER NO.:
ESCROW NO.: 25000971-008

## EXHIBIT A
### (Continued)

BEGINNING AT THE NORTHEAST CORNER OF SECTION N20, TOWNSHIP 7 SOUTH, RANGE 9 EAST, SAN BERNARDINO BASE AND MERIDIAN;
THENCE SOUTH 0° 50' 40" EAST, ALONG THE EAST LINE OF SAID SECTION 20, A DISTANCE OF 59.33 FEET TO THE SOUTHWEST LINE OF THE RIGHT OF WAY OF THE SOUTHERN PACIFIC RAILROAD TO THE TRUE POINT OF BEGINNING;
THENCE CONTINUING ALONG THE EAST LINE OF SECTION 20, SOUTH 0° 50' 40" EAST, A DISTANCE OF 114.72 FEET TO A POINT IN THE NORTH RIGHT OF WAY LINE OF STATE HIGHWAY NO. 111;
THENCE NORTH 61° 30' 15" WEST, ALONG THE NORTH RIGHT OF WAY LINE OF SAID STATE HIGHWAY, A DISTANCE OF 365.10 FEET TO THE NORTH LINE OF SAID SECTION 20;
THENCE SOUTH 89° 58' 19" EAST, ALONG THE NORTH LINE OF SECTION 20, A DISTANCE OF 209.79 FEET TO THE SOUTHWEST LINE OF THE RIGHT OF WAY OF THE SOUTHERN PACIFIC RAILROAD;
THENCE SOUTH 61° 30' 15" EAST ALONG SAID RIGHT OF WAY LINE, A DISTANCE OF 124.45 FEET TO THE TRUE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM ALL MINERALS, OIL, GAS AND OTHER HYDROCARBONS, AND ALL OTHER SUBSTANCES PRODUCED THEREWITH, AND RIGHTS PERTAINING THERETO, IN, ON, UNDER, OR THAT MAY BE PRODUCED FROM SAID LAND, AS RESERVED BY DANTE A. GAIIANIGA AND ALICE M. GAIIANIGA, AS TRUSTEES UNDER THAT CERTAIN DECLARATION OF TRUST, DATED DECEMBER 6, 1971 IN DEED RECORDED MARCH 24, 1976 AS INSTRUMENT NO. 38365 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL D: APNS: 729-040-009, 010, 013 AND 014

THE SOUTHEAST QUARTER OF SECTION 20, TOWNSHIP 7 SOUTH, RANGE 9 EAST, SAN BERNARDINO BASE AND MERIDIAN, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM THE WEST 90 FEET OF THE EAST 150 FEET AS CONVEYED TO THE COACHELLA VALLEY COUNTY WATER DISTRICT, A PUBLIC AGENCY OF THE STATE OF CALIFORNIA, AS SET FORTH AND DESCRIBED IN THAT CERTAIN DOCUMENT RECORDED MAY 7, 1953 IN BOOK 2267, PAGE 137 OF OFFICIAL RECORDS.

ORDER NO.:
ESCROW NO.: 25000971-008

## EXHIBIT A
### (Continued)

ALSO EXCEPTING THEREFROM ALL MINERALS, OIL, GAS AND OTHER HYDROCARBONS, AND ALL OTHER SUBSTANCES PRODUCED THEREWITH, AND RIGHTS PERTAINING THERETO, IN, ON, UNDER, OR THAT MAY BE PRODUCED FROM SAID LAND, AS RESERVED BY DANTE A. GAZZANIGA AND ALICE M. GAZZANIGA, AS TRUSTEES UNDER THAT CERTAIN DECLARATION OF TRUST, DATED DECEMBER 6, 1971 IN DEED RECORDED MARCH 24, 1976 AS INSTRUMENT NO. 38365 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

ASSESSOR'S PARCEL NUMBER:       729-040-003-3; 004-4; 005-5; 006-6; 010-9; 009-9; 013-2; 014-3

# EXHIBIT N

Gregory J. Morrow, Esq. (SBN 153224)
**MORROW LAW GROUP INC**
1801 Century Park East
24th Floor
Los Angeles, CA 90067
O:  (310) 894-9149
M: (310) 721-3833
gregory.j.morrow@hotmail.com

Attorneys for Plaintiffs
Preston McCormick and
East Wind Ag

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON MCCORMICK, an individual; and EAST WIND AG, a California corporation, | **CASE NO: 5:23-cv-02569-SSS-SP** |
| Plaintiffs, vs. | **PLAINTIFF PRESTON MCCORMICK'S RESPONSE TO DEFENDANT JOSE TRUILLO VILLASENOR'S FIRST SET OF INTERROGATORIES** |
| COUNTY OF RIVERSIDE, a public entity; JEFFREY ANTHONY VAN WAGENEN, JR., an individual and in his official capacity; RIVERSIDE COUNTY SHERRIFF'S DEPARTMENT, a division of a public entity; SHERIFF CHAD BIANCO, an individual and in his official capacity; JOSE-TRUJILLO VILLASENOR, an individual and in his official capacity; IMPERIAL IRRIGATION DISTRICT, a | **JUDGE SUNSHINE SUZANNE SYKES**<br>**MAGISTRATE JUDGE SHERI PYM** |

1

public entity;
JAMIE L. ASBURY, an individual and in her official capacity; and
DOES 1 through 150, individually, jointly and severally,

Defendants.

**PROPOUNDING PARTY:   DEFENDANT JOSE TRUILLO VILLASENOR**

**RESPONDING PARTY:      PLAINTIFF PRESTON MCCORMICK**

**SET NO.:                ONE**

**TO:   DEFENDANT JOSE TRUILLO VILLASENOR AND ATTORNEYS OF RECORD:**

Pursuant to *Federal Rules of Civil Procedure,* Rule 36, Plaintiff PRESTON MCCORMICK hereby responds to Defendant JOSE TRUILLO VILLASENOR's First Set of Request for Interrogatories, as follows:

**PRELIMINARY STATEMENT**

1.     These responses are made solely for the purpose of this action.  Each answer is subject to competence, relevance, materiality, propriety and admissibility, and any and all other grounds which would require the exclusion of any statement herein if the requests were asked of, or any statements contained herein were made by, a witness present and testifying in Court, all of which are reserved and may be interposed at the time of trial.

2.     Responding Party has not completed Responding Party's investigation of the facts relating to this case and has not completed Responding Party's preparation for trial.  The following responses are based upon information presently available to Responding Party and are made without prejudice to Responding

2

Party's right to utilize subsequently discovered facts.

3.    Except for explicit facts admitted herein, no incidental or implied admissions are intended hereby.  The fact that Responding Party has answered any Request should not be taken as an admission that Responding Party accepts or admits the existence of any facts set forth or assumed by such requests, or that such response constitutes admissible evidence.  The fact that Responding Party has answered part or all of any Request is not intended and shall not be construed to be a waiver by Responding Party.

4.    This Preliminary Statement is incorporated into each of the responses set forth below.

**RESPONSE TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

Please list and describe in detail and with particularity every marijuana related license and permit YOU claim to have including but not limited to what the licenses permit you to do, dates issued, expiration dates, and issuing authorities.

**RESPONSE TO INTERROGATORY NO. 1:**

Responding Party was issued a Torres Martinez, Cannabis Control Commission conditional Manufacturing License, License Number TM-CC-007, with an effective date of 9/19/2022 and an expiration date of 9/19/2023, authorizing Responding Party to engage in cultivating and manufacturing of cannabis on the Subject Property that was leased by Responding Party through the Torres Martinez Cannabis Control Commission for the duration of the license period, with the condition that breach by Responding Party of any of the regulations and/or agreements of or with the Torres Martinez Desert Cahuilla Indian Tribe may result in termination of said license during the effective period, and also requiring that all fees must remain current and all requirements, as provided by the Torres Martinez Cannabis Control Commission's regulations, must be fully met by Responding Party

3

for the duration of the effective period of the license in order to maintain such license.

**INTERROGATORY NO. 2:**

Please IDENTIFY ALL persons YOU know with information regarding YOUR application for and issuance of the marijuana license(s) and permit(s) YOU claim to have, including but not limited to, cultivation, sale, transportation, manufacturing, use, and possession.

**RESPONSE TO INTERROGATORY NO. 2:**

Sinh "Bobby" Slu; Thomas Tortez; Joseph Mireles; Millie Whitehead; and Elaine Penaloza.

**INTERROGATORY NO. 3:**

If YOU intend to claim punitive damages, please identify all evidence and facts you intend to use to support your claim for punitive damages, including but not limited to the amount of YOUR claim and how that amount was calculated.

**RESPONSE TO INTERROGATORY NO. 3:**

The identification of all evidence and facts that Responding Party contends supports that Responding Party was subject to the use of excessive force include:

Photograph of injuries (MCCORMICK000000058).

County of Riverside "Claim For Damages To Person or Property" and supporting attachments and exhibits, intake date stamped June 1, 2023 (MCCORMICK 0000000001-0000000057).

All documents obtained by Defendants directly from Responding Party's healthcare providers based on the Department of Veterans Affairs, REQUEST FOR AN AUTHORIZATION TO RELEASE HEALTH INFORMATION, executed by Responding Party September 30, 2024.

Also as alleged in the operative Complaint, during the course of Defendant Riverside County Sheriff's Department and officers and employees and agents, including Defendant Jose Truillo Villasenor, execution of the search and seizure

4

warrant at issue in this case, Responding Party was forced to the ground on his face, immediately very tightly handcuffed behind his back and taken to an asphalt road approximately twenty-five (25) yards away from Responding Party's home. While still tightly handcuffed, Responding Party remained held in custody for approximately eight to ten (8-10) hours while being periodically interrogated by Riverside County Sheriff's Department officers, employees, and agents and without immediate and advance disclosure of Responding Party's "Miranda" and other constitutionally guaranteed rights.  Responding Party insisted on his rights, including the right to speak with Responding Party's attorney and have such attorney present during his repeated interrogation while he remained in extreme duress and physical pain in handcuffs and in custody. Responding Party was deprived of immediate and necessary care for his injuries sustained during such time Responding Party was held in custody by Riverside County Sheriff's Department.

Furthermore, Responding Party contends that the entire agricultural facility, consisting of approximately 150 greenhouses and related infrastructure, that was used by Responding Party to cultivate and manufacture cannabis pursuant to a valid Torres Martinez, Cannabis Control Commission conditional Manufacturing License, License Number TM-CC-007, with an effective date of 9/19/2022 and an expiration date of 9/19/2023, authorizing Responding Party to engage in cultivating and manufacturing of cannabis on the Subject Property that was leased by Responding Party through the Torres Martinez Cannabis Control Commission for the duration of the license period, was totally destroyed by Defendants.

During the deposition of Propounding Party, Defendant Villasenor admitted that Defendants considered the Torres Martinez Desert Cahuilla Indian Tribe to be a "criminal organization" thus exhibiting malice motive and intent in relationship to the Affidavit in Support of the Search Warrant at issue in this case and the execution of such Warrant by Defendants.

Responding Party contends that a jury may award punitive damages inasmuch

5

as Defendants' conduct was driven by evil motive or intent and when Defendants' conduct involved a reckless or callous indifference to the constitutional rights of the Responding Party, and further contends that the standard for punitive damages is measured under common law tort cases with evidence of malicious, wanton, or oppressive acts or omissions leading to the assessing of punitive damages in order to deter and punish Defendants over and above whatever compensatory damage award would be provided Responding Party.

Responding Party's calculation of punitive damages is as follows:

- Financial Losses:                                    $ 6,635,900.00
- Punitive Damages (3X Actual Losses):     $19,907,700.00

**INTERROGATORY NO. 4:**

If YOU intend to claim loss of earning capacity or loss of earnings, please identify all evidence and facts you intend to use to support those claims.

**RESPONSE TO INTERROGATORY NO. 4:**

The identification of all evidence and facts Responding Party contends that supports the claim of loss of earning capacity includes:

County of Riverside "Claim For Damages To Person or Property" and supporting attachments and exhibits, intake date stamped June 1, 2023 (MCCORMICK 0000000001-0000000057).

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Torres Martinez Desert Cahuilla Indians, Payment Receipts (MCCORMICK 0000000089-0000000095).

East Wind Ag, 10 Year Profit/Loss Projections (MCCORMICK 0000000206-0000000216).

6

The amount of Responding Party's claim is $205,938,350.00 and was calculated according to East Wind Ag, 10 Year Profit/Loss Projections (MCCORMICK 0000000206-0000000216).

Responding Party contends that the entire agricultural facility, consisting of approximately 150 greenhouses and related infrastructure, used by Responding Party to cultivate and manufacture cannabis pursuant to a valid Torres Martinez Cannabis Control Commission conditional Manufacturing License, License Number TM-CC-007, with an effective date of 9/19/2022 and an expiration date of 9/19/2023, authorizing Responding Party to engage in cultivating and manufacturing of cannabis on the Subject Property that was leased by Responding Party through the Torres Martinez Cannabis Control Commission for the duration of the license effective period, was totally destroyed by Defendants, depriving Responding Party from earning capacity over the ten year term of the Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement.

**INTERROGATORY NO. 5:**

If YOU believe that anyone was negligent, reckless, or intentional in the Warrant application that permitted the search of 91521 Ave 68, Mecca, California on the date of this INCIDENT, please explain with details and particularity why YOU believe so including but not limited to who was reckless, negligent, or intentional, whether they were negligent, reckless, or intentional, how they were negligent, reckless, or intentional, and what YOU believe they should have done differently.

**RESPONSE TO INTERROGATORY NO. 5:**

The identification of all evidence and facts Responding Party contends that supports the claim of negligent, reckless, or intentional acts and omissions in relationship to the Warrant application that permitted the search of 91521 Ave 68, Mecca, California on the date of this INCIDENT includes:

7

United States Department of the Interior, Bureau of Indian Affairs, "Land into Trust Application – Torres Martinez Desert Cahuilla Indians, California – Mecca Ranch", dated February 19, 2021 (MCCORMICK 0000000013).

GRANT DEED, ACKNOWLEDGMENT LEGAL DESCRIPTION, EXHIBIT A," dated January 25, 2021 (MCCORMICK 0000000014-0000000022).

United States Department of the Interior, Bureau of Indian Affairs, "Title Status Report," dated February 22, 2021 (MCCORMICK 0000000023-0000000029).

The Code of Laws of The Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Regulations To License and Regulate Cannabis on The Torres Martinez Reservation" (MCCORMICK 0000000030-0000000056).

"Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) indicating an "EFFECTIVE DATE" OF September 19, 2022 (MCCORMICK 0000000057).

Email exchange between Defendant Villasenor and Riverside County Sheriff's Department employees Gladys Dominguez-Gonzales, Porfirio Mariano Matos and Salvador Gonzalez, dated October 27, 2022, admitting "Preston McCormick came in to the [Thermal] station today to provide a copy of his Cannabis License Permit." (COUNTY 00367-0370).

Responding Party contends that Defendant Villasenor was negligent, reckless and intentional in the Warrant application that permitted the search of 91521 Ave 68, Mecca, California (the "Subject Property") on and before the date of this INCIDENT.

Responding Party contends that Defendant Villasenor owed a duty to Responding Party to conduct further investigation prior to the Warrant application,

8

but repeatedly failed to do so, in order to make a clear determination as to the legal status of the Subject Property to confirm that such Subject Property was held in trust for the Torres Martinez Desert Cahuilla Indians by the United States of America, and dutifully recorded pursuant to Grant Deed issued by the United States Department of the Interior, Bureau of Indian Affairs.  Such further investigation must have necessarily included making a formal written request  to the United States Department of the Interior, Bureau of Indian Affairs, for the "Title Status Report" as to the Subject Property, that clearly designates such Subject Property as sovereign Indian tribal land of the Torres Martinez Desert Cahuilla Indians.

Responding Party contends that Defendant Villasenor owed a duty to Responding Party to conduct further investigation upon receipt of the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) indicating an "EFFECTIVE DATE" OF September 19, 2022, inasmuch as such further investigation was reasonable and prudent upon receipt of facts clearly indicating that the Subject Property was sovereign Indian tribal land of the Torres Martinez Desert Cahuilla Indians.

Responding Party contends that Defendant Villasenor owed a duty to Responding Party to conduct further investigation upon observing that the Subject Property's perimeter entrance was also clearly marked at all sides and entrances with bold three by four foot written signs and placards notifying Defendant Villasenor that the Subject Property, in its entirety, was squarely situated exclusively on sovereign Indian tribal land of the Torres Martinez Desert Cahuilla Indians, including bold and very large font lettering in red stating "**INDIAN RESERVATION**" disclosures on all such signs and placards.

Responding Party contends that Defendant Villasenor acted intentionally and in reckless disregard for Responding Party's civil rights in the course of Villasenor's investigation associated with the Warrant application that permitted the search of the Subject Property.  Defendant Villasenor repeatedly admitted on deposition that such

9

Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process.  Instead, Defendant Villasenor

Responding Party contends that Defendant Villasenor acted intentionally and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding probable cause to issue the Search Warrant at issue in this INCIDENT.  Defendant Villasenor intentionally disregarded investigation information that such Defendant obtained or should have been obtained during the course of such Defendant's investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians.

Instead, Defendant Villasenor should have conducted further reasonable investigation to make a clear and unambiguous determination as to the validity of the Manufacturing License before engaging in the Warrant application process, should have made a formal written request to the United States Department of the Interior, Bureau of Indian Affairs, for the "Title Status Report" as to the Subject Property, and should have consulted with the Riverside County Sheriff's Department Tribal Liaison Unit as well as Villasenor's direct supervisors to receive further guidance and clarification as to the status of the Subject Property Subject Property as sovereign Indian tribal land of the Torres Martinez Desert Cahuilla Indians.

**INTERROGATORY NO. 6:**

If YOU believe that listing 91521 Ave 68, Mecca, California as trust land instead of fee land on the Warrant application would preclude a finding of probable

10

cause, or that the Warrant as written lacks probable cause, please explain with details and particularity why YOU believe so.

**RESPONSE TO INTERROGATORY NO. 6:**

The identification of all evidence and facts Responding Party contends that supports that the Subject Property was and is "trust land" instead of "fee land" and should have been indicated as such on the Warrant application and by doing so, would preclude a finding of probable cause and that the Warrant as written lacks probable cause, includes:

United States Department of the Interior, Bureau of Indian Affairs, "Land into Trust Application – Torres Martinez Desert Cahuilla Indians, California – Mecca Ranch", dated February 19, 2021 (MCCORMICK 0000000013).

GRANT DEED, ACKNOWLEDGMENT LEGAL DESCRIPTION, EXHIBIT A," dated January 25, 2021 (MCCORMICK 0000000014-0000000022).

United States Department of the Interior, Bureau of Indian Affairs, "Title Status Report," dated February 22, 2021 (MCCORMICK 0000000023-0000000029).

Responding Party contends that the Subject Property was, and remains to this day, held by the United States of America as sovereign "trust land" on behalf of the Torres Martinez Desert Cahuilla Tribe, is not "fee land", and should have been indicated as such on the Warrant application and, but for Defendant Villasenor omitting this critical fact in his sworn Affidavit, would have affirmatively precluded a finding of probable cause and rendering the resulting Warrant void as written inasmuch as such Warrant lacks such probable cause.

Responding Party contends that, pursuant to federal law, the United States of America holds legal title to the lands of the Torres Martinez Desert Cahuilla Tribe including, but not limited to, 91521 Ave 68, Mecca, California 92254, that is

11

designated as "BIA Tract ID Number 595 T 1016 and 595 T 1017" (the "Subject Property").

Responding Party contends that the Subject Property is registered in trust for the Tribe's exclusive use and benefit and has not been allotted in severalty. The Subject Property is therefore clearly "Indian Country" within the meaning of 18 U.S.C. §§ 1151 and 1162, and 28 U.S.C. § 1360.

Responding Party contends that, at the time that Defendants engaged in the Warrant application process, the Subject Property was "trust land" as a matter of law, making the Warrant itself facially void *ab initio* lacking all probable cause in support thereof, and rendering Defendants' acts and omissions in submitting the Affidavit in support of such Warrant, seeking such Warrant, and executing such Warrant as *ultra vires* and contrary to federal law governing jurisdiction in Indian Country.

**INTERROGATORY NO. 7:**

Please provide all addresses you have lived on in the past 10 years with the dates you have resided therein.

**RESPONSE TO INTERROGATORY NO. 7:**

91521 Ave 68, Mecca, CA 92254

2630 Ramon Road #583, Thousand Palms, CA 92276

**INTERROGATORY NO. 8:**

Please describe with details and particularity ALL of YOUR agreements with the Torres Martinez Desert Cahuilla Tribe, including but not limited to the leasing or rental of 91521 Ave 68, Mecca, California, and marijuana cultivation, sale, use, possession, transportation, and manufacture.

**RESPONSE TO INTERROGATORY NO. 8:**

The identification of all evidence and facts Responding Party contends that constitutes ALL Responding Party's agreements with the Torres Martinez Desert Cahuilla Tribe, including but not limited to the leasing or rental of 91521 Ave 68, Mecca, California, and marijuana cultivation, sale, use, possession, transportation,

12

and manufacture, includes:

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Manufacturing License Number "TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) indicating an "EFFECTIVE DATE" of September 19, 2022 (MCCORMICK 0000000057).

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Responding Party contends that the stated "Purpose and Authorized Uses of Premises", as set forth in the Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) and East Wind Ag (the "Lease"), was for cannabis production and agribusiness and such Lease Agreement expressly authorized Responding Party to engage in the lawful "cultivation, distribution, manufacturing, and dispensary" of cannabis on the Subject Property based on Responding Party obtaining a license from the Tribe's Cannabis Control Commission.

Responding Party contends that the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Manufacturing License Number "TM-CCC-007" (the "License") issued in the name "Preston McCormick (East Wind Ag) lawfully authorized Responding Party to engage in marijuana cultivation and manufacture on and within the Subject Property.  This License provides, in pertinent part, that it is a conditional license, authorizing the Responding Party to engage in "the cultivation and manufacturing of cannabis" on the agreed upon land leased by the Responding Party as "licensee" and the Torres Martinez Cannabis Control Commission for the duration of the effective period of such License (i.e., September 19, 2022 to September 19, 2023).

13

**INTERROGATORY NO. 9:**

Please describe with particularity all actions by Defendants that violated your constitutional rights, if any.

**RESPONSE TO INTERROGATORY NO. 9:**

Responding Party contends that Defendants were negligent, reckless and intentional in obtaining and executing the Search Warrant at issue in this case, resulting in repeated violations of Responding Party's civil rights.

Responding Party contends that Defendants owed a duty to Resonding Party to conduct further investigation prior to the Warrant application, but repeatedly failed to do so, in order to make a clear determination as to the legal status of the Subject Property to confirm that such Subject Property was held in trust for the Torres Martinez Desert Cahuilla Indians by the United States of America, and dutifully recorded pursuant to Grant Deed issued by the United States Department of the Interior, Bureau of Indian Affairs.  Such further investigation must have necessarily included making a formal written request  to the United States Department of the Interior, Bureau of Indian Affairs, for the "Title Status Report" as to the Subject Property, that clearly designates such Subject Property as sovereign Indian tribal land of the Torres Martinez Desert Cahuilla Indians.

Responding Party contends that Defendants owed a duty to Plaintiffs to conduct further investigation upon receipt of the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) indicating an "EFFECTIVE DATE" OF September 19, 2022, inasmuch as such further investigation was reasonable and prudent upon receipt of facts clearly indicating that the Subject Property was sovereign Indian tribal land of the Torres Martinez Desert Cahuilla Indians.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County, acted intentionally

14

and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property.  Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process.

Responding Party contends that Defendants, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County, acted intentionally and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding probable cause to issue the Search Warrant at issue in this INCIDENT.  Defendants intentionally disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians.

Responding Party contends that Defendants acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law.  On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights.  Responding Party contends that Defendants acted intentionally and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without

15

immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights.

Responding Party contends that Defendants acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise and personal property that was squarely located on sovereign lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians.

**INTERROGATORY NO. 10:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR 42 U.S.C. 1983 claim(s) of unreasonable search and seizure.

**RESPONSE TO INTERROGATORY NO. 10:**

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's 42 U.S.C. § 1983 claim alleging an unreasonable search and seizure, include that Defendants, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's 42 U.S.C. § 1983 claim alleging an unreasonable search and seizure, include that Defendants, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

16

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County, acted intentionally and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property.  Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding probable cause to issue the Search Warrant at issue in this INCIDENT.  Defendants intentionally disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process.

Responding Party contends that Defendants, under color of state law and exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law.  On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process.

Responding Party contends that Defendants, under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the profits to be obtained thereby, as well as the destruction and depravation of Responding Party's personal property, squarely located on sovereign lands held in

trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process.

**INTERROGATORY NO. 11:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR Monell claim(s).

**RESPONSE TO INTERROGATORY NO. 10:**

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's Monell claim alleging an unreasonable search and seizure, includes that Defendants, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's Monell claim alleging an unreasonable search and seizure, include that Defendants, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

Responding Party contends that, in establishing Responding Party's Monell claim under 42 U.S.C. § 1983, Responding Party will present evidence and facts including that Defendants' acts and/or omissions: (1) deprived Responding Party of

Responding Party's rights protected by the U.S. Constitution; (2) constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights; (3) constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation or Responding Party's rights; and (4) was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority of Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property.  Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of

Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding probable cause to issue the Search Warrant at issue in this INCIDENT.  Defendants intentionally disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendants, under color of state law and exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law.  On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights, , and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of

21

Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendants, under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the

22

profits to be obtained thereby, as well as the destruction and depravation of Responding Party's personal property, squarely located on sovereign lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

**INTERROGATORY NO. 12:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR supervisory liability claims.

**RESPONSE TO INTERROGATORY NO. 12:**

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's supervisory liability claims include: that Defendant County of Riverside, by and through the Riverside County Sheriff's Department, demonstrated deliberate indifference to citizens' civil rights. Said Defendants failed to properly train, supervise, retrain, and discipline Defendant Villasenor, while acting under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, in the exercise of Defendant Villasenor's duties and responsibilities as an officer employed with the Riverside County Sheriff's Department; that Defendant County of Riverside directed Defendant Villasenor in the acts and omissions that deprived Responding Party of federally protected civil rights,

23

Defendant County of Riverside set in motion a series of acts by Defendant Villasenor and knowingly refused to terminate a series of acts by Defendant Villasenor; that Defendant County of Riverside knew or reasonably should have known that Defendant Villasenor would to deprive Responding Party of a particular federal right; that Defendant County of Riverside both (a) knew that Defendant Villasenor was engaging in a series of acts and knew or reasonably should have known that Defendant Villasenor's conduct would deprive the person of a particular federal right; and (b) Defendant County of Riverside failed to act to prevent Defendant Villasenor from engaging in such conduct; that Defendant County of Riverside both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause Defendant Villasenor to violate Responding Party's constitutional rights; and (b) the deficiency or omission actually caused Defendant Villasenor to deprive Responding Party of a constitutional right; and that Defendant County of Riverside engaged in conduct that showed a reckless or callous indifference to the deprivation by Defendant Villasenor of the rights of Responding Party; and, that Defendant County of Riverside's conduct was so closely related to the deprivation of Responding Party's rights as to be the moving force that caused the ultimate injury to Resonding Party.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's supervisory liability claims, includes that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's supervisory liability claims, include that Defendant Villasenor, in executing the Search Warrant at issue in this case that

24

was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority of Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property. Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by

25

submitting false and misleading testimony by way of Affidavit in support of finding probable cause to issue the Search Warrant at issue in this INCIDENT.  Defendants intentionally disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendants, under color of state law and exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law.  On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights, , and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside

that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the profits to be obtained thereby, as well as the destruction and depravation of Responding Party's personal property, squarely located on sovereign

27

lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

**INTERROGATORY NO. 13:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR policies, customs, conduct, and practices violation claims.

**RESPONSE TO INTERROGATORY NO. 13:**

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's policies, customs, conduct, and practices violation claims include: that Defendant County of Riverside, by and through the Riverside County Sheriff's Department, had formal and informal policies, customs, conduct, and practices that demonstrated deliberate indifference to citizens' civil rights.  Said Defendants failed to properly train, supervise, retrain, and discipline Defendant Villasenor, while acting under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, in the exercise of Defendant Villasenor's duties and responsibilities as an officer employed with the Riverside County Sheriff's Department; that Defendant County of Riverside directed Defendant Villasenor in the acts and omissions that deprived Responding Party of federally protected civil rights, Defendant County of Riverside set in motion a series

of acts by Defendant Villasenor and knowingly refused to terminate a series of acts by Defendant Villasenor; that Defendant County of Riverside knew or reasonably should have known that Defendant Villasenor would to deprive Responding Party of a particular federal right; that Defendant County of Riverside both (a) knew that Defendant Villasenor was engaging in a series of acts and knew or reasonably should have known that Defendant Villasenor's conduct would deprive the person of a particular federal right; and (b) Defendant County of Riverside failed to act to prevent Defendant Villasenor from engaging in such conduct; that Defendant County of Riverside both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause Defendant Villasenor to violate Responding Party's constitutional rights; and (b) the deficiency or omission actually caused Defendant Villasenor to deprive Responding Party of a constitutional right; and that Defendant County of Riverside engaged in conduct that showed a reckless or callous indifference to the deprivation by Defendant Villasenor of the rights of Responding Party; and, that Defendant County of Riverside's conduct was so closely related to the deprivation of Responding Party's rights as to be the moving force that caused the ultimate injury to Resonding Party.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's policies, customs, conduct, and practices violation claims, includes that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's policies, customs, conduct, and practices violation claims, include that Defendant Villasenor, in executing the

29

Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority of Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property.  Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted

intentionally and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding probable cause to issue the Search Warrant at issue in this INCIDENT. Defendants intentionally disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendants, under color of state law and exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law. On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights, , and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's

31

rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the profits to be obtained thereby, as well as the destruction and

depravation of Responding Party's personal property, squarely located on sovereign lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

**INTERROGATORY NO. 14:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR failure to protect from harm claim.

**RESPONSE TO INTERROGATORY NO. 14:**

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's failure to protect from harm claims include: that Defendant County of Riverside, by and through the Riverside County Sheriff's Department, had formal and informal policies, customs, conduct, and practices that demonstrated deliberate indifference to citizens' civil rights. Said Defendants failed to properly train, supervise, retrain, and discipline Defendant Villasenor, while acting under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, in the exercise of Defendant Villasenor's duties and responsibilities as an officer employed with the Riverside County Sheriff's Department; that Defendant County of Riverside directed Defendant Villasenor in the acts and omissions that deprived Responding Party of federally protected civil rights,

33

Defendant County of Riverside set in motion a series of acts by Defendant Villasenor and knowingly refused to terminate a series of acts by Defendant Villasenor; that Defendant County of Riverside knew or reasonably should have known that Defendant Villasenor would to deprive Responding Party of a particular federal right; that Defendant County of Riverside both (a) knew that Defendant Villasenor was engaging in a series of acts and knew or reasonably should have known that Defendant Villasenor's conduct would deprive the person of a particular federal right; and (b) Defendant County of Riverside failed to act to prevent Defendant Villasenor from engaging in such conduct; that Defendant County of Riverside both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause Defendant Villasenor to violate Responding Party's constitutional rights; and (b) the deficiency or omission actually caused Defendant Villasenor to deprive Responding Party of a constitutional right; and that Defendant County of Riverside engaged in conduct that showed a reckless or callous indifference to the deprivation by Defendant Villasenor of the rights of Responding Party; and, that Defendant County of Riverside's conduct was so closely related to the deprivation of Responding Party's rights as to be the moving force that caused the ultimate injury to Resonding Party.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's supervisory liability claims, includes that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's failure to protect from harm claims, include that Defendant Villasenor, in executing the Search Warrant at issue in this

34

case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority of Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property.  Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by

submitting false and misleading testimony by way of Affidavit in support of finding probable cause to issue the Search Warrant at issue in this INCIDENT.  Defendants intentionally disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendants, under color of state law and exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law.  On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights, , and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside

36

that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the profits to be obtained thereby, as well as the destruction and depravation of Responding Party's personal property, squarely located on sovereign

37

lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

**INTERROGATORY NO. 15:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR failure to provide medical care claim.

**RESPONSE TO INTERROGATORY NO. 15:**

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's failure to provide medical care claims include: that Defendant County of Riverside, by and through the Riverside County Sheriff's Department, had formal and informal policies, customs, conduct, and practices that demonstrated deliberate indifference to citizens' civil rights.

Said Defendants failed to properly train, supervise, retrain, and discipline Defendant Villasenor, while acting under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, in the exercise of Defendant Villasenor's duties and responsibilities as an officer employed with the Riverside County Sheriff's Department; that Defendant County of Riverside directed Defendant Villasenor in the acts and omissions that deprived Responding Party of federally protected civil rights, Defendant County of Riverside set in motion a series of acts by Defendant

38

Villasenor and knowingly refused to terminate a series of acts by Defendant Villasenor; that Defendant County of Riverside knew or reasonably should have known that Defendant Villasenor would to deprive Responding Party of a particular federal right; that Defendant County of Riverside both (a) knew that Defendant Villasenor was engaging in a series of acts and knew or reasonably should have known that Defendant Villasenor's conduct would deprive the person of a particular federal right; and (b) Defendant County of Riverside failed to act to prevent Defendant Villasenor from engaging in such conduct; that Defendant County of Riverside both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause Defendant Villasenor to violate Responding Party's constitutional rights; and (b) the deficiency or omission actually caused Defendant Villasenor to deprive Responding Party of a constitutional right; and that Defendant County of Riverside engaged in conduct that showed a reckless or callous indifference to the deprivation by Defendant Villasenor of the rights of Responding Party; and, that Defendant County of Riverside's conduct was so closely related to the deprivation of Responding Party's rights as to be the moving force that caused the ultimate injury to Resonding Party.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's failure to provide medical care claims, includes that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's failure to provide medical care claims, include that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of

39

California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority of Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property.  Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding

40

probable cause to issue the Search Warrant at issue in this INCIDENT.  Defendants intentionally disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendants, under color of state law and exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law.  On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights, , and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside

41

that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the profits to be obtained thereby, as well as the destruction and depravation of Responding Party's personal property, squarely located on sovereign

42

lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

**INTERROGATORY NO. 16:**

Please describe with particularity all evidence and facts YOU intend to use to support your battery claim.

**RESPONSE TO INTERROGATORY NO. 16:**

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's battery claims include: that Defendant County of Riverside, by and through the Riverside County Sheriff's Department, had formal and informal policies, customs, conduct, and practices that demonstrated deliberate indifference to citizens' civil rights.

Said Defendants failed to properly train, supervise, retrain, and discipline Defendant Villasenor, while acting under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, in the exercise of Defendant Villasenor's duties and responsibilities as an officer employed with the Riverside County Sheriff's Department; that Defendant County of Riverside directed Defendant Villasenor in the acts and omissions that deprived Responding Party of federally protected civil rights, Defendant County of Riverside set in motion a series of acts by Defendant

43

Villasenor and knowingly refused to terminate a series of acts by Defendant Villasenor; that Defendant County of Riverside knew or reasonably should have known that Defendant Villasenor would to deprive Responding Party of a particular federal right; that Defendant County of Riverside both (a) knew that Defendant Villasenor was engaging in a series of acts and knew or reasonably should have known that Defendant Villasenor's conduct would deprive the person of a particular federal right; and (b) Defendant County of Riverside failed to act to prevent Defendant Villasenor from engaging in such conduct; that Defendant County of Riverside both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause Defendant Villasenor to violate Responding Party's constitutional rights; and (b) the deficiency or omission actually caused Defendant Villasenor to deprive Responding Party of a constitutional right; and that Defendant County of Riverside engaged in conduct that showed a reckless or callous indifference to the deprivation by Defendant Villasenor of the rights of Responding Party; and, that Defendant County of Riverside's conduct was so closely related to the deprivation of Responding Party's rights as to be the moving force that caused the ultimate injury to Resonding Party.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's battery claims, includes that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's battery claims, include that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law

44

and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority of Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property.  Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding

45

probable cause to issue the Search Warrant at issue in this INCIDENT.  Defendants intentionally disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendants, under color of state law and exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law.  On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights, , and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside

that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the profits to be obtained thereby, as well as the destruction and depravation of Responding Party's personal property, squarely located on sovereign

lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

**INTERROGATORY NO. 17:**

Please describe with particularity all evidence and facts YOU intend to use to support your claim for assault.

**RESPONSE TO INTERROGATORY NO. 17:**

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's assault claims include: that Defendant County of Riverside, by and through the Riverside County Sheriff's Department, had formal and informal policies, customs, conduct, and practices that demonstrated deliberate indifference to citizens' civil rights.

Said Defendants failed to properly train, supervise, retrain, and discipline Defendant Villasenor, while acting under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, in the exercise of Defendant Villasenor's duties and responsibilities as an officer employed with the Riverside County Sheriff's Department; that Defendant County of Riverside directed Defendant Villasenor in the acts and omissions that deprived Responding Party of federally protected civil rights, Defendant County of Riverside set in motion a series of acts by Defendant

48

Villasenor and knowingly refused to terminate a series of acts by Defendant Villasenor; that Defendant County of Riverside knew or reasonably should have known that Defendant Villasenor would to deprive Responding Party of a particular federal right; that Defendant County of Riverside both (a) knew that Defendant Villasenor was engaging in a series of acts and knew or reasonably should have known that Defendant Villasenor's conduct would deprive the person of a particular federal right; and (b) Defendant County of Riverside failed to act to prevent Defendant Villasenor from engaging in such conduct; that Defendant County of Riverside both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause Defendant Villasenor to violate Responding Party's constitutional rights; and (b) the deficiency or omission actually caused Defendant Villasenor to deprive Responding Party of a constitutional right; and that Defendant County of Riverside engaged in conduct that showed a reckless or callous indifference to the deprivation by Defendant Villasenor of the rights of Responding Party; and, that Defendant County of Riverside's conduct was so closely related to the deprivation of Responding Party's rights as to be the moving force that caused the ultimate injury to Resonding Party.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's assault claims, includes that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's assault claims, include that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law

49

and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority of Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property.  Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding

50

probable cause to issue the Search Warrant at issue in this INCIDENT. Defendants intentionally disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendants, under color of state law and exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law. On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights, , and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside

51

that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the profits to be obtained thereby, as well as the destruction and depravation of Responding Party's personal property, squarely located on sovereign

lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

**INTERROGATORY NO. 18:**

Please describe with particularity all evidence and facts YOU intend to use to support your claim(s) for intentional or negligent infliction of emotional distress.

**RESPONSE TO INTERROGATORY NO. 18:**

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's intentional or negligent infliction of emotional distress claims include: that Defendant County of Riverside, by and through the Riverside County Sheriff's Department, had formal and informal policies, customs, conduct, and practices that demonstrated deliberate indifference to citizens' civil rights.

Said Defendants failed to properly train, supervise, retrain, and discipline Defendant Villasenor, while acting under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, in the exercise of Defendant Villasenor's duties and responsibilities as an officer employed with the Riverside County Sheriff's Department; that Defendant County of Riverside directed Defendant Villasenor in the acts and omissions that deprived Responding Party of federally protected civil

53

rights, Defendant County of Riverside set in motion a series of acts by Defendant Villasenor and knowingly refused to terminate a series of acts by Defendant Villasenor; that Defendant County of Riverside knew or reasonably should have known that Defendant Villasenor would to deprive Responding Party of a particular federal right; that Defendant County of Riverside both (a) knew that Defendant Villasenor was engaging in a series of acts and knew or reasonably should have known that Defendant Villasenor's conduct would deprive the person of a particular federal right; and (b) Defendant County of Riverside failed to act to prevent Defendant Villasenor from engaging in such conduct; that Defendant County of Riverside both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause Defendant Villasenor to violate Responding Party's constitutional rights; and (b) the deficiency or omission actually caused Defendant Villasenor to deprive Responding Party of a constitutional right; and that Defendant County of Riverside engaged in conduct that showed a reckless or callous indifference to the deprivation by Defendant Villasenor of the rights of Responding Party; and, that Defendant County of Riverside's conduct was so closely related to the deprivation of Responding Party's rights as to be the moving force that caused the ultimate injury to Resonding Party.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's intentional or negligent infliction of emotional distress claims, includes that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's intentional or negligent infliction of

emotional distress claims, include that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority of Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property.  Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, inflicted severe and lasting intentional and negligent emotional distress and harm on and in Responding Party.

55

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding probable cause to issue the Search Warrant at issue in this INCIDENT. Defendants intentionally and negligently disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, inflicted severe and lasting intentional and negligent emotional distress and harm on and in Responding Party.

Responding Party contends that Defendants, under color of state law and exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law. On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn

56

raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights, , and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, inflicted severe and lasting intentional and negligent emotional distress and harm on and in Responding Party.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so

doing, inflicted severe and lasting intentional and negligent emotional distress and harm on and in Responding Party.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the profits to be obtained thereby, as well as the destruction and depravation of Responding Party's personal property, squarely located on sovereign lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, inflicted severe and lasting intentional and negligent emotional distress and harm on and in Responding Party.

**INTERROGATORY NO. 19:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR negligence claim(s).

**RESPONSE TO INTERROGATORY NO. 19:**

58

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's negligence claims include: that Defendant County of Riverside, by and through the Riverside County Sheriff's Department, had formal and informal policies, customs, conduct, and practices that demonstrated deliberate indifference to citizens' civil rights.

Said Defendants failed to properly train, supervise, retrain, and discipline Defendant Villasenor, while acting under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, in the exercise of Defendant Villasenor's duties and responsibilities as an officer employed with the Riverside County Sheriff's Department; that Defendant County of Riverside directed Defendant Villasenor in the acts and omissions that deprived Responding Party of federally protected civil rights, Defendant County of Riverside set in motion a series of acts by Defendant Villasenor and knowingly refused to terminate a series of acts by Defendant Villasenor; that Defendant County of Riverside knew or reasonably should have known that Defendant Villasenor would to deprive Responding Party of a particular federal right; that Defendant County of Riverside both (a) knew that Defendant Villasenor was engaging in a series of acts and knew or reasonably should have known that Defendant Villasenor's conduct would deprive the person of a particular federal right; and (b) Defendant County of Riverside failed to act to prevent Defendant Villasenor from engaging in such conduct; that Defendant County of Riverside both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause Defendant Villasenor to violate Responding Party's constitutional rights; and (b) the deficiency or omission actually caused Defendant Villasenor to deprive Responding Party of a constitutional right; and that Defendant County of Riverside engaged in conduct that showed a reckless or callous indifference to the deprivation by Defendant Villasenor of the rights of Responding Party; and, that Defendant County of Riverside's conduct was so

59

closely related to the deprivation of Responding Party's rights as to be the moving force that caused the ultimate injury to Resonding Party.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's intentional or negligent infliction of emotional distress claims, includes that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's intentional or negligent infliction of emotional distress claims, include that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority of Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property. Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application

60

process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, inflicted severe and lasting intentional and negligent emotional distress and harm on and in Responding Party.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding probable cause to issue the Search Warrant at issue in this INCIDENT. Defendants intentionally and negligently disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant

County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, acted negligently in relationship to Responding Party.

Responding Party contends that Defendants, under color of state law and exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law.  On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights, , and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, acted negligently in relationship to Responding Party.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without

immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights a and, in so doing, acted negligently in relationship to Responding Party.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the profits to be obtained thereby, as well as the destruction and depravation of Responding Party's personal property, squarely located on sovereign lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights,

constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, acted negligently in relationship to Responding Party.

**INTERROGATORY NO. 20:**

Please describe with particularity all evidence and facts YOU intend to use to support your intentional interference with contractual relations claim(s).

**RESPONSE TO INTERROGATORY NO. 20:**

The identification of all evidence and facts Responding Party contends that supports the claim of intentional interference with contractual relations in relationship to the Warrant application that permitted the search of 91521 Ave 68, Mecca, California on the date of this INCIDENT includes:

United States Department of the Interior, Bureau of Indian Affairs, "Land into Trust Application – Torres Martinez Desert Cahuilla Indians, California – Mecca Ranch", dated February 19, 2021 (MCCORMICK 0000000013).

GRANT DEED, ACKNOWLEDGMENT LEGAL DESCRIPTION, EXHIBIT A," dated January 25, 2021 (MCCORMICK 0000000014-0000000022).

United States Department of the Interior, Bureau of Indian Affairs, "Title Status Report," dated February 22, 2021 (MCCORMICK 0000000023-0000000029).

The Code of Laws of The Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Regulations To License and Regulate Cannabis on The Torres Martinez Reservation" (MCCORMICK 0000000030-0000000056).

"Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) indicating an "EFFECTIVE DATE" OF September 19, 2022 (MCCORMICK 0000000057).

64

Email exchange between Defendant Villasenor and Riverside County Sheriff's Department employees Gladys Dominguez-Gonzales, Porfirio Mariano Matos and Salvador Gonzalez, dated October 27, 2022, admitting "Preston McCormick came in to the [Thermal] station today to provide a copy of his Cannabis License Permit." (COUNTY 00367-0370).

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's intentional interference with contractual relations claims include: that Defendant County of Riverside, by and through the Riverside County Sheriff's Department, had formal and informal policies, customs, conduct, and practices that demonstrated deliberate indifference to citizens' civil rights.

Said Defendants failed to properly train, supervise, retrain, and discipline Defendant Villasenor, while acting under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, in the exercise of Defendant Villasenor's duties and responsibilities as an officer employed with the Riverside County Sheriff's Department; that Defendant County of Riverside directed Defendant Villasenor in the acts and omissions that deprived Responding Party of federally protected civil rights, Defendant County of Riverside set in motion a series of acts by Defendant Villasenor and knowingly refused to terminate a series of acts by Defendant Villasenor; that Defendant County of Riverside knew or reasonably should have known that Defendant Villasenor would to deprive Responding Party of a particular federal right; that Defendant County of Riverside both (a) knew that Defendant Villasenor was engaging in a series of acts and knew or reasonably should have known that Defendant Villasenor's conduct would deprive the person of a particular federal right; and (b) Defendant County of Riverside failed to act to prevent Defendant Villasenor from engaging in such conduct; that Defendant County of

65

Riverside both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause Defendant Villasenor to violate Responding Party's constitutional rights; and (b) the deficiency or omission actually caused Defendant Villasenor to deprive Responding Party of a constitutional right; and that Defendant County of Riverside engaged in conduct that showed a reckless or callous indifference to the deprivation by Defendant Villasenor of the rights of Responding Party; and, that Defendant County of Riverside's conduct was so closely related to the deprivation of Responding Party's rights as to be the moving force that caused the ultimate injury to Resonding Party.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's i intentional interference with contractual relations claims, includes that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's intentional interference with contractual relations claims, include that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority of Defiant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently,

and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property.  Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, intentionally interfered with contractual relations of Responding Party.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding probable cause to issue the Search Warrant at issue in this INCIDENT. Defendants intentionally and negligently disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the

67

Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, intentionally interfered with contractual relations of Responding Party.

Responding Party contends that Defendants, under color of state law and exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law.  On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights, , and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, acted negligently in relationship to Responding Party.

Responding Party contends that Defendant Villasenor, under color of state

68

law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, intentionally interfered with contractual relations of Responding Party.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the profits to be obtained thereby, as well as the destruction and depravation of Responding Party's personal property, squarely located on sovereign lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right

69

to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, intentionally interfered with contractual relations of Responding Party.

**INTERROGATORY NO. 21:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR negligent interference with prospective economic relations claim(s).

**RESPONSE TO INTERROGATORY NO. 21:**

The identification of all evidence and facts Responding Party contends that supports the claim of negligent interference with prospective economic relations in relationship to the Warrant application that permitted the search of 91521 Ave 68, Mecca, California on the date of this INCIDENT includes:

United States Department of the Interior, Bureau of Indian Affairs, "Land into Trust Application – Torres Martinez Desert Cahuilla Indians, California – Mecca Ranch", dated February 19, 2021 (MCCORMICK 0000000013).

GRANT DEED, ACKNOWLEDGMENT LEGAL DESCRIPTION, EXHIBIT A," dated January 25, 2021 (MCCORMICK 0000000014-0000000022).

United States Department of the Interior, Bureau of Indian Affairs, "Title Status Report," dated February 22, 2021 (MCCORMICK 0000000023-0000000029).

The Code of Laws of The Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Regulations To License and Regulate Cannabis on The Torres Martinez Reservation" (MCCORMICK 0000000030-0000000056).

"Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) indicating an "EFFECTIVE DATE" OF September 19, 2022 (MCCORMICK 0000000057).

Email exchange between Defendant Villasenor and Riverside County Sheriff's Department employees Gladys Dominguez-Gonzales, Porfirio Mariano Matos and Salvador Gonzalez, dated October 27, 2022, admitting "Preston McCormick came in to the [Thermal] station today to provide a copy of his Cannabis License Permit." (COUNTY 00367-0370).

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's negligent interference with prospective economic relations claims include: that Defendant County of Riverside, by and through the Riverside County Sheriff's Department, had formal and informal policies, customs, conduct, and practices that demonstrated deliberate indifference to citizens' civil rights.

Said Defendants failed to properly train, supervise, retrain, and discipline Defendant Villasenor, while acting under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, in the exercise of Defendant Villasenor's duties and responsibilities as an officer employed with the Riverside County Sheriff's Department; that Defendant County of Riverside directed Defendant Villasenor in the acts and omissions that deprived Responding Party of federally protected civil rights, Defendant County of Riverside set in motion a series of acts by Defendant Villasenor and knowingly refused to terminate a series of acts by Defendant

71

Villasenor; that Defendant County of Riverside knew or reasonably should have known that Defendant Villasenor would to deprive Responding Party of a particular federal right; that Defendant County of Riverside both (a) knew that Defendant Villasenor was engaging in a series of acts and knew or reasonably should have known that Defendant Villasenor's conduct would deprive the person of a particular federal right; and (b) Defendant County of Riverside failed to act to prevent Defendant Villasenor from engaging in such conduct; that Defendant County of Riverside both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause Defendant Villasenor to violate Responding Party's constitutional rights; and (b) the deficiency or omission actually caused Defendant Villasenor to deprive Responding Party of a constitutional right; and that Defendant County of Riverside engaged in conduct that showed a reckless or callous indifference to the deprivation by Defendant Villasenor of the rights of Responding Party; and, that Defendant County of Riverside's conduct was so closely related to the deprivation of Responding Party's rights as to be the moving force that caused the ultimate injury to Resonding Party.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's negligent interference with prospective economic relations claims, includes that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's negligent interference with prospective economic relations claims, include that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and

72

contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority of Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property.  Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, negligently interfered with prospective economic relations of Responding Party.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted

intentionally, negligently, and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding probable cause to issue the Search Warrant at issue in this INCIDENT. Defendants intentionally and negligently disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, intentionally interfered with contractual relations of Responding Party.

Responding Party contends that Defendants, under color of state law and exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law.  On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights, , and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or

custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, negligently interfered with prospective economic relations of Responding Party.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, negligently interfered with prospective economic relations of Responding Party.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority by Defendant County of Riverside with the

apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the profits to be obtained thereby, as well as the destruction and depravation of Responding Party's personal property, squarely located on sovereign lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, negligently interfered with prospective economic relations of Responding Party.

**INTERROGATORY NO. 22:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR intentional interference with prospective economic relations claim(s).

**RESPONSE TO INTERROGATORY NO. 22:**

The identification of all evidence and facts Responding Party contends that supports the claim of intentional interference with prospective economic relations in relationship to the Warrant application that permitted the search of 91521 Ave 68, Mecca, California on the date of this INCIDENT includes:

United States Department of the Interior, Bureau of Indian Affairs, "Land into Trust Application – Torres Martinez Desert Cahuilla Indians, California – Mecca Ranch", dated February 19, 2021 (MCCORMICK 0000000013).

GRANT DEED, ACKNOWLEDGMENT LEGAL DESCRIPTION, EXHIBIT A," dated January 25, 2021 (MCCORMICK 0000000014-0000000022).

United States Department of the Interior, Bureau of Indian Affairs, "Title Status Report," dated February 22, 2021 (MCCORMICK 0000000023-0000000029).

The Code of Laws of The Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Regulations To License and Regulate Cannabis on The Torres Martinez Reservation" (MCCORMICK 0000000030-0000000056).

"Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) indicating an "EFFECTIVE DATE" OF September 19, 2022 (MCCORMICK 0000000057).

Email exchange between Defendant Villasenor and Riverside County Sheriff's Department employees Gladys Dominguez-Gonzales, Porfirio Mariano Matos and Salvador Gonzalez, dated October 27, 2022, admitting "Preston McCormick came in to the [Thermal] station today to provide a copy of his Cannabis License Permit." (COUNTY 00367-0370).

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's intentional interference with prospective economic relations claims include: that Defendant County of Riverside, by and through the Riverside County Sheriff's Department, had formal and informal policies, customs, conduct, and practices that demonstrated deliberate indifference to citizens' civil rights.

Said Defendants failed to properly train, supervise, retrain, and discipline Defendant Villasenor, while acting under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, in the exercise of Defendant Villasenor's duties and responsibilities as an officer employed with the Riverside County Sheriff's Department; that Defendant County of Riverside directed Defendant Villasenor in the acts and omissions that deprived Responding Party of federally protected civil rights, Defendant County of Riverside set in motion a series of acts by Defendant Villasenor and knowingly refused to terminate a series of acts by Defendant Villasenor; that Defendant County of Riverside knew or reasonably should have known that Defendant Villasenor would to deprive Responding Party of a particular federal right; that Defendant County of Riverside both (a) knew that Defendant Villasenor was engaging in a series of acts and knew or reasonably should have known that Defendant Villasenor's conduct would deprive the person of a particular federal right; and (b) Defendant County of Riverside failed to act to prevent Defendant Villasenor from engaging in such conduct; that Defendant County of Riverside both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause Defendant Villasenor to violate Responding Party's constitutional rights; and (b) the deficiency or omission actually caused Defendant Villasenor to deprive Responding Party of a constitutional right; and that Defendant County of Riverside engaged in conduct that showed a reckless or callous indifference to the deprivation by Defendant Villasenor of the rights of Responding Party; and, that Defendant County of Riverside's conduct was so closely related to the deprivation of Responding Party's rights as to be the moving force that caused the ultimate injury to Resonding Party.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's intentional interference with prospective economic relations claims, includes that Defendant Villasenor, in

78

executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's intentional interference with prospective economic relations claims, include that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority of Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property. Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution,

79

constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, negligently interfered with prospective economic relations of Responding Party.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding probable cause to issue the Search Warrant at issue in this INCIDENT. Defendants intentionally and negligently disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, intentionally interfered with contractual relations of Responding Party.

Responding Party contends that Defendants, under color of state law and

80

exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law.  On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights, , and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, intentionally interfered with prospective economic relations of Responding Party.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally, negligently, and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without immediate and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by

81

the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, intentionally interfered with prospective economic relations of Responding Party.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the profits to be obtained thereby, as well as the destruction and depravation of Responding Party's personal property, squarely located on sovereign lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, intentionally interfered with prospective economic relations of Responding Party.

82

**INTERROGATORY NO. 23:**

Please describe with particularity all evidence and facts YOU intend to use to support your claim(s) for vicarious liability.

**RESPONSE TO INTERROGATORY NO. 23:**

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's vicarious liability claims include: that Defendant County of Riverside, by and through the Riverside County Sheriff's Department, had formal and informal policies, customs, conduct, and practices that demonstrated deliberate indifference to citizens' civil rights.

Said Defendants failed to properly train, supervise, retrain, and discipline Defendant Villasenor, while acting under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, in the exercise of Defendant Villasenor's duties and responsibilities as an officer employed with the Riverside County Sheriff's Department; that Defendant County of Riverside directed Defendant Villasenor in the acts and omissions that deprived Responding Party of federally protected civil rights, Defendant County of Riverside set in motion a series of acts by Defendant Villasenor and knowingly refused to terminate a series of acts by Defendant Villasenor; that Defendant County of Riverside knew or reasonably should have known that Defendant Villasenor would to deprive Responding Party of a particular federal right; that Defendant County of Riverside both (a) knew that Defendant Villasenor was engaging in a series of acts and knew or reasonably should have known that Defendant Villasenor's conduct would deprive the person of a particular federal right; and (b) Defendant County of Riverside failed to act to prevent Defendant Villasenor from engaging in such conduct; that Defendant County of Riverside both (a) disregarded the known or obvious consequence that a particular training deficiency or omission would cause Defendant Villasenor to violate

83

Responding Party's constitutional rights; and (b) the deficiency or omission actually caused Defendant Villasenor to deprive Responding Party of a constitutional right; and that Defendant County of Riverside engaged in conduct that showed a reckless or callous indifference to the deprivation by Defendant Villasenor of the rights of Responding Party; and, that Defendant County of Riverside's conduct was so closely related to the deprivation of Responding Party's rights as to be the moving force that caused the ultimate injury to Resonding Party.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's vicarious liability claims, includes that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourth Amendment's protection against unreasonable searches and seizures.

Responding Party contends that the evidence and facts Responding Party intends to use in support of Responding Party's vicarious liability claims, include that Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, acted under color of California state law and that such action deprived Responding Party of Responding Party's civil rights protected by the U.S. Constitution, specifically the Fourteen Amendment's substantive and procedural due process rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority of Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the course of the investigation associated with the Warrant application that permitted the search of the Subject Property. Defendant Villasenor repeatedly admitted on deposition that such Defendant, and by extension Defendant County of Riverside, considered the Torres

84

Martinez Desert Cahuilla Indians to be a "criminal organization" and, by so doing, exhibited bias and extreme malice toward Responding Party and specifically called out and improperly "targeted" Responding Party by name in the Warrant application process in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights, and, in so doing, are vicariously liable for the acts and omissions of others as alleged in this action.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by submitting false and misleading testimony by way of Affidavit in support of finding probable cause to issue the Search Warrant at issue in this INCIDENT.  Defendants intentionally disregarded investigation information that Defendants obtained or should have been obtained during the course of such Defendants' investigatory process, including the "Manufacturing License Number TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) by the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived

Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, are vicariously liable for the acts and omissions of others as alleged in this action.

Responding Party contends that Defendants, under color of state law and exercising the authority given by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law.  On December 7, 2022, knowing that such Warrant was invalid, Defendants engaged in a pre-dawn raid of the Subject Property, resulting in the unlawful arrest and detention of the Responding Party in violation of such Responding Party's civil rights, , and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority given such Defendant by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights by Defendants handcuffing Responding Party behind the back and, while still tightly handcuffed, holding Responding Party without food or water for at least eight to ten (8-10) hours, and periodically interrogating Responding Party without immediate

86

and advance disclosure of Responding Party's "Miranda" rights and other constitutionally guaranteed rights in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights, constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, are vicariously liable for the acts and omissions as alleged in this action.

Responding Party contends that Defendant Villasenor, under color of state law and exercising the authority by Defendant County of Riverside with the apparent authorization of Defendant County of Riverside, acted intentionally and in reckless disregard for Responding Party's civil rights in the execution of such Warrant that was void on its face and contrary to federal law, resulting in the wanton physical destruction and depravation of Responding Party's lawful business enterprise, the profits to be obtained thereby, as well as the destruction and depravation of Responding Party's personal property, squarely located on sovereign lands held in trust by the United States of America on behalf of the Torres Martinez Desert Cahuilla Indians in violation of Responding Party's Fourth Amendment right to protection against unreasonable searches and seizures as well as depriving Responding Party of Responding Party's Fourteen Amendment right to substantive and procedural due process, and that such acts and omissions on the part of Defendants deprived Responding Party of Responding Party's rights protected by the U.S. Constitution, constituted a policy or custom on the part of Defendant County of Riverside leading to such depravation of Responding Party's rights,

constituted a policy or custom on the part of Defendant County of Riverside that caused the deprivation of Responding Party's rights, and was the "moving force" behind such constitutional injury in and to Responding Party's civil rights and, in so doing, are vicariously liable for the acts and omissions of others as alleged in this action.

**INTERROGATORY NO. 24:**

Please describe in detail with particularity, what YOU have done with ALL marijuana cultivated or manufactured by YOU on the SUBJECT PROPERTY located at 91521 Ave 68, Mecca, California, including but not limited to how you packaged the marijuana, how you labeled the marijuana containers, how you transported the marijuana, to whom did you sell the marijuana, the quantities sold, the prices sold for, and the dates sold.

**RESPONSE TO INTERROGATORY NO. 24:**

The identification of all evidence and facts Responding Party contends that constitutes what Responding Party has done with ALL marijuana cultivated or manufactured by Responding Party on the SUBJECT PROPERTY located at 91521 Ave 68, Mecca, California, including but not limited to how Responding Party packaged the marijuana, how Responding Party labeled the marijuana containers, how Responding Party transported the marijuana, to whom did Responding Party sell the marijuana, the quantities sold, the prices sold for, and the dates sold, are detailed in ALL Responding Party's agreements with the Torres Martinez Desert Cahuilla Tribe, including but not limited to the leasing or rental of 91521 Ave 68, Mecca, California, and marijuana cultivation, sale, use, possession, transportation, and manufacture, includes:

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Manufacturing License Number "TM-CCC-007" issued in the name "Preston McCormick (East Wind Ag) indicating an "EFFECTIVE DATE" of September 19, 2022 (MCCORMICK 0000000057).

88

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Responding Party contends that the stated "Purpose and Authorized Uses of Premises", as set forth in the Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) and East Wind Ag (the "Lease"), was for cannabis production and agribusiness and such Lease Agreement expressly authorized Responding Party to engage in the lawful "cultivation, distribution, manufacturing, and dispensary" of cannabis on the Subject Property based on Responding Party obtaining a license from the Tribe's Cannabis Control Commission.

Responding Party contends that the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Manufacturing License Number "TM-CCC-007" (the "License") issued in the name "Preston McCormick (East Wind Ag) lawfully authorized Responding Party to engage in marijuana cultivation and manufacture on and within the Subject Property.  This License provides, in pertinent part, that it is a conditional license, authorizing the Responding Party to engage in "the cultivation and manufacturing of cannabis" on the agreed upon land leased by the Responding Party as "licensee" and the Torres Martinez Cannabis Control Commission for the duration of the effective period of such License (i.e., September 19, 2022 to September 19, 2023).

Responding Party contends that ALL marijuana cultivated or manufactured by Responding Party on the SUBJECT PROPERTY located at 91521 Ave 68, Mecca, California, was purposefully seized, confiscated, and destroyed by Defendants, including Defendant Villasenor, in executing the Search Warrant at issue in this case that was void on its face and contrary to federal law, and, by so

89

doing, Responding Party was thus deprived of the right, and did not engage in, the packaging of the marijuana, the labeling of the marijuana containers, the transportation of the marijuana, the sale of the marijuana and, therefore, Responding Party has no facts or evidence of the quantities of the marijuana sold, the prices the marijuana sold for, and the dates the marijuana sold.

**INTERROGATORY NO. 25:**

Please describe with details and particularity ALL communications YOU have had with the Bureau of Indian Affairs ("BIA") and the Department of the Interior, Indian Affairs, regarding marijuana related activities including but not limited to marijuana cultivation, manufacture, use, possession, sale, transportation, distribution, and taxation.

**RESPONSE TO INTERROGATORY NO. 25:**

On May 20, 2023, Responding Party's attorneys at that time issue a written Freedom of Information Act (FOIA) request to United States Department of the Interior, Bureau of Indian Affairs ("BIA").  BIA  assigned FOIA Control Number DOI-BIA-2023-003912 to such request.  This FOIA request specifically requested the following: "The address is 91521 Avenue 68, Mecca, CA 92254. We are requesting certified copies of "Any land into trust applications signed by Regional Director Amy Dutschke on or about March 11, 2021 for the following tract ID numbers: 595 T 1016 and 595 T 1017; and any grant deeds for APN Nos.: 729-040-003; 729-040-004-4; 729- 040-005-5; 729-040-006-6 recorded by the U.S. Department of the Interior Bureau of Indian Affairs Land Titles and Records Office on or about February 19, 2021."

In response to this FOIA request, BIA produced the following documents:

United States Department of the Interior, Bureau of Indian Affairs, "Land into Trust Application – Torres Martinez Desert Cahuilla Indians, California – Mecca Ranch", dated February 19, 2021 (MCCORMICK 0000000013).

GRANT DEED, ACKNOWLEDGMENT LEGAL DESCRIPTION, EXHIBIT A," dated January 25, 2021 (MCCORMICK 0000000014-0000000022).

United States Department of the Interior, Bureau of Indian Affairs, "Title Status Report," dated February 22, 2021 (MCCORMICK 0000000023-0000000029).

DATED: _April 1, 2025            **MORROW LAW GROUP INC.**

By:    */s/ Gregory J. Morrow*
_____
Gregory J. Morrow

Attorneys for Plaintiffs
Preston McCormick and
East Wind Ag

91

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1801 Century Park East, 24th Floor, Los Angeles, California 90067.

On April 1, 2025, I served the foregoing document(s) described as **PLAINTIFF PRESTON MCCORMICK'S RESPONSE TO DEFENDANT JOSE TRUJILLO VILLASENOR'S FIRST SET OF INTERROGATORIES** on all interested parties in this action as set forth on the attached service list in the following manner:

☐ **BY MAIL:** I am familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

☐ **BY FACSIMILE:** In addition to service by mail as set forth above, a copy of said document(s) was also delivered by facsimile transmission to the addressee(s) pursuant to Code of Civil Procedure §1013(e).

☐ **BY OVERNIGHT MAIL:** I caused said document(s) to be picked up via FEDERAL EXPRESS for delivery to the addressee(s) set forth on the attached service list on the next business day.

☐ **BY PERSONAL SERVICE:** I caused said document(s) to be delivered via personal delivery to the addressee(s) set forth on the attached service list.

X **BY ELECTRONIC SERVICE:** Pursuant to the agreement of the parties, I caused said document(s) to be delivered via electronic mail to the addressee(s) set forth on the attached service list.

☐ STATE: I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

X FEDERAL: I declare that I am employed in the office of the member of the bar of this court at whose direction the service was made.

Executed on April 1, 2025, at Los Angeles, California.

By: */s/* Gregory J. Morrow

_____

1

## <u>SERVICE LIST</u>

Nathan A. Oyster, Esq.
Michaela B. Sozio, Esq.
Caylin W. Jones, Esq.
Burke, Williams & Sorensen, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953

Attorneys for Defendants
County of Riverside, Sheriff
Chad Bianco, Jeffrey Anthony
Van Wagenen, and Jose Trujillo
Villasenor
Telephone:  (213) 236-0600
Facsimile:  (213) 236-2700
Email: NOyster@bwslaw.com
          MSozio@bwslaw.com
          CJones@bwslaw.com

# EXHIBIT O

Gregory J. Morrow, Esq. (SBN 153224)
**MORROW LAW GROUP INC**
1801 Century Park East
24th Floor
Los Angeles, CA 90067
O:  (310) 894-9149
M: (310) 721-3833
gregory.j.morrow@hotmail.com

Attorneys for Plaintiffs
Preston McCormick and
East Wind Ag

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTON MCCORMICK, an individual; and EAST WIND AG, a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF RIVERSIDE, a public entity; JEFFREY ANTHONY VAN WAGENEN, JR., an individual and in his official capacity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, a division of a public entity; SHERIFF CHAD BIANCO, an individual and in his official capacity; JOSE-TRUJILLO VILLASENOR, an individual and in his official capacity; IMPERIAL IRRIGATION DISTRICT, a public entity; JAMIE L. ASBURY, an individual and in her official capacity; and DOES 1 through 150, individually, jointly and severally, <br><br> Defendants. | **Case No. 5:23-cv-02569-SSS-SP** <br><br> **PLAINTIFF EAST WIND AG'S RESPONSE TO DEFENDANT COUNTY OF RIVERSIDE'S FIRST SET OF INTERROGATORIES** <br><br> **Judge Sunshine Suzanne Sykes** <br><br> **Magistrate Judge Sheri Pym** |

1

**PROPOUNDING PARTY:   DEFENDANT COUNTY OF RIVERSIDE**

**RESPONDING PARTY:   PLAINTIFF EAST WIND AG**

**SET NO.:               One**

**TO:   DEFENDANT COUNTY OF RIVERSIDE AND ATTORNEYS OF RECORD:**

Pursuant to *Federal Rules of Civil Procedure,* Rule 36, Plaintiff EAST WIND AG hereby responds to Defendant COUNTY OF RIVERSIDE'S First Set of Request for Interrogatories, as follows:

**PRELIMINARY STATEMENT**

1.      These responses are made solely for the purpose of this action. Each answer is subject to competence, relevance, materiality, propriety and admissibility, and any and all other grounds which would require the exclusion of any statement herein if the requests were asked of, or any statements contained herein were made by, a witness present and testifying in Court, all of which objections and grounds are reserved and may be interposed at the time of trial.

2.      Responding Party has not completed Responding Party's investigation of the facts relating to this case and has not completed Responding Party's preparation for trial. The following responses are based upon information presently available to Responding Party and are made without prejudice to Responding Party's right to utilize subsequently discovered facts.

3.      Except for explicit facts admitted herein, no incidental or implied admissions are intended hereby. The fact that Responding Party has answered any Request should not be taken as an admission that Responding Party accepts or admits the existence of any facts set forth or assumed by such requests, or that such response constitutes admissible evidence. The fact that Responding Party has answered part or all of any Request is not intended and shall not be construed to be a

2

waiver by Responding Party.

4.    This Preliminary Statement is incorporated into each of the responses set forth below.

## RESPONSE TO INTERROGATORIES

## INTERROGATORY NO. 1:

Please describe in detail the requirements, if any, and the processes for obtaining marijuana cultivation, manufacture, sales, possession, use, and transport licenses from the Torres Martinez Desert Cahuilla Tribe.

## RESPONSE TO INTERROGATORY NO. 1:

Responding Party responds that the requirements and processes for obtaining marijuana cultivation, manufacture, sales, possession, use, and transport licenses from the Torres Martinez Desert Cahuilla Tribe (the "Tribe") includes the submission of a "Registration Application" to the Tribe for the Tribe's detailed review and approval based, in part, on a criminal background check of the applicant as well as documents submitted in support of applicant such as a professional letter of reference.

The Tribe's review process is extensive and is conducted by the Tribe's executive committee consisting of elders of the Tribe including Thomas Tortez, former Tribal Chairman; Joseph Mireles, current Tribal Chairman; Elaine Penaloza, Tribal Executive Director, Torres Martinez Desert Cahuilla Indians, Desert Cahuilla Agricultural Commission ("DCAC") and  Millie Whitehead, Tribal Secretary and Administrator.

Once an application is approved, the Tribe issues a "Manufacturing License" to the applicant, entitling the applicant to commence marijuana cultivation and manufacture only.  The Tribe retains exclusive regulatory authority and control over the sale, possession, use, and transport of marijuana on the Tribe's sovereign Indian tribal land.

3

The Tribe also provides the applicant with a copy of: the Code of Laws of the Torres Martinez Desert Cahuilla Indians, the Tribe's Cannabis Control Commission's Regulations To License And Regulate Cannabis On The Torres Martinez Reservation promulgated by the Tribe to exclusively regulate and control the operations of all agricultural facilities conducted on the Tribe's sovereign Indian tribal land; the formation, purpose, and legal authority associated with the Torres Martinez Desert Cahuilla Indians Cannabis Control Commission; the Grant Deed issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM; the Business Land Sublease Agreement between the Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) for applicant's review and signature prior to the commencement of agricultural operations;  the submission, review, and approval of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Individual Employee License Application for every employee, agent, sub-lessee, share cropper, or other individual or entity the applicant utilizes to conduct agricultural operations on the Tribe's sovereign Indian tribal land; the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application, Submittal Checklist; and the purpose and scope of regulatory authority of the Tribe's DCAC.

Responding party has also already produced the following documents that are further responsive to this interrogatory:

Responding party has also already produced the following documents that are further responsive to this interrogatory:

County of Riverside "Claim For Damages To Person or Property" and supporting attachments and exhibits, intake date stamped June 1, 2023 (MCCORMICK 0000000001-0000000057).

4

The Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM (NOTE: THIS DOCUMENT CONTAINS EMBEDDED CODE RESTRICTING THE ABILITY TO APPLY BATES OR OTHER NUMBERING AND HAS THEREFORE ALREADY BEEN PRODUCED IN DISCOVERY WITHOUT SUCH BATES NUMBERING BY RESPONDING PARTIES IN THIS ACTION).

Character Reference Letter on behalf of Responding Party signed by Thomas Tortez, Tribal Chairman (MCCORMICK 0000000155).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application (MCCORMICK 0000000654-0000000664).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Manufacturing License (MCCORMICK 0000000156).

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Torres Martinez Desert Cahuilla Indians, Payment Receipts (MCCORMICK 0000000089-0000000095).

East Wind Ag, 10 Year Profit/Loss Projections (MCCORMICK 0000000206-0000000216).

Discovery is ongoing and Responding Party will continue to produce documents in response to this Request based on subsequently discovered facts on a rolling basis.

**INTERROGATORY NO. 2:**

Please describe and delineate in detail all Torres Martinez Desert Cahuilla tribal legal authorities, if any, that relate to marijuana, including but not limited to cultivation, use, sales, transportation, possession, licensing, distribution, and taxation.

**RESPONSE TO INTERROGATORY NO. 2:**

Responding Party responds that the tribal legal authorities that relate to marijuana, including but not limited to, cultivation, use, sales, transportation, possession, licensing, distribution, and taxation as related to Tribe include: the Code of Laws of the Torres Martinez Desert Cahuilla Indians; the Tribe's Cannabis Control Commission's Regulations To License And Regulate Cannabis On The Torres Martinez Reservation promulgated by the Tribe to exclusively regulate and control the operations of all agricultural facilities conducted on the Tribe's sovereign Indian tribal land; the formation, purpose, and legal authority associated with the Torres Martinez Desert Cahuilla Indians Cannabis Control Commission; the Grant Deed issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM; the Business Land Sublease Agreement between the Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant); the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Application for an applicant to commence agricultural operations on the Tribe's sovereign Indian tribal land; the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Individual Employee License Application for every employee, agent, sub-lessee, share cropper, or other individual or entity an applicant intends to utilize to conduct agricultural operations on the Tribe's sovereign Indian tribal land; the Torres Martinez Desert Cahuilla Indians, Cannabis

6

Control Commission, Registration Application, Submittal Checklist; and the written purpose and scope of regulatory authority of the Tribe's DCAC.

Responding party has also already produced the following documents that are further responsive to this interrogatory:

County of Riverside "Claim For Damages To Person or Property" and supporting attachments and exhibits, intake date stamped June 1, 2023 (MCCORMICK 0000000001-0000000057).

The Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM (NOTE: THIS DOCUMENT CONTAINS EMBEDDED CODE RESTRICTING THE ABILITY TO APPLY BATES OR OTHER NUMBERING AND HAS THEREFORE ALREADY BEEN PRODUCED IN DISCOVERY WITHOUT SUCH BATES NUMBERING BY RESPONDING PARTIES IN THIS ACTION).

Character Reference Letter on behalf of Responding Party signed by Thomas Tortez, Tribal Chairman (MCCORMICK 0000000155).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application (MCCORMICK 0000000654-0000000664).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Manufacturing License (MCCORMICK 0000000156).

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Discovery is ongoing and Responding Party will continue to produce documents in response to this Request based on subsequently discovered facts on a rolling basis.

**INTERROGATORY NO. 3:**

Please list and describe in detail every marijuana related license and permit YOU claim to have including but not limited to what the licenses permit you to do, dates issued, expiration dates, and issuing authority.

**RESPONSE TO INTERROGATORY NO. 3:**

Responding Party responds that the Tribe issued the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Manufacturing License that is a "conditional license" subject to the Tribe's promulgated regulations, that permits and authorizes the holder thereof, including Responding Party, to engage in the cultivation and manufacture of cannabis on the agreed upon land leased by and between Responding Party and the Tribe's DCAC for the duration of the licensing period, subject to annual renewal between the parties, with a date of issue and expiration from 9/19/2022 to 9/19/2023, pursuant to the Tribe's DCAC.

Such license is issued pursuant to: the Code of Laws of the Torres Martinez Desert Cahuilla Indians; the Tribe's Cannabis Control Commission's Regulations To License And Regulate Cannabis On The Torres Martinez Reservation promulgated by the Tribe to exclusively regulate and control the operations of all agricultural facilities conducted on the Tribe's sovereign Indian tribal land; the formation, purpose, and legal authority associated with the Torres Martinez Desert Cahuilla Indians Cannabis Control Commission; the Grant Deed issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM; the Business

8

Land Sublease Agreement between the Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant); the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Application for an applicant to commence agricultural operations on the Tribe's sovereign Indian tribal land; the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Individual Employee License Application for every employee, agent, sub-lessee, share cropper, or other individual or entity an applicant intends to utilize to conduct agricultural operations on the Tribe's sovereign Indian tribal land; the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application, Submittal Checklist; and the written purpose and scope of regulatory authority of the Tribe's DCAC.

Responding party has also already produced the following documents that are further responsive to this interrogatory:

County of Riverside "Claim For Damages To Person or Property" and supporting attachments and exhibits, intake date stamped June 1, 2023 (MCCORMICK 0000000001-0000000057).

The Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM (NOTE: THIS DOCUMENT CONTAINS EMBEDDED CODE RESTRICTING THE ABILITY TO APPLY BATES OR OTHER NUMBERING AND HAS THEREFORE ALREADY BEEN PRODUCED IN DISCOVERY WITHOUT SUCH BATES NUMBERING BY RESPONDING PARTIES IN THIS ACTION).

Character Reference Letter on behalf of Responding Party signed by Thomas Tortez, Tribal Chairman (MCCORMICK 0000000155).

9

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application (MCCORMICK 0000000654-0000000664).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Manufacturing License (MCCORMICK 0000000156).

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Discovery is ongoing and Responding Party will continue to produce documents in response to this Request based on subsequently discovered facts on a rolling basis.

**INTERROGATORY NO. 4:**

Please IDENTIFY ALL persons YOU know with information regarding YOUR application for and issuance of the marijuana license/s YOU claim to have, including but not limited to, cultivation, sale, transportation, manufacturing, use, and possession.

**RESPONSE TO INTERROGATORY NO. 4:**

Thomas Tortez; Joseph Mireles; Millie Whitehead; and Elaine Penaloza.

Responding party has also already produced the following documents that are further responsive to this interrogatory:

The Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM (NOTE: THIS DOCUMENT CONTAINS EMBEDDED CODE RESTRICTING THE ABILITY TO APPLY BATES OR OTHER NUMBERING AND HAS THEREFORE ALREADY BEEN

10

PRODUCED IN DISCOVERY WITHOUT SUCH BATES NUMBERING BY RESPONDING PARTIES IN THIS ACTION)

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application (MCCORMICK 0000000654-0000000664).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Manufacturing License (MCCORMICK 0000000156).

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Torres Martinez Desert Cahuilla Indians, Payment Receipts (MCCORMICK 0000000089-0000000095).

East Wind Ag, 10 Year Profit/Loss Projections (MCCORMICK 0000000206-0000000216).

Discovery is ongoing and Responding Party will continue to produce documents in response to this Request based on subsequently discovered facts on a rolling basis.

**INTERROGATORY NO. 5:**

If YOU intend to claim punitive damages, please identify all evidence and facts you intend to use to support your claim for punitive damages, including but not limited to the amount of YOUR claim and how that amount was calculated.

**RESPONSE TO INTERROGATORY NO. 5:**

Responding Party intends and has alleged a claim for punitive damages, and submits all evidence and facts to be used to support such claim includes as follows:

Propounding Party has engaged in a well-documented pattern, practice, and custom of repeated violations of the civil rights of the citizens of Riverside County,

11

California, committed by the Riverside County Sheriff's Department[1], including the civil rights of Plaintiffs in this action.

Indeed, Plaintiffs are just a few of the litany who have been deprived of their civil rights by the actions of the Riverside County Sheriff's Department.

On December 7, 2022, at approximately 4:45 A.M., the Riverside County Sheriff's Department executed a facially invalid Search Warrant[2] (the "Warrant") in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject Property").

Well over a year and a half prior to Propounding Party's unlawful execution of this legally void Warrant, the Subject Property had been specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

The Tribe is a relatively impoverished nation with little to any source of income, who look to their lawfully authorized agricultural facilities as a means to

---

[1] Attorney General Rob Bonta, Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office (February 23, 2023); https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[2] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires* and contrary to federal law governing jurisdiction in "*Indian country*." (emphasis added).

12

uplift their people from dire economic despair.

The lead officer during the execution of this Warrant, Defendant Jose Trujillo Villasenor ("Villasenor"), had sworn under oath in his supporting Affidavit as to purported "facts" including the patently false statement that the Subject Property was allegedly not "trusted land" (sic) and therefore not sovereign Indian tribal land subject to protection under federal law.  This Affidavit also ironically sets forth that, on October 27, 2022, Plaintiff Preston McCormick ("McCormick") hand-delivered to the Riverside County Sheriff's Thermal Station a copy of Plaintiffs' official "Manufacturing License" issued by the Tribe.

However, Villasenor disregarded such License as well as other fact and evidence by failing to conduct an adequate investigation prior to the raid.  Villasenor also disregarded the Riverside County Sheriff's Department Standard Operating Procedures by not verifying any information with the Department's Tribal Liaison Unit as to whether the Subject Property was indeed located on the Tribe's sovereign Indian tribal land prior to swearing out the Affidavit or conducting the raid.

During his deposition, Villasenor also repeatedly testified that Propounding Party considered the Tribe to be a "*criminal enterprise*" and "*criminal organization*" simply for permitting the cultivation and "*manufacturing of cannabis*" on sovereign Indian tribal land pursuant to the Tribe's own promulgated regulations, demonstrating reprehensible conduct on the part of the Propounding Party, in reckless disregard for the vulnerability of Responding Party, as a disabled veteran that was known by the Propounding Party in advance of the raid, as well as the civil rights of Responding Party and the sovereign rights of the Tribe.

At the commencement of this raid, members of the Tribe, including Tribal Vice Chairman Joseph Mirelez ("Mirelez") as well as Ms. Elaine Penalosa ("Penalosa"), Executive Director of the Tribe's Desert Cahuilla Agricultural Commission ("DCAC") overseeing all agricultural facilities on the Tribe's land, arrived at the Subject Property to present Villasenor with copies of the Tribe's

13

official BIA Grant Deed, the Tribe's Cannabis Control Commission Regulations, and the Manufacturing License issued to Plaintiffs by the Tribe, and to plead with Villasenor to immediately cease this raid. Villasenor dismissed such documents off-hand and rejected the Tribe's fervent requests to stop.

The Riverside County Sheriff's Department proceeded to lay waste to the entire agricultural facility at issue in this case, destroying over 270 greenhouses and irrigation systems, seizing countless thousands of documents, ripping out and destroying computer and surveillance systems, and arresting and detaining many individuals, including Plaintiff Preston McCormick, who was handcuffed behind his back face down in the dirt in front of his wife, held in custody, and periodically interrogated for up to eight (8) hours in excruciating pain.

Responding Party further responds that the claim for punitive damages is approximately $18,000,000 and is calculated at three (3) times the actual damages in this case, currently calculated at approximately $6,000,000.

Discovery is ongoing and Responding Party will continue to produce documents in response to this Request based on subsequently discovered facts on a rolling basis.

**INTERROGATORY NO. 6:**

If YOU intend to claim loss of earning capacity or loss of earnings, please identify all evidence and facts you intend to use to support those claims including but not limited to the amount of YOUR claim and how that amount was calculated.

**RESPONSE TO INTERROGATORY NO. 6:**

Responding Party intends and has alleged a claim for loss of earning capacity or loss of earnings, and submits all evidence and facts to be used to support such claim includes as follows:

Responding Party submitted a "Registration Application" to the Tribe for the Tribe's detailed review and approval based, in part, on a criminal background check

14

of the applicant as well as documents submitted in support of applicant such as a professional letter of reference.

The Tribe's review process is extensive and is conducted by the Tribe's executive committee consisting of elders of the Tribe including Thomas Tortez, former Tribal Chairman; Joseph Mireles, current Tribal Chairman; Elaine Penaloza, Tribal Executive Director, Torres Martinez Desert Cahuilla Indians, Desert Cahuilla Agricultural Commission ("DCAC") and  Millie Whitehead, Tribal Secretary and Administrator.

Once approved, the Tribe issued a "Manufacturing License" to Responding Party to commence marijuana cultivation and manufacture only.  The Tribe retained exclusive regulatory authority and control over the sale, possession, use, and transport of marijuana on the Tribe's sovereign Indian tribal land.

The Tribe also provided Responding Party with the Code of Laws of the Torres Martinez Desert Cahuilla Indians, the Tribe's Cannabis Control Commission's Regulations To License And Regulate Cannabis On The Torres Martinez Reservation promulgated by the Tribe to exclusively regulate and control the operations of all agricultural facilities conducted on the Tribe's sovereign Indian tribal land; the formation, purpose, and legal authority associated with the Torres Martinez Desert Cahuilla Indians Cannabis Control Commission; the Grant Deed issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM; the Business Land Sublease Agreement between the Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) for applicant's review and signature prior to the commencement of agricultural operations;  the submission, review, and approval of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Individual Employee License Application for every

15

employee, agent, sub-lessee, share cropper, or other individual or entity the applicant utilizes to conduct agricultural operations on the Tribe's sovereign Indian tribal land; the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application, Submittal Checklist; and the purpose and scope of regulatory authority of the Tribe's DCAC.

Responding party has also already produced the following documents that are further responsive to this interrogatory:

Responding party has also already produced the following documents that are further responsive to this interrogatory:

County of Riverside "Claim For Damages To Person or Property" and supporting attachments and exhibits, intake date stamped June 1, 2023 (MCCORMICK 0000000001-0000000057).

The Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM (NOTE: THIS DOCUMENT CONTAINS EMBEDDED CODE RESTRICTING THE ABILITY TO APPLY BATES OR OTHER NUMBERING AND HAS THEREFORE ALREADY BEEN PRODUCED IN DISCOVERY WITHOUT SUCH BATES NUMBERING BY RESPONDING PARTIES IN THIS ACTION).

Character Reference Letter on behalf of Responding Party signed by Thomas Tortez, Tribal Chairman (MCCORMICK 0000000155).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application (MCCORMICK 0000000654-0000000664).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Manufacturing License (MCCORMICK 0000000156).

16

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Torres Martinez Desert Cahuilla Indians, Payment Receipts (MCCORMICK 0000000089-0000000095).

East Wind Ag, 10 Year Profit/Loss Projections (MCCORMICK 0000000206-0000000216).

Discovery is ongoing and Responding Party will continue to produce documents in response to this Request based on subsequently discovered facts on a rolling basis.

**INTERROGATORY NO. 7:**

If YOU intend to claim economic damages, please identify all evidence and facts you intend to use to support those claims including but not limited to the amount of YOUR claim and how that amount was calculated.

**RESPONSE TO INTERROGATORY NO. 7:**

Responding Party intends and has alleged a claim for economic damages, and submits all evidence and facts to be used to support such claim includes as follows:

Responding Party submitted a "Registration Application" to the Tribe for the Tribe's detailed review and approval based, in part, on a criminal background check of the applicant as well as documents submitted in support of applicant such as a professional letter of reference.

The Tribe's review process is extensive and is conducted by the Tribe's executive committee consisting of elders of the Tribe including Thomas Tortez, former Tribal Chairman; Joseph Mireles, current Tribal Chairman; Elaine Penaloza, Tribal Executive Director, Torres Martinez Desert Cahuilla Indians, Desert Cahuilla Agricultural Commission ("DCAC") and  Millie Whitehead, Tribal Secretary and Administrator.

17

Once approved, the Tribe issued a "Manufacturing License" to Responding Party to commence marijuana cultivation and manufacture only. The Tribe retained exclusive regulatory authority and control over the sale, possession, use, and transport of marijuana on the Tribe's sovereign Indian tribal land.

The Tribe also provided Responding Party with the Code of Laws of the Torres Martinez Desert Cahuilla Indians, the Tribe's Cannabis Control Commission's Regulations To License And Regulate Cannabis On The Torres Martinez Reservation promulgated by the Tribe to exclusively regulate and control the operations of all agricultural facilities conducted on the Tribe's sovereign Indian tribal land; the formation, purpose, and legal authority associated with the Torres Martinez Desert Cahuilla Indians Cannabis Control Commission; the Grant Deed issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM; the Business Land Sublease Agreement between the Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) for applicant's review and signature prior to the commencement of agricultural operations; the submission, review, and approval of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Individual Employee License Application for every employee, agent, sub-lessee, share cropper, or other individual or entity the applicant utilizes to conduct agricultural operations on the Tribe's sovereign Indian tribal land; the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application, Submittal Checklist; and the purpose and scope of regulatory authority of the Tribe's DCAC.

Responding party has also already produced the following documents that are further responsive to this interrogatory:

Responding party has also already produced the following documents that are

18

further responsive to this interrogatory:

County of Riverside "Claim For Damages To Person or Property" and supporting attachments and exhibits, intake date stamped June 1, 2023 (MCCORMICK 0000000001-0000000057).

The Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM (NOTE: THIS DOCUMENT CONTAINS EMBEDDED CODE RESTRICTING THE ABILITY TO APPLY BATES OR OTHER NUMBERING AND HAS THEREFORE ALREADY BEEN PRODUCED IN DISCOVERY WITHOUT SUCH BATES NUMBERING BY RESPONDING PARTIES IN THIS ACTION).

Character Reference Letter on behalf of Responding Party signed by Thomas Tortez, Tribal Chairman (MCCORMICK 0000000155).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application (MCCORMICK 0000000654-0000000664).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Manufacturing License (MCCORMICK 0000000156).

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Torres Martinez Desert Cahuilla Indians, Payment Receipts (MCCORMICK 0000000089-0000000095).

East Wind Ag, 10 Year Profit/Loss Projections (MCCORMICK 0000000206-0000000216).

19

Discovery is ongoing and Responding Party will continue to produce documents in response to this Request based on subsequently discovered facts on a rolling basis.

**INTERROGATORY NO. 8:**

Please IDENTIFY ALL Desert Cahuilla tribal personnel with whom YOU had ANY communication with regarding marijuana cultivation, sale, manufacture, transport, or use on the SUBJECT PROPERTY located at 91521 Ave 68, Mecca, California along with the subject/s of your conversation/s.

**RESPONSE TO INTERROGATORY NO. 8:**

Thomas Tortez, Tribal Chairman, Torres Martinez Desert Cahuilla Indians.

Subjects of communications/conversations Responding Party had with this tribal personnel included: (1) the formation, purpose, and legal authority associated with the Torres Martinez Desert Cahuilla Indians Cannabis Control Commission; (2) the Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM; (3) providing a personal character reference for Responding Party; (4) the promulgation of The Code of Laws of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Regulations To License And Regulate Cannabis On The Torres Martinez Reservation; (5) the submission and review of Responding Party's application to the Torres Martinez Cannabis Control Commission for a Manufacturing License and the issuance of such License; (6) the Business Land Sublease Agreement between the Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant);  (7) the submission, review, and approval of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Individual Employee License Application; (8) the Torres Martinez

20

Desert Cahuilla Indians, Cannabis Control Commission, Registration Application, Submittal Checklist; and (9) the purpose and scope of regulatory authority of Torres Martinez Desert Cahuilla Indians, Desert Cahuilla Agricultural Commission ("DACA").

Millie Whitehead – Tribal Secretary (Ret.), Torres Martinez Desert Cahuilla Indians. Subjects of communications/conversations Responding Party had with this tribal personnel included: (1) the formation, purpose, and legal authority associated with the Torres Martinez Desert Cahuilla Indians Cannabis Control Commission; (2) the Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM; (3) providing a personal character reference for Responding Party; (4) the promulgation of The Code of Laws of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Regulations To License And Regulate Cannabis On The Torres Martinez Reservation; (5) the submission and review of Responding Party's application to the Torres Martinez Cannabis Control Commission for a Manufacturing License and the issuance of such License; (6) the Business Land Sublease Agreement between the Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant);  (7) the submission, review, and approval of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Individual Employee License Application; (8) the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application, Submittal Checklist; and (9) the purpose and scope of regulatory authority of the Torres Martinez Desert Cahuilla Indians, Desert Cahuilla Agricultural Commission ("DACA").

Elaine Penaloza – Tribal Executive Director, Torres Martinez Desert Cahuilla Indians, Desert Cahuilla Agricultural Commission ("DACA").  Subjects of communications/conversations Responding Party had with this tribal personnel included: (1) the formation, purpose, and legal authority associated with the Torres Martinez Desert Cahuilla Indians Cannabis Control Commission; (2) the Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM; (3) providing a personal character reference for Responding Party; (4) the promulgation of The Code of Laws of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Regulations To License And Regulate Cannabis On The Torres Martinez Reservation; (5) the submission and review of Responding Party's application to the Torres Martinez Cannabis Control Commission for a Manufacturing License and the issuance of such License; (6) the Business Land Sublease Agreement between the Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant);  (7) the submission, review, and approval of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Individual Employee License Application; (8) the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application, Submittal Checklist; and (9) the purpose and scope of regulatory authority of the Torres Martinez Desert Cahuilla Indians, Desert Cahuilla Agricultural Commission ("DCAC").

Responding party has also already produced the following documents that are further responsive to this interrogatory:

The Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the

22

Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM (NOTE: THIS DOCUMENT CONTAINS EMBEDDED CODE RESTRICTING THE ABILITY TO APPLY BATES OR OTHER NUMBERING AND HAS THEREFORE ALREADY BEEN PRODUCED IN DISCOVERY WITHOUT SUCH BATES NUMBERING BY RESPONDING PARTIES IN THIS ACTION)

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application (MCCORMICK 0000000654-0000000664).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Manufacturing License (MCCORMICK 0000000156).

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Torres Martinez Desert Cahuilla Indians, Payment Receipts (MCCORMICK 0000000089-0000000095).

East Wind Ag, 10 Year Profit/Loss Projections (MCCORMICK 0000000206-0000000216).

Discovery is ongoing and Responding Party will continue to produce documents in response to this Request based on subsequently discovered facts on a rolling basis.

**INTERROGATORY NO. 9:**

Please IDENTIFY ALL Desert Cahuilla tribal personnel with whom you entered into a verbal or written agreement with regarding marijuana cultivation, sale, manufacture, transport, or use on the SUBJECT PROPERTY located at 91521 Ave 68, Mecca, California.

**RESPONSE TO INTERROGATORY NO. 9:**

23

Thomas Tortez, Tribal Chairman, Torres Martinez Desert Cahuilla Indians.

Subjects of communications/conversations Responding Party had with this tribal personnel included: (1) the formation, purpose, and legal authority associated with the Torres Martinez Desert Cahuilla Indians Cannabis Control Commission; (2) the Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM; (3) providing a personal character reference for Responding Party; (4) the promulgation of The Code of Laws of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Regulations To License And Regulate Cannabis On The Torres Martinez Reservation; (5) the submission and review of Responding Party's application to the Torres Martinez Cannabis Control Commission for a Manufacturing License and the issuance of such License; (6) the Business Land Sublease Agreement between the Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant);  (7) the submission, review, and approval of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Individual Employee License Application; (8) the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application, Submittal Checklist; and (9) the purpose and scope of regulatory authority of Torres Martinez Desert Cahuilla Indians, Desert Cahuilla Agricultural Commission ("DACA").

Millie Whitehead – Tribal Secretary (Ret.), Torres Martinez Desert Cahuilla Indians. Subjects of communications/conversations Responding Party had with this tribal personnel included: (1) the formation, purpose, and legal authority associated with the Torres Martinez Desert Cahuilla Indians Cannabis Control Commission; (2)

the Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM; (3) providing a personal character reference for Responding Party; (4) the promulgation of The Code of Laws of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Regulations To License And Regulate Cannabis On The Torres Martinez Reservation; (5) the submission and review of Responding Party's application to the Torres Martinez Cannabis Control Commission for a Manufacturing License and the issuance of such License; (6) the Business Land Sublease Agreement between the Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant);  (7) the submission, review, and approval of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Individual Employee License Application; (8) the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application, Submittal Checklist; and (9) the purpose and scope of regulatory authority of the Torres Martinez Desert Cahuilla Indians, Desert Cahuilla Agricultural Commission ("DACA").

Elaine Penaloza – Tribal Executive Director, Torres Martinez Desert Cahuilla Indians, Desert Cahuilla Agricultural Commission ("DACA").  Subjects of communications/conversations Responding Party had with this tribal personnel included: (1) the formation, purpose, and legal authority associated with the Torres Martinez Desert Cahuilla Indians Cannabis Control Commission; (2) the Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218,

25

Date: 2021 Feb 19 11:31 AM; (3) providing a personal character reference for Responding Party; (4) the promulgation of The Code of Laws of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission Regulations To License And Regulate Cannabis On The Torres Martinez Reservation; (5) the submission and review of Responding Party's application to the Torres Martinez Cannabis Control Commission for a Manufacturing License and the issuance of such License; (6) the Business Land Sublease Agreement between the Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant);  (7) the submission, review, and approval of the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Individual Employee License Application; (8) the Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application, Submittal Checklist; and (9) the purpose and scope of regulatory authority of the Torres Martinez Desert Cahuilla Indians, Desert Cahuilla Agricultural Commission ("DCAC").

Responding party has also already produced the following documents that are further responsive to this interrogatory:

The Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM (NOTE: THIS DOCUMENT CONTAINS EMBEDDED CODE RESTRICTING THE ABILITY TO APPLY BATES OR OTHER NUMBERING AND HAS THEREFORE ALREADY BEEN PRODUCED IN DISCOVERY WITHOUT SUCH BATES NUMBERING BY RESPONDING PARTIES IN THIS ACTION)

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application (MCCORMICK 0000000654-0000000664).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Manufacturing License (MCCORMICK 0000000156).

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Torres Martinez Desert Cahuilla Indians, Payment Receipts (MCCORMICK 0000000089-0000000095).

East Wind Ag, 10 Year Profit/Loss Projections (MCCORMICK 0000000206-0000000216).

Discovery is ongoing and Responding Party will continue to produce documents in response to this Request based on subsequently discovered facts on a rolling basis.

**INTERROGATORY NO. 10:**

Please describe with particularity all actions by Defendants that violated your constitutional rights, if any.

**RESPONSE TO INTERROGATORY NO. 10:**

Propounding Party has engaged in a well-documented pattern, practice, and custom of repeated violations of the civil rights of the citizens of Riverside County, California, committed by the Riverside County Sheriff's Department[3], including the civil rights of Plaintiffs in this action.

Indeed, Plaintiffs are just a few of the litany who have been deprived of their civil rights by the actions of the Riverside County Sheriff's Department.

On December 7, 2022, at approximately 4:45 A.M., the Riverside County

---

[3] Attorney General Rob Bonta, Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office (February 23, 2023); https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

27

Sheriff's Department executed a facially invalid Search Warrant[4] (the "Warrant") in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject Property").

Well over a year and a half prior to Propounding Party's unlawful execution of this legally void Warrant, the Subject Property had been specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

The Tribe is a relatively impoverished nation with little to any source of income, who look to their lawfully authorized agricultural facilities as a means to uplift their people from dire economic despair.

The lead officer during the execution of this Warrant, Defendant Jose Trujillo Villasenor ("Villasenor"), had sworn under oath in his supporting Affidavit as to purported "facts" including the patently false statement that the Subject Property was allegedly not "trusted land" (sic) and therefore not sovereign Indian tribal land subject to protection under federal law.  This Affidavit also ironically sets forth that, on October 27, 2022, Plaintiff Preston McCormick ("McCormick") hand-delivered to the Riverside County Sheriff's Thermal Station a copy of Plaintiffs' official

---

[4] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires* and contrary to federal law governing jurisdiction in "*Indian country*." (emphasis added).

"Manufacturing License" issued by the Tribe.

However, Villasenor disregarded such License as well as other fact and evidence by failing to conduct an adequate investigation prior to the raid. Villasenor also disregarded the Riverside County Sheriff's Department Standard Operating Procedures by not verifying any information with the Department's Tribal Liaison Unit as to whether the Subject Property was indeed located on the Tribe's sovereign Indian tribal land prior to swearing out the Affidavit or conducting the raid.

During his deposition, Villasenor also repeatedly testified that Propounding Party considered the Tribe to be a "*criminal enterprise*" and "*criminal organization*" simply for permitting the cultivation and "*manufacturing of cannabis*" on sovereign Indian tribal land pursuant to the Tribe's own promulgated regulations, demonstrating reprehensible conduct on the part of the Propounding Party, in reckless disregard for the vulnerability of Responding Party, as a disabled veteran that was known by the Propounding Party in advance of the raid, as well as the civil rights of Responding Party and the sovereign rights of the Tribe.

At the commencement of this raid, members of the Tribe, including Tribal Vice Chairman Joseph Mirelez ("Mirelez") as well as Ms. Elaine Penalosa ("Penalosa"), Executive Director of the Tribe's Desert Cahuilla Agricultural Commission ("DCAC") overseeing all agricultural facilities on the Tribe's land, arrived at the Subject Property to present Villasenor with copies of the Tribe's official BIA Grant Deed, the Tribe's Cannabis Control Commission Regulations, and the Manufacturing License issued to Plaintiffs by the Tribe, and to plead with Villasenor to immediately cease this raid. Villasenor dismissed such documents off-hand and rejected the Tribe's fervent requests to stop.

The Riverside County Sheriff's Department proceeded to lay waste to the entire agricultural facility at issue in this case, destroying over 270 greenhouses and irrigation systems, seizing countless thousands of documents, ripping out and destroying computer and surveillance systems, and arresting and detaining many

29

individuals, including Plaintiff Preston McCormick, who was handcuffed behind his back face down in the dirt in front of his wife, held in custody, and periodically interrogated for up to eight (8) hours in excruciating pain.

**INTERROGATORY NO. 11:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR 42 U.S.C. 1983 claims.

**RESPONSE TO INTERROGATORY NO. 11:**

Propounding Party has engaged in a well-documented pattern, practice, and custom of repeated violations of the civil rights of the citizens of Riverside County, California, committed by the Riverside County Sheriff's Department[5], including the civil rights of Plaintiffs in this action.

Indeed, Plaintiffs are just a few of the litany who have been deprived of their civil rights by the actions of the Riverside County Sheriff's Department.

On December 7, 2022, at approximately 4:45 A.M., the Riverside County Sheriff's Department executed a facially invalid Search Warrant[6] (the "Warrant") in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject

---

[5] Attorney General Rob Bonta, Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office (February 23, 2023); https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[6] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires* and contrary to federal law governing jurisdiction in "*Indian country*." (emphasis added).

Property").

Well over a year and a half prior to Propounding Party's unlawful execution of this legally void Warrant, the Subject Property had been specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

The Tribe is a relatively impoverished nation with little to any source of income, who look to their lawfully authorized agricultural facilities as a means to uplift their people from dire economic despair.

The lead officer during the execution of this Warrant, Defendant Jose Trujillo Villasenor ("Villasenor"), had sworn under oath in his supporting Affidavit as to purported "facts" including the patently false statement that the Subject Property was allegedly not "trusted land" (sic) and therefore not sovereign Indian tribal land subject to protection under federal law.  This Affidavit also ironically sets forth that, on October 27, 2022, Plaintiff Preston McCormick ("McCormick") hand-delivered to the Riverside County Sheriff's Thermal Station a copy of Plaintiffs' official "Manufacturing License" issued by the Tribe.

However, Villasenor disregarded such License as well as other fact and evidence by failing to conduct an adequate investigation prior to the raid.  Villasenor also disregarded the Riverside County Sheriff's Department Standard Operating Procedures by not verifying any information with the Department's Tribal Liaison Unit as to whether the Subject Property was indeed located on the Tribe's sovereign Indian tribal land prior to swearing out the Affidavit or conducting the raid.

During his deposition, Villasenor also repeatedly testified that Propounding Party considered the Tribe to be a "*criminal enterprise*" and "*criminal organization*" simply for permitting the cultivation and "*manufacturing of cannabis*" on sovereign Indian tribal land pursuant to the Tribe's own promulgated regulations,

31

demonstrating reprehensible conduct on the part of the Propounding Party, in reckless disregard for the vulnerability of Responding Party, as a disabled veteran that was known by the Propounding Party in advance of the raid, as well as the civil rights of Responding Party and the sovereign rights of the Tribe.

At the commencement of this raid, members of the Tribe, including Tribal Vice Chairman Joseph Mirelez ("Mirelez") as well as Ms. Elaine Penalosa ("Penalosa"), Executive Director of the Tribe's Desert Cahuilla Agricultural Commission ("DCAC") overseeing all agricultural facilities on the Tribe's land, arrived at the Subject Property to present Villasenor with copies of the Tribe's official BIA Grant Deed, the Tribe's Cannabis Control Commission Regulations, and the Manufacturing License issued to Plaintiffs by the Tribe, and to plead with Villasenor to immediately cease this raid. Villasenor dismissed such documents off-hand and rejected the Tribe's fervent requests to stop.

The Riverside County Sheriff's Department proceeded to lay waste to the entire agricultural facility at issue in this case, destroying over 270 greenhouses and irrigation systems, seizing countless thousands of documents, ripping out and destroying computer and surveillance systems, and arresting and detaining many individuals, including Plaintiff Preston McCormick, who was handcuffed behind his back face down in the dirt in front of his wife, held in custody, and periodically interrogated for up to eight (8) hours in excruciating pain.

**INTERROGATORY NO. 12:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR 42 U.S.C. 1983 claim(s) of unreasonable search.

**RESPONSE TO INTERROGATORY NO. 12:**

Propounding Party has engaged in a well-documented pattern, practice, and custom of repeated violations of the civil rights of the citizens of Riverside County,

32

California, committed by the Riverside County Sheriff's Department[7], including the civil rights of Plaintiffs in this action.

Indeed, Plaintiffs are just a few of the litany who have been deprived of their civil rights by the actions of the Riverside County Sheriff's Department.

On December 7, 2022, at approximately 4:45 A.M., the Riverside County Sheriff's Department executed a facially invalid Search Warrant[8] (the "Warrant") in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject Property").

Well over a year and a half prior to Propounding Party's unlawful execution of this legally void Warrant, the Subject Property had been specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

The Tribe is a relatively impoverished nation with little to any source of income, who look to their lawfully authorized agricultural facilities as a means to

---

[7] Attorney General Rob Bonta, Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office (February 23, 2023); https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[8] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires* and contrary to federal law governing jurisdiction in "*Indian country*." (emphasis added).

33

uplift their people from dire economic despair.

The lead officer during the execution of this Warrant, Defendant Jose Trujillo Villasenor ("Villasenor"), had sworn under oath in his supporting Affidavit as to purported "facts" including the patently false statement that the Subject Property was allegedly not "trusted land" (sic) and therefore not sovereign Indian tribal land subject to protection under federal law. This Affidavit also ironically sets forth that, on October 27, 2022, Plaintiff Preston McCormick ("McCormick") hand-delivered to the Riverside County Sheriff's Thermal Station a copy of Plaintiffs' official "Manufacturing License" issued by the Tribe.

However, Villasenor disregarded such License as well as other fact and evidence by failing to conduct an adequate investigation prior to the raid. Villasenor also disregarded the Riverside County Sheriff's Department Standard Operating Procedures by not verifying any information with the Department's Tribal Liaison Unit as to whether the Subject Property was indeed located on the Tribe's sovereign Indian tribal land prior to swearing out the Affidavit or conducting the raid.

During his deposition, Villasenor also repeatedly testified that Propounding Party considered the Tribe to be a "*criminal enterprise*" and "*criminal organization*" simply for permitting the cultivation and "*manufacturing of cannabis*" on sovereign Indian tribal land pursuant to the Tribe's own promulgated regulations, demonstrating reprehensible conduct on the part of the Propounding Party, in reckless disregard for the vulnerability of Responding Party, as a disabled veteran that was known by the Propounding Party in advance of the raid, as well as the civil rights of Responding Party and the sovereign rights of the Tribe.

At the commencement of this raid, members of the Tribe, including Tribal Vice Chairman Joseph Mirelez ("Mirelez") as well as Ms. Elaine Penalosa ("Penalosa"), Executive Director of the Tribe's Desert Cahuilla Agricultural Commission ("DCAC") overseeing all agricultural facilities on the Tribe's land, arrived at the Subject Property to present Villasenor with copies of the Tribe's

34

official BIA Grant Deed, the Tribe's Cannabis Control Commission Regulations, and the Manufacturing License issued to Plaintiffs by the Tribe, and to plead with Villasenor to immediately cease this raid. Villasenor dismissed such documents off-hand and rejected the Tribe's fervent requests to stop.

The Riverside County Sheriff's Department proceeded to lay waste to the entire agricultural facility at issue in this case, destroying over 270 greenhouses and irrigation systems, seizing countless thousands of documents, ripping out and destroying computer and surveillance systems, and arresting and detaining many individuals, including Plaintiff Preston McCormick, who was handcuffed behind his back face down in the dirt in front of his wife, held in custody, and periodically interrogated for up to eight (8) hours in excruciating pain.

**INTERROGATORY NO. 13:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR 42 U.S.C. 1983 claim(s) of unreasonable seizure.

**RESPONSE TO INTERROGATORY NO. 13:**

Propounding Party has engaged in a well-documented pattern, practice, and custom of repeated violations of the civil rights of the citizens of Riverside County, California, committed by the Riverside County Sheriff's Department[9], including the civil rights of Plaintiffs in this action.

Indeed, Plaintiffs are just a few of the litany who have been deprived of their civil rights by the actions of the Riverside County Sheriff's Department.

On December 7, 2022, at approximately 4:45 A.M., the Riverside County Sheriff's Department executed a facially invalid Search Warrant[10] (the "Warrant")

---

[9] Attorney General Rob Bonta, <u>Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office</u> (February 23, 2023); https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[10] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search

35

in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject Property").

Well over a year and a half prior to Propounding Party's unlawful execution of this legally void Warrant, the Subject Property had been specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

The Tribe is a relatively impoverished nation with little to any source of income, who look to their lawfully authorized agricultural facilities as a means to uplift their people from dire economic despair.

The lead officer during the execution of this Warrant, Defendant Jose Trujillo Villasenor ("Villasenor"), had sworn under oath in his supporting Affidavit as to purported "facts" including the patently false statement that the Subject Property was allegedly not "trusted land" (sic) and therefore not sovereign Indian tribal land subject to protection under federal law.  This Affidavit also ironically sets forth that, on October 27, 2022, Plaintiff Preston McCormick ("McCormick") hand-delivered to the Riverside County Sheriff's Thermal Station a copy of Plaintiffs' official "Manufacturing License" issued by the Tribe.

However, Villasenor disregarded such License as well as other fact and

---

Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires* and contrary to federal law governing jurisdiction in "*Indian country.*" (emphasis added).

evidence by failing to conduct an adequate investigation prior to the raid. Villasenor also disregarded the Riverside County Sheriff's Department Standard Operating Procedures by not verifying any information with the Department's Tribal Liaison Unit as to whether the Subject Property was indeed located on the Tribe's sovereign Indian tribal land prior to swearing out the Affidavit or conducting the raid.

During his deposition, Villasenor also repeatedly testified that Propounding Party considered the Tribe to be a "*criminal enterprise*" and "*criminal organization*" simply for permitting the cultivation and "*manufacturing of cannabis*" on sovereign Indian tribal land pursuant to the Tribe's own promulgated regulations, demonstrating reprehensible conduct on the part of the Propounding Party, in reckless disregard for the vulnerability of Responding Party, as a disabled veteran that was known by the Propounding Party in advance of the raid, as well as the civil rights of Responding Party and the sovereign rights of the Tribe.

At the commencement of this raid, members of the Tribe, including Tribal Vice Chairman Joseph Mirelez ("Mirelez") as well as Ms. Elaine Penalosa ("Penalosa"), Executive Director of the Tribe's Desert Cahuilla Agricultural Commission ("DCAC") overseeing all agricultural facilities on the Tribe's land, arrived at the Subject Property to present Villasenor with copies of the Tribe's official BIA Grant Deed, the Tribe's Cannabis Control Commission Regulations, and the Manufacturing License issued to Plaintiffs by the Tribe, and to plead with Villasenor to immediately cease this raid. Villasenor dismissed such documents off-hand and rejected the Tribe's fervent requests to stop.

The Riverside County Sheriff's Department proceeded to lay waste to the entire agricultural facility at issue in this case, destroying over 270 greenhouses and irrigation systems, seizing countless thousands of documents, ripping out and destroying computer and surveillance systems, and arresting and detaining many individuals, including Plaintiff Preston McCormick, who was handcuffed behind his back face down in the dirt in front of his wife, held in custody, and periodically

37

interrogated for up to eight (8) hours in excruciating pain.

**INTERROGATORY NO. 14:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR Monell claim(s).

**RESPONSE TO INTERROGATORY NO. 14:**

Propounding Party has engaged in a well-documented pattern, practice, and custom of repeated violations of the civil rights of the citizens of Riverside County, California, committed by the Riverside County Sheriff's Department[11], including the civil rights of Plaintiffs in this action.

Indeed, Plaintiffs are just a few of the litany who have been deprived of their civil rights by the actions of the Riverside County Sheriff's Department.

On December 7, 2022, at approximately 4:45 A.M., the Riverside County Sheriff's Department executed a facially invalid Search Warrant[12] (the "Warrant") in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject Property").

Well over a year and a half prior to Propounding Party's unlawful execution

---

[11] Attorney General Rob Bonta, Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office (February 23, 2023); https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[12] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires* and contrary to federal law governing jurisdiction in "*Indian country*." (emphasis added).

38

of this legally void Warrant, the Subject Property had been specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

The Tribe is a relatively impoverished nation with little to any source of income, who look to their lawfully authorized agricultural facilities as a means to uplift their people from dire economic despair.

The lead officer during the execution of this Warrant, Defendant Jose Trujillo Villasenor ("Villasenor"), had sworn under oath in his supporting Affidavit as to purported "facts" including the patently false statement that the Subject Property was allegedly not "trusted land" (sic) and therefore not sovereign Indian tribal land subject to protection under federal law.  This Affidavit also ironically sets forth that, on October 27, 2022, Plaintiff Preston McCormick ("McCormick") hand-delivered to the Riverside County Sheriff's Thermal Station a copy of Plaintiffs' official "Manufacturing License" issued by the Tribe.

However, Villasenor disregarded such License as well as other fact and evidence by failing to conduct an adequate investigation prior to the raid.  Villasenor also disregarded the Riverside County Sheriff's Department Standard Operating Procedures by not verifying any information with the Department's Tribal Liaison Unit as to whether the Subject Property was indeed located on the Tribe's sovereign Indian tribal land prior to swearing out the Affidavit or conducting the raid.

During his deposition, Villasenor also repeatedly testified that Propounding Party considered the Tribe to be a "*criminal enterprise*" and "*criminal organization*" simply for permitting the cultivation and "*manufacturing of cannabis*" on sovereign Indian tribal land pursuant to the Tribe's own promulgated regulations, demonstrating reprehensible conduct on the part of the Propounding Party, in reckless disregard for the vulnerability of Responding Party, as a disabled veteran

that was known by the Propounding Party in advance of the raid, as well as the civil rights of Responding Party and the sovereign rights of the Tribe.

At the commencement of this raid, members of the Tribe, including Tribal Vice Chairman Joseph Mirelez ("Mirelez") as well as Ms. Elaine Penalosa ("Penalosa"), Executive Director of the Tribe's Desert Cahuilla Agricultural Commission ("DCAC") overseeing all agricultural facilities on the Tribe's land, arrived at the Subject Property to present Villasenor with copies of the Tribe's official BIA Grant Deed, the Tribe's Cannabis Control Commission Regulations, and the Manufacturing License issued to Plaintiffs by the Tribe, and to plead with Villasenor to immediately cease this raid. Villasenor dismissed such documents off-hand and rejected the Tribe's fervent requests to stop.

The Riverside County Sheriff's Department proceeded to lay waste to the entire agricultural facility at issue in this case, destroying over 270 greenhouses and irrigation systems, seizing countless thousands of documents, ripping out and destroying computer and surveillance systems, and arresting and detaining many individuals, including Plaintiff Preston McCormick, who was handcuffed behind his back face down in the dirt in front of his wife, held in custody, and periodically interrogated for up to eight (8) hours in excruciating pain.

**INTERROGATORY NO. 15:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR supervisory liability claims.

**RESPONSE TO INTERROGATORY NO. 15:**

Propounding Party has engaged in a well-documented pattern, practice, and custom of repeated violations of the civil rights of the citizens of Riverside County, California, committed by the Riverside County Sheriff's Department[13], including

---

[13] Attorney General Rob Bonta, <u>Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office</u> (February 23, 2023); https://oag.ca.gov/news/press-

the civil rights of Plaintiffs in this action.

Indeed, Plaintiffs are just a few of the litany who have been deprived of their civil rights by the actions of the Riverside County Sheriff's Department.

On December 7, 2022, at approximately 4:45 A.M., the Riverside County Sheriff's Department executed a facially invalid Search Warrant[14] (the "Warrant") in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject Property").

Well over a year and a half prior to Propounding Party's unlawful execution of this legally void Warrant, the Subject Property had been specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

The Tribe is a relatively impoverished nation with little to any source of income, who look to their lawfully authorized agricultural facilities as a means to uplift their people from dire economic despair.

The lead officer during the execution of this Warrant, Defendant Jose Trujillo

---

releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[14] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires* and contrary to federal law governing jurisdiction in "*Indian country*." (emphasis added).

41

Villasenor ("Villasenor"), had sworn under oath in his supporting Affidavit as to purported "facts" including the patently false statement that the Subject Property was allegedly not "trusted land" (sic) and therefore not sovereign Indian tribal land subject to protection under federal law.  This Affidavit also ironically sets forth that, on October 27, 2022, Plaintiff Preston McCormick ("McCormick") hand-delivered to the Riverside County Sheriff's Thermal Station a copy of Plaintiffs' official "Manufacturing License" issued by the Tribe.

However, Villasenor disregarded such License as well as other fact and evidence by failing to conduct an adequate investigation prior to the raid.  Villasenor also disregarded the Riverside County Sheriff's Department Standard Operating Procedures by not verifying any information with the Department's Tribal Liaison Unit as to whether the Subject Property was indeed located on the Tribe's sovereign Indian tribal land prior to swearing out the Affidavit or conducting the raid.

During his deposition, Villasenor also repeatedly testified that Propounding Party considered the Tribe to be a "*criminal enterprise*" and "*criminal organization*" simply for permitting the cultivation and "*manufacturing of cannabis*" on sovereign Indian tribal land pursuant to the Tribe's own promulgated regulations, demonstrating reprehensible conduct on the part of the Propounding Party, in reckless disregard for the vulnerability of Responding Party, as a disabled veteran that was known by the Propounding Party in advance of the raid, as well as the civil rights of Responding Party and the sovereign rights of the Tribe.

At the commencement of this raid, members of the Tribe, including Tribal Vice Chairman Joseph Mirelez ("Mirelez") as well as Ms. Elaine Penalosa ("Penalosa"), Executive Director of the Tribe's Desert Cahuilla Agricultural Commission ("DCAC") overseeing all agricultural facilities on the Tribe's land, arrived at the Subject Property to present Villasenor with copies of the Tribe's official BIA Grant Deed, the Tribe's Cannabis Control Commission Regulations, and the Manufacturing License issued to Plaintiffs by the Tribe, and to plead with

42

Villasenor to immediately cease this raid. Villasenor dismissed such documents off-hand and rejected the Tribe's fervent requests to stop.

The Riverside County Sheriff's Department proceeded to lay waste to the entire agricultural facility at issue in this case, destroying over 270 greenhouses and irrigation systems, seizing countless thousands of documents, ripping out and destroying computer and surveillance systems, and arresting and detaining many individuals, including Plaintiff Preston McCormick, who was handcuffed behind his back face down in the dirt in front of his wife, held in custody, and periodically interrogated for up to eight (8) hours in excruciating pain.

**INTERROGATORY NO. 16:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR policies, customs, conduct, and practices violation claims.

**RESPONSE TO INTERROGATORY NO. 16:**

Propounding Party has engaged in a well-documented pattern, practice, and custom of repeated violations of the civil rights of the citizens of Riverside County, California, committed by the Riverside County Sheriff's Department[15], including the civil rights of Plaintiffs in this action.

Indeed, Plaintiffs are just a few of the litany who have been deprived of their civil rights by the actions of the Riverside County Sheriff's Department.

On December 7, 2022, at approximately 4:45 A.M., the Riverside County Sheriff's Department executed a facially invalid Search Warrant[16] (the "Warrant")

---

[15] Attorney General Rob Bonta, Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office (February 23, 2023); https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[16] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires*

in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject Property").

Well over a year and a half prior to Propounding Party's unlawful execution of this legally void Warrant, the Subject Property had been specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

The Tribe is a relatively impoverished nation with little to any source of income, who look to their lawfully authorized agricultural facilities as a means to uplift their people from dire economic despair.

The lead officer during the execution of this Warrant, Defendant Jose Trujillo Villasenor ("Villasenor"), had sworn under oath in his supporting Affidavit as to purported "facts" including the patently false statement that the Subject Property was allegedly not "trusted land" (sic) and therefore not sovereign Indian tribal land subject to protection under federal law.  This Affidavit also ironically sets forth that, on October 27, 2022, Plaintiff Preston McCormick ("McCormick") hand-delivered to the Riverside County Sheriff's Thermal Station a copy of Plaintiffs' official "Manufacturing License" issued by the Tribe.

However, Villasenor disregarded such License as well as other fact and evidence by failing to conduct an adequate investigation prior to the raid.  Villasenor

---

and contrary to federal law governing jurisdiction in "*Indian country*." (emphasis added).

44

also disregarded the Riverside County Sheriff's Department Standard Operating Procedures by not verifying any information with the Department's Tribal Liaison Unit as to whether the Subject Property was indeed located on the Tribe's sovereign Indian tribal land prior to swearing out the Affidavit or conducting the raid.

During his deposition, Villasenor also repeatedly testified that Propounding Party considered the Tribe to be a "*criminal enterprise*" and "*criminal organization*" simply for permitting the cultivation and "*manufacturing of cannabis*" on sovereign Indian tribal land pursuant to the Tribe's own promulgated regulations, demonstrating reprehensible conduct on the part of the Propounding Party, in reckless disregard for the vulnerability of Responding Party, as a disabled veteran that was known by the Propounding Party in advance of the raid, as well as the civil rights of Responding Party and the sovereign rights of the Tribe.

At the commencement of this raid, members of the Tribe, including Tribal Vice Chairman Joseph Mirelez ("Mirelez") as well as Ms. Elaine Penalosa ("Penalosa"), Executive Director of the Tribe's Desert Cahuilla Agricultural Commission ("DCAC") overseeing all agricultural facilities on the Tribe's land, arrived at the Subject Property to present Villasenor with copies of the Tribe's official BIA Grant Deed, the Tribe's Cannabis Control Commission Regulations, and the Manufacturing License issued to Plaintiffs by the Tribe, and to plead with Villasenor to immediately cease this raid. Villasenor dismissed such documents off-hand and rejected the Tribe's fervent requests to stop.

The Riverside County Sheriff's Department proceeded to lay waste to the entire agricultural facility at issue in this case, destroying over 270 greenhouses and irrigation systems, seizing countless thousands of documents, ripping out and destroying computer and surveillance systems, and arresting and detaining many individuals, including Plaintiff Preston McCormick, who was handcuffed behind his back face down in the dirt in front of his wife, held in custody, and periodically interrogated for up to eight (8) hours in excruciating pain.

45

**INTERROGATORY NO. 17:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR negligence claim(s).

**RESPONSE TO INTERROGATORY NO. 17:**

Propounding Party has engaged in a well-documented pattern, practice, and custom of repeated violations of the civil rights of the citizens of Riverside County, California, committed by the Riverside County Sheriff's Department[17], including the civil rights of Plaintiffs in this action.

Indeed, Plaintiffs are just a few of the litany who have been deprived of their civil rights by the actions of the Riverside County Sheriff's Department.

On December 7, 2022, at approximately 4:45 A.M., the Riverside County Sheriff's Department executed a facially invalid Search Warrant[18] (the "Warrant") in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject Property").

Well over a year and a half prior to Propounding Party's unlawful execution of this legally void Warrant, the Subject Property had been specifically designated

---

[17] Attorney General Rob Bonta, Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office (February 23, 2023); https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[18] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires* and contrary to federal law governing jurisdiction in "*Indian country*." (emphasis added).

46

as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

The Tribe is a relatively impoverished nation with little to any source of income, who look to their lawfully authorized agricultural facilities as a means to uplift their people from dire economic despair.

The lead officer during the execution of this Warrant, Defendant Jose Trujillo Villasenor ("Villasenor"), had sworn under oath in his supporting Affidavit as to purported "facts" including the patently false statement that the Subject Property was allegedly not "trusted land" (sic) and therefore not sovereign Indian tribal land subject to protection under federal law.  This Affidavit also ironically sets forth that, on October 27, 2022, Plaintiff Preston McCormick ("McCormick") hand-delivered to the Riverside County Sheriff's Thermal Station a copy of Plaintiffs' official "Manufacturing License" issued by the Tribe.

However, Villasenor disregarded such License as well as other fact and evidence by failing to conduct an adequate investigation prior to the raid.  Villasenor also disregarded the Riverside County Sheriff's Department Standard Operating Procedures by not verifying any information with the Department's Tribal Liaison Unit as to whether the Subject Property was indeed located on the Tribe's sovereign Indian tribal land prior to swearing out the Affidavit or conducting the raid.

During his deposition, Villasenor also repeatedly testified that Propounding Party considered the Tribe to be a "*criminal enterprise*" and "*criminal organization*" simply for permitting the cultivation and "*manufacturing of cannabis*" on sovereign Indian tribal land pursuant to the Tribe's own promulgated regulations, demonstrating reprehensible conduct on the part of the Propounding Party, in reckless disregard for the vulnerability of Responding Party, as a disabled veteran that was known by the Propounding Party in advance of the raid, as well as the civil

47

rights of Responding Party and the sovereign rights of the Tribe.

At the commencement of this raid, members of the Tribe, including Tribal Vice Chairman Joseph Mirelez ("Mirelez") as well as Ms. Elaine Penalosa ("Penalosa"), Executive Director of the Tribe's Desert Cahuilla Agricultural Commission ("DCAC") overseeing all agricultural facilities on the Tribe's land, arrived at the Subject Property to present Villasenor with copies of the Tribe's official BIA Grant Deed, the Tribe's Cannabis Control Commission Regulations, and the Manufacturing License issued to Plaintiffs by the Tribe, and to plead with Villasenor to immediately cease this raid. Villasenor dismissed such documents off-hand and rejected the Tribe's fervent requests to stop.

The Riverside County Sheriff's Department proceeded to lay waste to the entire agricultural facility at issue in this case, destroying over 270 greenhouses and irrigation systems, seizing countless thousands of documents, ripping out and destroying computer and surveillance systems, and arresting and detaining many individuals, including Plaintiff Preston McCormick, who was handcuffed behind his back face down in the dirt in front of his wife, held in custody, and periodically interrogated for up to eight (8) hours in excruciating pain.

**INTERROGATORY NO. 18:**

Please describe with particularity all evidence and facts YOU intend to use to support your intentional interference with contractual relations claim(s).

**RESPONSE TO INTERROGATORY NO. 18:**

Propounding Party has engaged in a well-documented pattern, practice, and custom of repeated violations of the civil rights of the citizens of Riverside County, California, committed by the Riverside County Sheriff's Department[19], including

---

[19] Attorney General Rob Bonta, Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office (February 23, 2023); https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

the civil rights of Plaintiffs in this action.

Indeed, Plaintiffs are just a few of the litany who have been deprived of their civil rights by the actions of the Riverside County Sheriff's Department.

On December 7, 2022, at approximately 4:45 A.M., the Riverside County Sheriff's Department executed a facially invalid Search Warrant[20] (the "Warrant") in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject Property").

Well over a year and a half prior to Propounding Party's unlawful execution of this legally void Warrant, the Subject Property had been specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

The Tribe is a relatively impoverished nation with little to any source of income, who look to their lawfully authorized agricultural facilities as a means to uplift their people from dire economic despair.

The lead officer during the execution of this Warrant, Defendant Jose Trujillo Villasenor ("Villasenor"), had sworn under oath in his supporting Affidavit as to purported "facts" including the patently false statement that the Subject Property

---

[20] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires* and contrary to federal law governing jurisdiction in "*Indian country*." (emphasis added).

49

was allegedly not "trusted land" (sic) and therefore not sovereign Indian tribal land subject to protection under federal law.  This Affidavit also ironically sets forth that, on October 27, 2022, Plaintiff Preston McCormick ("McCormick") hand-delivered to the Riverside County Sheriff's Thermal Station a copy of Plaintiffs' official "Manufacturing License" issued by the Tribe.

However, Villasenor disregarded such License as well as other fact and evidence by failing to conduct an adequate investigation prior to the raid.  Villasenor also disregarded the Riverside County Sheriff's Department Standard Operating Procedures by not verifying any information with the Department's Tribal Liaison Unit as to whether the Subject Property was indeed located on the Tribe's sovereign Indian tribal land prior to swearing out the Affidavit or conducting the raid.

During his deposition, Villasenor also repeatedly testified that Propounding Party considered the Tribe to be a "*criminal enterprise*" and "*criminal organization*" simply for permitting the cultivation and "*manufacturing of cannabis*" on sovereign Indian tribal land pursuant to the Tribe's own promulgated regulations, demonstrating reprehensible conduct on the part of the Propounding Party, in reckless disregard for the vulnerability of Responding Party, as a disabled veteran that was known by the Propounding Party in advance of the raid, as well as the civil rights of Responding Party and the sovereign rights of the Tribe.

At the commencement of this raid, members of the Tribe, including Tribal Vice Chairman Joseph Mirelez ("Mirelez") as well as Ms. Elaine Penalosa ("Penalosa"), Executive Director of the Tribe's Desert Cahuilla Agricultural Commission ("DCAC") overseeing all agricultural facilities on the Tribe's land, arrived at the Subject Property to present Villasenor with copies of the Tribe's official BIA Grant Deed, the Tribe's Cannabis Control Commission Regulations, and the Manufacturing License issued to Plaintiffs by the Tribe, and to plead with Villasenor to immediately cease this raid. Villasenor dismissed such documents off-hand and rejected the Tribe's fervent requests to stop.

The Riverside County Sheriff's Department proceeded to lay waste to the entire agricultural facility at issue in this case, destroying over 270 greenhouses and irrigation systems, seizing countless thousands of documents, ripping out and destroying computer and surveillance systems, and arresting and detaining many individuals, including Plaintiff Preston McCormick, who was handcuffed behind his back face down in the dirt in front of his wife, held in custody, and periodically interrogated for up to eight (8) hours in excruciating pain.

**INTERROGATORY NO. 19:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR negligent interference with prospective economic relations claim(s).

**RESPONSE TO INTERROGATORY NO. 19:**

Propounding Party has engaged in a well-documented pattern, practice, and custom of repeated violations of the civil rights of the citizens of Riverside County, California, committed by the Riverside County Sheriff's Department[21], including the civil rights of Plaintiffs in this action.

Indeed, Plaintiffs are just a few of the litany who have been deprived of their civil rights by the actions of the Riverside County Sheriff's Department.

On December 7, 2022, at approximately 4:45 A.M., the Riverside County Sheriff's Department executed a facially invalid Search Warrant[22] (the "Warrant")

---

[21] Attorney General Rob Bonta, Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office (February 23, 2023); https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[22] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires* and contrary to federal law governing jurisdiction in "*Indian country*." (emphasis added).

51

in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject Property").

Well over a year and a half prior to Propounding Party's unlawful execution of this legally void Warrant, the Subject Property had been specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

The Tribe is a relatively impoverished nation with little to any source of income, who look to their lawfully authorized agricultural facilities as a means to uplift their people from dire economic despair.

The lead officer during the execution of this Warrant, Defendant Jose Trujillo Villasenor ("Villasenor"), had sworn under oath in his supporting Affidavit as to purported "facts" including the patently false statement that the Subject Property was allegedly not "trusted land" (sic) and therefore not sovereign Indian tribal land subject to protection under federal law. This Affidavit also ironically sets forth that, on October 27, 2022, Plaintiff Preston McCormick ("McCormick") hand-delivered to the Riverside County Sheriff's Thermal Station a copy of Plaintiffs' official "Manufacturing License" issued by the Tribe.

However, Villasenor disregarded such License as well as other fact and evidence by failing to conduct an adequate investigation prior to the raid. Villasenor also disregarded the Riverside County Sheriff's Department Standard Operating Procedures by not verifying any information with the Department's Tribal Liaison Unit as to whether the Subject Property was indeed located on the Tribe's sovereign Indian tribal land prior to swearing out the Affidavit or conducting the raid.

52

During his deposition, Villasenor also repeatedly testified that Propounding Party considered the Tribe to be a "*criminal enterprise*" and "*criminal organization*" simply for permitting the cultivation and "*manufacturing of cannabis*" on sovereign Indian tribal land pursuant to the Tribe's own promulgated regulations, demonstrating reprehensible conduct on the part of the Propounding Party, in reckless disregard for the vulnerability of Responding Party, as a disabled veteran that was known by the Propounding Party in advance of the raid, as well as the civil rights of Responding Party and the sovereign rights of the Tribe.

At the commencement of this raid, members of the Tribe, including Tribal Vice Chairman Joseph Mirelez ("Mirelez") as well as Ms. Elaine Penalosa ("Penalosa"), Executive Director of the Tribe's Desert Cahuilla Agricultural Commission ("DCAC") overseeing all agricultural facilities on the Tribe's land, arrived at the Subject Property to present Villasenor with copies of the Tribe's official BIA Grant Deed, the Tribe's Cannabis Control Commission Regulations, and the Manufacturing License issued to Plaintiffs by the Tribe, and to plead with Villasenor to immediately cease this raid. Villasenor dismissed such documents off-hand and rejected the Tribe's fervent requests to stop.

The Riverside County Sheriff's Department proceeded to lay waste to the entire agricultural facility at issue in this case, destroying over 270 greenhouses and irrigation systems, seizing countless thousands of documents, ripping out and destroying computer and surveillance systems, and arresting and detaining many individuals, including Plaintiff Preston McCormick, who was handcuffed behind his back face down in the dirt in front of his wife, held in custody, and periodically interrogated for up to eight (8) hours in excruciating pain.

**INTERROGATORY NO. 20:**

Please describe with particularity all evidence and facts YOU intend to use to support YOUR intentional interference with prospective economic relations claim(s).

53

**RESPONSE TO INTERROGATORY NO. 20:**

Propounding Party has engaged in a well-documented pattern, practice, and custom of repeated violations of the civil rights of the citizens of Riverside County, California, committed by the Riverside County Sheriff's Department[23], including the civil rights of Plaintiffs in this action.

Indeed, Plaintiffs are just a few of the litany who have been deprived of their civil rights by the actions of the Riverside County Sheriff's Department.

On December 7, 2022, at approximately 4:45 A.M., the Riverside County Sheriff's Department executed a facially invalid Search Warrant[24] (the "Warrant") in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject Property").

Well over a year and a half prior to Propounding Party's unlawful execution of this legally void Warrant, the Subject Property had been specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"),

---

[23] Attorney General Rob Bonta, Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office (February 23, 2023); https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[24] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires* and contrary to federal law governing jurisdiction in "*Indian country*." (emphasis added).

54

Land Titles and Records Office, on February 19, 2021.

The Tribe is a relatively impoverished nation with little to any source of income, who look to their lawfully authorized agricultural facilities as a means to uplift their people from dire economic despair.

The lead officer during the execution of this Warrant, Defendant Jose Trujillo Villasenor ("Villasenor"), had sworn under oath in his supporting Affidavit as to purported "facts" including the patently false statement that the Subject Property was allegedly not "trusted land" (sic) and therefore not sovereign Indian tribal land subject to protection under federal law.  This Affidavit also ironically sets forth that, on October 27, 2022, Plaintiff Preston McCormick ("McCormick") hand-delivered to the Riverside County Sheriff's Thermal Station a copy of Plaintiffs' official "Manufacturing License" issued by the Tribe.

However, Villasenor disregarded such License as well as other fact and evidence by failing to conduct an adequate investigation prior to the raid.  Villasenor also disregarded the Riverside County Sheriff's Department Standard Operating Procedures by not verifying any information with the Department's Tribal Liaison Unit as to whether the Subject Property was indeed located on the Tribe's sovereign Indian tribal land prior to swearing out the Affidavit or conducting the raid.

During his deposition, Villasenor also repeatedly testified that Propounding Party considered the Tribe to be a "*criminal enterprise*" and "*criminal organization*" simply for permitting the cultivation and "*manufacturing of cannabis*" on sovereign Indian tribal land pursuant to the Tribe's own promulgated regulations, demonstrating reprehensible conduct on the part of the Propounding Party, in reckless disregard for the vulnerability of Responding Party, as a disabled veteran that was known by the Propounding Party in advance of the raid, as well as the civil rights of Responding Party and the sovereign rights of the Tribe.

At the commencement of this raid, members of the Tribe, including Tribal Vice Chairman Joseph Mirelez ("Mirelez") as well as Ms. Elaine Penalosa

("Penalosa"), Executive Director of the Tribe's Desert Cahuilla Agricultural Commission ("DCAC") overseeing all agricultural facilities on the Tribe's land, arrived at the Subject Property to present Villasenor with copies of the Tribe's official BIA Grant Deed, the Tribe's Cannabis Control Commission Regulations, and the Manufacturing License issued to Plaintiffs by the Tribe, and to plead with Villasenor to immediately cease this raid. Villasenor dismissed such documents off-hand and rejected the Tribe's fervent requests to stop.

The Riverside County Sheriff's Department proceeded to lay waste to the entire agricultural facility at issue in this case, destroying over 270 greenhouses and irrigation systems, seizing countless thousands of documents, ripping out and destroying computer and surveillance systems, and arresting and detaining many individuals, including Plaintiff Preston McCormick, who was handcuffed behind his back face down in the dirt in front of his wife, held in custody, and periodically interrogated for up to eight (8) hours in excruciating pain.

**INTERROGATORY NO. 21:**

Please describe with particularity all evidence and facts YOU intend to use to support your claim(s) for vicarious liability.

**RESPONSE TO INTERROGATORY NO. 21:**

Propounding Party has engaged in a well-documented pattern, practice, and custom of repeated violations of the civil rights of the citizens of Riverside County, California, committed by the Riverside County Sheriff's Department[25], including the civil rights of Plaintiffs in this action.

Indeed, Plaintiffs are just a few of the litany who have been deprived of their civil rights by the actions of the Riverside County Sheriff's Department.

---

[25] Attorney General Rob Bonta, Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office (February 23, 2023); https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

On December 7, 2022, at approximately 4:45 A.M., the Riverside County Sheriff's Department executed a facially invalid Search Warrant[26] (the "Warrant") in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject Property").

Well over a year and a half prior to Propounding Party's unlawful execution of this legally void Warrant, the Subject Property had been specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

The Tribe is a relatively impoverished nation with little to any source of income, who look to their lawfully authorized agricultural facilities as a means to uplift their people from dire economic despair.

The lead officer during the execution of this Warrant, Defendant Jose Trujillo Villasenor ("Villasenor"), had sworn under oath in his supporting Affidavit as to purported "facts" including the patently false statement that the Subject Property was allegedly not "trusted land" (sic) and therefore not sovereign Indian tribal land subject to protection under federal law. This Affidavit also ironically sets forth that, on October 27, 2022, Plaintiff Preston McCormick ("McCormick") hand-delivered

---

[26] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires* and contrary to federal law governing jurisdiction in "*Indian country*." (emphasis added).

57

to the Riverside County Sheriff's Thermal Station a copy of Plaintiffs' official "Manufacturing License" issued by the Tribe.

However, Villasenor disregarded such License as well as other fact and evidence by failing to conduct an adequate investigation prior to the raid. Villasenor also disregarded the Riverside County Sheriff's Department Standard Operating Procedures by not verifying any information with the Department's Tribal Liaison Unit as to whether the Subject Property was indeed located on the Tribe's sovereign Indian tribal land prior to swearing out the Affidavit or conducting the raid.

During his deposition, Villasenor also repeatedly testified that Propounding Party considered the Tribe to be a "*criminal enterprise*" and "*criminal organization*" simply for permitting the cultivation and "*manufacturing of cannabis*" on sovereign Indian tribal land pursuant to the Tribe's own promulgated regulations, demonstrating reprehensible conduct on the part of the Propounding Party, in reckless disregard for the vulnerability of Responding Party, as a disabled veteran that was known by the Propounding Party in advance of the raid, as well as the civil rights of Responding Party and the sovereign rights of the Tribe.

At the commencement of this raid, members of the Tribe, including Tribal Vice Chairman Joseph Mirelez ("Mirelez") as well as Ms. Elaine Penalosa ("Penalosa"), Executive Director of the Tribe's Desert Cahuilla Agricultural Commission ("DCAC") overseeing all agricultural facilities on the Tribe's land, arrived at the Subject Property to present Villasenor with copies of the Tribe's official BIA Grant Deed, the Tribe's Cannabis Control Commission Regulations, and the Manufacturing License issued to Plaintiffs by the Tribe, and to plead with Villasenor to immediately cease this raid. Villasenor dismissed such documents off-hand and rejected the Tribe's fervent requests to stop.

The Riverside County Sheriff's Department proceeded to lay waste to the entire agricultural facility at issue in this case, destroying over 270 greenhouses and irrigation systems, seizing countless thousands of documents, ripping out and

58

destroying computer and surveillance systems, and arresting and detaining many individuals, including Plaintiff Preston McCormick, who was handcuffed behind his back face down in the dirt in front of his wife, held in custody, and periodically interrogated for up to eight (8) hours in excruciating pain.

**INTERROGATORY NO. 22:**

Please describe in detail with particularity, what YOU have done with ALL marijuana cultivated or manufactured by YOU on 91521 Ave 68, Mecca, California, including but not limited to how you packaged the marijuana, how you labeled the marijuana containers, how you transported the marijuana, to whom did you sell the marijuana, the quantities sold, the prices sold for, and the dates sold.

**RESPONSE TO INTERROGATORY NO. 22:**

Responding Party responds that on December 7, 2022, at approximately 4:45 A.M., the Riverside County Sheriff's Department executed a facially invalid Search Warrant[27] (the "Warrant") in a predawn raid consisting of approximately 250 heavily armed uniformed officers, including members of SWAT and other law enforcement agencies, utilizing military-style vehicles at a validly licensed and authorized marijuana agricultural facility located at 91521 Avenue 68, Mecca, California 92254 (the "Subject Property") and that all marijuana cultivated or manufactured on the Subject Property was methodically and completely confiscated and destroyed by Propounding Party in the execution of such Warrant prior to any harvest, packaging, or labeling.  Responding Party further responds that all transportation, sale, quantities sold, prices, dates of sale are all conducted and

[27] As a matter of law, neither 18 U.S.C. § 1162 nor any other Act of Congress conferred any jurisdiction to authorize any of the Defendants to commit any of the acts as alleged in the Complaint, including but not limited to submitting an Affidavit or seeking issuance of the Search Warrant at issue in this case, rendering such Search Warrant void *ab initio* and rendering the execution of such Search Warrant as well as the many other acts associated therewith as *ultra vires* and contrary to federal law governing jurisdiction in "*Indian country*." (emphasis added).

59

controlled by the Tribe on the Tribe's sovereign Indian tribal land at the Subject Property pursuant to regulations promulgated by the Tribe and, inasmuch as the entire Subject Property was totally destroyed by Responding Party prior to any harvest of marijuana, there was no such packaging, labeling, transporting, or sale.

**INTERROGATORY NO. 23:**

Please describe with details and particularity the nature, extent, purpose, and mission of YOUR marijuana business.

**RESPONSE TO INTERROGATORY NO. 23:**

Responding Party describes the nature, extent, purpose and "mission" of its business as follows:

After being honorably discharged from the United States Army, Claimant returned to Southern California, obtained his general contractor's license, and worked in the Coachella Valley. Claimant reconnected with his childhood friend, who is a Tribal member. The two began discussing the Tribe's efforts to expand business opportunities on tribal land, including the Tribe's expansion into cannabis.

The Tribe extensively regulates the cultivation and sale of cannabis on its land. Through DCAC, the Tribe established regulations covering the cultivation and sale of cannabis. DCAC has the full force and authority to "regulate the purchase, production, possession, processing, packaging, storing, transporting, selling, and receipt of marijuana and marijuana products" on Tribal land.

In regulating cultivation, among other things, DCAC monitors and controls each and every cannabis plant cultivated on the Subject Property.

By its regulations, DCAC tests and collects data from all such plants and monitors the plants' development from seed to final packaging and requires that Responding Party provide such data.

By its regulations and based on submittal and approval of Responding Party's Application, DCAC issued a Manufacturing License to Responding Party authorizing the cultivation of cannabis on the Tribe's sovereign Indian tribal land.

60

The Tribe also entered into a Sublease with Responding Party for cultivation of cannabis on the Subject Property.  In exchange, Responding Party agreed to fully comply with all the Tribe's regulations governing such cannabis cultivation, and paid the Tribe monthly rent and approximately 17% tax on any cultivated cannabis.

To further ensure regulatory compliance, the Tribe also maintained its own, separate tribal office and security force on the Subject property. DCAC heavily regulated Responding Party's agricultural facility business on the Subject Property, including having the Tribe's regulators regularly and randomly, inspect the facility, oversee and test the plants, and ensure that all employees, agents or other workers were properly credentialed, which included passing criminal background checks.

Responding Party was responsible for overseeing the operations of the agricultural facility on the Subject Property, including ensuring that the entire facility was properly fenced with barbed wire and six-foot high fencing and had 24-hour CCTV video security surveillance. Responding Party was also responsible for clearly marking the entrance to the Subject Property with bold four by four foot signs that warned against trespassing, that video monitoring was in progress, and that the land was situated on a federal Indian reservation.

With an engineering and construction background, Responding Party invested in and oversaw the construction of over 270 valuable greenhouses that held approximately 18,299 plants and hired cultivators, and other experts in the legal cannabis field, to grow the plants. And, pursuant to the Tribe's regulations, each and every plant was purposefully tagged and everyone working at the facility was required to obtain a security clearance and credentials from the Tribe based on a background check. Only individuals who were cleared were allowed on the farm.

The objective of Responding Party's business plan was to eventually harvest and package cannabis products and provide such finished products to DCAC for the

61

exclusive sale and distribution of such products only by and through the Tribe and only on the Tribe's sovereign Indian tribal land.

Responding party has also already produced the following documents that are further responsive to this interrogatory:

County of Riverside "Claim For Damages To Person or Property" and supporting attachments and exhibits, intake date stamped June 1, 2023 (MCCORMICK 0000000001-0000000057).

The Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM (NOTE: THIS DOCUMENT CONTAINS EMBEDDED CODE RESTRICTING THE ABILITY TO APPLY BATES OR OTHER NUMBERING AND HAS THEREFORE ALREADY BEEN PRODUCED IN DISCOVERY WITHOUT SUCH BATES NUMBERING BY RESPONDING PARTIES IN THIS ACTION).

Character Reference Letter on behalf of Responding Party signed by Thomas Tortez, Tribal Chairman (MCCORMICK 0000000155).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application (MCCORMICK 0000000654-0000000664).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Manufacturing License (MCCORMICK 0000000156).

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Discovery is ongoing and Responding Party will continue to produce documents in response to this Request based on subsequently discovered facts on a rolling basis.

**INTERROGATORY NO. 24:**

Please describe with details and particularity ALL communications YOU have had with the Bureau of Indian Affairs ("BIA") and the Department of the Interior, Indian Affairs, regarding marijuana related activities including but not limited to marijuana cultivation, manufacture, use, possession, sale, transportation, distribution, and taxation.

**RESPONSE TO INTERROGATORY NO. 24:**

Responding Party has not conducted direct communications with the BIA or the Department of the Interior, Indian Affairs, regarding marijuana related activities including but not limited to marijuana cultivation, manufacture, use, possession, sale, transportation, distribution, and taxation.

Responding Party's communications concerning this interrogatory were conducted with the Tribe, including Thomas Tortez, former Tribal Chairman; Joseph Mireles, current Tribal Chairman; Elaine Penaloza, Tribal Executive Director, Torres Martinez Desert Cahuilla Indians, Desert Cahuilla Agricultural Commission ("DCAC") and  Millie Whitehead, Tribal Secretary and Administrator.

Based on those communications, Responding Party was provided a copy of the recording statement for the Subject Property as being specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

Responding party has also already produced the following documents that are

further responsive to this interrogatory:

County of Riverside "Claim For Damages To Person or Property" and supporting attachments and exhibits, intake date stamped June 1, 2023 (MCCORMICK 0000000001-0000000057).

The Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM (NOTE: THIS DOCUMENT CONTAINS EMBEDDED CODE RESTRICTING THE ABILITY TO APPLY BATES OR OTHER NUMBERING AND HAS THEREFORE ALREADY BEEN PRODUCED IN DISCOVERY WITHOUT SUCH BATES NUMBERING BY RESPONDING PARTIES IN THIS ACTION).

Character Reference Letter on behalf of Responding Party signed by Thomas Tortez, Tribal Chairman (MCCORMICK 0000000155).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application (MCCORMICK 0000000654-0000000664).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Manufacturing License (MCCORMICK 0000000156).

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Discovery is ongoing and Responding Party will continue to produce documents in response to this Request based on subsequently discovered facts on a rolling basis.

64

**INTERROGATORY NO. 25:**

Please delineate with particularity ALL statutes, ordinances, regulations, or any other relevant authorities of the Bureau of Indian Affairs ("BIA") and the Department of the Interior, Indian Affairs, if any, that YOUR marijuana business on 91521 Ave 68, Mecca, California was required to comply with, including but not limited to marijuana cultivation, sales, possession, use, distribution, transportation, and taxation.

**RESPONSE TO INTERROGATORY NO. 25:**

Responding Party has not conducted direct communications with the BIA or the Department of the Interior, Indian Affairs, regarding marijuana related activities including but not limited to marijuana cultivation, manufacture, use, possession, sale, transportation, distribution, and taxation.

Responding Party's communications concerning this interrogatory were conducted with the Tribe, including Thomas Tortez, former Tribal Chairman; Joseph Mireles, current Tribal Chairman; Elaine Penaloza, Tribal Executive Director, Torres Martinez Desert Cahuilla Indians, Desert Cahuilla Agricultural Commission ("DCAC") and  Millie Whitehead, Tribal Secretary and Administrator.

Based on those communications, Responding Party was provided a copy of the recording statement for the Subject Property as being specifically designated as sovereign Indian tribal land held in trust by the United States of America for the benefit of the Torres Martinez Desert Cahuilla Indians (the "Tribe"), dutifully recorded with the U.S. Department of the Interior, Bureau of Indian Affairs ("BIA"), Land Titles and Records Office, on February 19, 2021.

Responding party has also already produced the following documents that are further responsive to this interrogatory:

County of Riverside "Claim For Damages To Person or Property" and supporting attachments and exhibits, intake date stamped June 1, 2023 (MCCORMICK 0000000001-0000000057).

65

The Grant Deed of the Subject Property issued by the Torres Martinez Desert Cahuilla Indians to The United States of America In Trust For the Torres Martinez Desert Cahuilla Indians, California as recorded at the U.S. Department of the Interior, Bureau of Indian Affairs, Land Titles and Records Office Document Number: 4200197218, Date: 2021 Feb 19 11:31 AM (NOTE: THIS DOCUMENT CONTAINS EMBEDDED CODE RESTRICTING THE ABILITY TO APPLY BATES OR OTHER NUMBERING AND HAS THEREFORE ALREADY BEEN PRODUCED IN DISCOVERY WITHOUT SUCH BATES NUMBERING BY RESPONDING PARTIES IN THIS ACTION).

Character Reference Letter on behalf of Responding Party signed by Thomas Tortez, Tribal Chairman (MCCORMICK 0000000155).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Registration Application (MCCORMICK 0000000654-0000000664).

Torres Martinez Desert Cahuilla Indians, Cannabis Control Commission, Manufacturing License (MCCORMICK 0000000156).

Torres Martinez Desert Cahuilla Indians, Business Sublease Agreement Between Sovereign Medical Tribal Corporation (Sublandlord) And East Wind Ag (Subtenant) (MCCORMICK 0000000157-0000000193).

Discovery is ongoing and Responding Party will continue to produce documents in response to this Request based on subsequently discovered facts on a rolling basis.

DATED: _May 2, 2025          MORROW LAW GROUP INC.

By:    /s/ Gregory J. Morrow

Gregory J. Morrow
Attorneys for Plaintiffs
Preston McCormick and
East Wind Ag

66

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1801 Century Park East, 24th Floor, Los Angeles, California 90067.

On May 2, 2025, I served the foregoing document(s) described as **PPLAINTIFF EAST WIND AG'S RESPONSE TO DEFENDANT COUNTY OF RIVERSIDE'S FIRST SET OF INTERROGATORIES** on all interested parties in this action as set forth on the attached service list in the following manner:

☐ **BY MAIL:**  I am familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

☐ **BY FACSIMILE:**  In addition to service by mail as set forth above, a copy of said document(s) was also delivered by facsimile transmission to the addressee(s) pursuant to Code of Civil Procedure §1013(e).

☐ **BY OVERNIGHT MAIL:**  I caused said document(s) to be picked up via FEDERAL EXPRESS for delivery to the addressee(s) set forth on the attached service list on the next business day.

☐ **BY PERSONAL SERVICE:**  I caused said document(s) to be delivered via personal delivery to the addressee(s) set forth on the attached service list.

X **BY ELECTRONIC SERVICE:**  Pursuant to the agreement of the parties, I caused said document(s) to be delivered via electronic mail to the addressee(s) set forth on the attached service list.

☐ STATE:      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

X FEDERAL: I declare that I am employed in the office of the member of the bar of this court at whose direction the service was made.

Executed on May 2, 2025, at Los Angeles, California.

*/s/ Gregory J. Morrow*

Gregory J. Morrow

## <u>SERVICE LIST</u>

Nathan A. Oyster, Esq.
Michaela B. Sozio, Esq.
Caylin W. Jones, Esq.
Burke, Williams & Sorensen, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953

Attorneys for Defendants
County of Riverside, Sheriff
Chad Bianco, Jeffrey Anthony
Van Wagenen, and Jose Trujillo
Villasenor
Telephone:  (213) 236-0600
Facsimile:  (213) 236-2700
Email: NOyster@bwslaw.com
          MSozio@bwslaw.com
          CJones@bwslaw.com

68

# EXHIBIT P

Bureau of Indian Affairs Tract Viewer

Mapped Lands in Indian Country

Instructions  Map Layers  Legend  Filter Tracts...  Basemap  Print  Add Data  Coordinates  Share

Frequently Asked Questions

**Search result**

🔍 Zoom to

91521 68th Ave, Mecca, California, 92254

**Show more results (1)**

595 338   595 281
595 251 B
595 M 251 D
595 249
595 M 324 B
595 292   595 M 324 C
595 246 A   595 230 C
595 M 164   595 M 246   595 275 A   595 320 A   595 299
595 T 500   595 34 A   595 322   595 319
595 34 D
595 1   Torres Martinez Tribal Office
595 1 D   595 181   595 166   595 M 250
595 184   595 120
595 94   595 M 15 A   TORRES-MARTINEZ   595 257   595 307
595 M 248 G
595 248 D   595 277   595 312
595 14
595 M 313   595 M 255
595 12 B
595 167 B
595 325
595 174
595 19

5,000 ft

Branch of Geospatial Support - Office of Trust Services - Contact us for questions or   Visit the Bureau of Indian Affairs
...nts: geospatial@bia.gov   Bureau of Indian Affairs, National Park Service, Natural Earth, National Forest Service, U...   Powered by Esri

# EXHIBIT Q

 An official website of the United States government

# United States® Census Bureau

# My Tribal Area

Enter name of Tribal Area

OR

1. California

2. Torres-Martinez Reservation

About the map

**People**   Jobs   Housing   Economy   Education

## Torres-Martinez Reservation and Off-Reservation Trust Land, CA

Source: 2019-2023 American Community Survey 5-Year Estimates

| Sex and Age | ACS Estimate | Margin of Error |
|---|---|---|
| Total population | 3,288 | (+/-376) |
| Male | 1,800 | (+/-213) |
| Female | 1,488 | (+/-203) |
| Under 5 years | 251 | (+/-65) |
| 5 to 9 years | 328 | (+/-59) |
| 10 to 14 years | 323 | (+/-66) |
| 15 to 19 years | 283 | (+/-61) |
| 20 to 24 years | 232 | (+/-87) |
| 25 to 34 years | 474 | (+/-98) |
| 35 to 44 years | 528 | (+/-107) |
| 45 to 54 years | 376 | (+/-78) |
| 55 to 59 years | 146 | (+/-47) |
| 60 to 64 years | 138 | (+/-41) |
| 65 to 74 years | 134 | (+/-47) |
| 75 to 84 years | 57 | (+/-20) |

☑ Display ACS Margin of Error                          Download and Share

POWERED BY
The American Community Survey

Glossary >

**CONNECT WITH US**   f   ✕   in   ▶   ⊙

Information Quality | Data Linkage Infrastructure | Data Protection and Privacy Policy | Accessibility | FOIA | Inspector General | No FEAR Act | U.S. Department of Commerce | USA.gov

Case 5:23-cv-02569-SSS-SP    Document 72-3    Filed 10/06/25    Page 355 of 383   Page
ID #:3027

**Measuring America's People and Economy**

# DECLARATIONS

## DECLARATION OF NATHAN A. OYSTER

I, Nathan A. Oyster, declare as follows:

1.    I am a partner with Burke, Williams & Sorensen, LLP, attorneys of record for Defendants County of Riverside, Jeffrey Anthony Van Wagenen, Jr., Sheriff Chad Bianco, and Jose Trujillo Villasenor.  I have personal knowledge of the facts set forth herein.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of Defendants' Motion for Summary Judgment.

2.    On September 17, 2025, I sent a Local Rule 7-3 letter to Plaintiffs' counsel regarding Defendants' intent to move for summary judgment.  The correspondence identified the factual and legal bases for Defendants' Motion for Summary Judgment.  Attached as **Exhibit F** is a true and correct copy of the Local Rule 7-3 letter dated September 17, 2025.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 6th day of October, 2025, at Los Angeles, California.

_/s/ Nathan A. Oyster_
Nathan A. Oyster

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

4932-2748-8815 v3

1

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF NATHAN A. OYSTER ISO
DEFTS' MOTION FOR SUMMARY JUDGMENT

## **DECLARATION OF MICHAELA BATTISTA SOZIO**

I, Michaela Battista Sozio, declare as follows:

1.      I am a partner with Burke, Williams & Sorensen, LLP, attorneys of record for Defendants County of Riverside, Jeffrey Anthony Van Wagenen, Jr., Sheriff Chad Bianco, and Jose Trujillo Villasenor (collectively, "Defendants").  I have personal knowledge of the facts set forth herein.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ("Motion").

### **Meet and Confer Pursuant to Local Rule 7-3**

2.      My partner, Nathan Oyster, sent a meet and confer letter to Plaintiffs' counsel, Gregory Morrow, pursuant to Local Rule 7-3 on September 17, 2025, outlining the grounds for Defendants' anticipated motion for summary judgment.

3.      I telephonically met and conferred at length with Plaintiffs' counsel on September 22 and 23, 2025, and Defendants postponed filing their motion for summary judgment while the Parties continue to meet and conferred. Ultimately, Plaintiffs opted not to dismiss any causes of action at this time, necessitating this motion.

### **The Requests for Admission**

4.      On January 14, 2025, I served on Plaintiffs' counsel by email, through my secretary, Defendant Jose Trujillo Villasenor's Requests for Admission (Set One) propounded to Plaintiff McCormick. Attached hereto as **Exhibit G** is a true and correct copy of Defendant Jose Trujillo Villasenor's Requests for Admission (Set One) propounded to Plaintiff McCormick on January 14, 2025.

5.      On January 14, 2025, I served on Plaintiffs' counsel by email, through my secretary, Defendant County of Riverside's Requests for Admission (Set One) propounded to Plaintiff East Wind AG. Attached hereto as **Exhibit H** is a true and correct copy of Defendant County of Riverside's for Admission (Set One)

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4934-3831-8383 v4

1

Case No. 5:23-cv-02569-SSS-SP
DECL. OF MICHAELA BATTISTA SOZIO ISO
DEFTS MOTION FOR SUMMARY JUDGMENT

propounded to Plaintiff East Wind AG on January 14, 2025.

6.      Plaintiffs' responses to the discovery identified in ¶¶ 2-3, above, and marked as **Exhibits G and H**, were due on or before February 13, 2025. No extension was requested, and nor were any responses provided by Plaintiffs by the February 13, 2025 deadline.

7.      Because no responses were timely received, the Requests for Admission were deemed admitted pursuant to Federal Rule of Civil Procedure 36(a)(3).

8.      On April 3, 2025, Plaintiffs identified only 32 admissions that Plaintiffs would seek to withdraw. On April 26, 2025, in order to resolve procedural issues regarding the timing and scope of Plaintiffs' anticipated motion to withdraw deemed admissions, the Parties entered into a Stipulation which provided that that the only deemed admissions that Plaintiffs will be moving to withdraw and amend are the Requests for Admission identified below:

(1)  Defendant County of Riverside's First Set of Requests for Admissions to Plaintiff East Wind Ag, Nos. 1, 2, 3, 11, 12, 13, 14, 15, 21, 42, 43, 51, 52, and 53, and

(2) Defendant Jose Trujillo Villasenor's First Set of Requests for Admission to Plaintiff Preston McCormick, Nos. 1, 2, 3, 4, 5, 6, 11, 12, 13, 14, 15, 21, 42, 43, 44, 51, 52, and 53.

9.      The Stipulation further provides that: "All Requests for Admission in either Defendant County of Riverside's First Set of Requests for Admissions to Plaintiff East Wind AG or Defendant Jose Trujillo Villasenor's First Set of Request for Admissions to Plaintiff Preston McCormick, except for those identified in paragraph 4, ***shall remain deemed admitted***." [Dkt. 52] Attached as **Exhibit I** is a true and correct copy of [Dkt. 52] the Parties' stipulation.

10.      The Court entered the Order on the Stipulation on April 30, 2025. [Dkt. 54] Attached as **Exhibit J** is a true and correct copy of [Dkt. 54], the Court Order on

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4934-3831-8383 v4

2

Case No. 5:23-cv-02569-SSS-SP
DECL. OF MICHAELA BATTISTA SOZIO ISO
DEFTS MOTION FOR SUMMARY JUDGMENT

the Parties' [Dkt. 52] Stipulation.

11. Attached as **Exhibit K** is a true and correct copy of Defendant Villasenor's Requests for Admission, Set One, to Plaintiff Preston McCormick, which *highlights* all Requests for Admissions that Plaintiffs have ***stipulated*** to being deemed admitted.

12. Attached as **Exhibit L** is a true and correct copy of Defendant County of Riverside's Requests for Admission, Set One, to Plaintiff East Wind AG, which *highlights* all Requests for Admission that Plaintiffs have ***stipulated*** to being deemed admitted.

13. On April 29, 2025, Plaintiffs filed a motion to withdraw thirty-two 32 specific deemed admissions. [Dkt. 53]

14. On May 28, 2025, the Court granted Plaintiffs' motion to withdraw thirty-two (32) specific deemed admissions. [Dkt. 60]

15. The remaining one hundred (100) ***stipulated*** admissions, highlighted in the Exhibits K and L remain stipulated and deemed admitted.

### Exhibits in Support of Motion

16. Attached hereto as **Exhibit M** is a true and correct copy of the Grant Deed for the property located at 91521 Avenue 68 in Mecca, California 92254, which I obtained online from the Riverside County Recorder's Office.

17. Attached hereto as **Exhibit N** is a true and correct copy of Plaintiff Preston McCormick's Responses to Defendant Jose Trujillo Villasenor's Interrogatories, Set One, dated April 25, 2025.

18. Attached hereto as **Exhibit O** is a true and correct copy of Plaintiff East Wind AG's Responses to Defendant County of Riverside's Interrogatories, Set One, dated May 2, 2025.

19. Attached hereto as **Exhibit P** is a true and correct copy of the Bureau of Indian Affairs Map Data, which was obtained at https://experience.arcgis.com/experience/49fe6d3b860d47c588db75074fa42309/pag

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4934-3831-8383 v4

3

Case No. 5:23-cv-02569-SSS-SP
DECL. OF MICHAELA BATTISTA SOZIO ISO
DEFTS MOTION FOR SUMMARY JUDGMENT

e/Page. The BIA Map Data indicates that the Subject Property is far outside of the geographical boundaries of the Torres Martinez Desert Cahuilla Indian Tribe. Further, the data indicates that the Subject Property is not within the geographical boundaries of **any** tribal reservation. See **Exhibit P**.

20.    Attached hereto as **Exhibit Q** is a true and correct copy of U.S. Census Data regarding the Torres Martinez Desert Cahuilla Indians (the "Tribe"), which was obtained at https://www.census.gov/tribal/?st=06&aianihh=4255.  The data indicates that between 2019-2023 the "total population" of the "Torres-Martinez Reservation and Off-Reservation Trust Land, CA," *including minors*, is estimated to be "3,288 (+/- 376)" tribal members.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 6th day of October, 2025, at Los Angeles, California.

_/s/ Michaela Battista Sozio_
Michaela Battista Sozio

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4934-3831-8383 v4

4

Case No. 5:23-cv-02569-SSS-SP
DECL. OF MICHAELA BATTISTA SOZIO ISO
DEFTS MOTION FOR SUMMARY JUDGMENT

## **DECLARATION OF JEFFREY A. VAN WAGENEN, JR.**

I, JEFFREY A. VAN WAGENEN, JR., declare as follows:

1.      I am a party in the above-entitled action.  I have personal knowledge of the facts set forth herein.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of Defendants' Motion for Summary Judgment.

2.      I am presently employed by the County of Riverside as the County Executive Officer. I have held this role for over four years.

3.      In my current role as County Executive Officer for the County of Riverside, I carry out the policy direction of the Riverside County Board of Supervisors and oversee the County's annual budget.  I have no involvement in the day-to-day operations of the Riverside County Sheriff's Department.

4.      I am informed and believe that Plaintiffs' allegations in this case relate to the Riverside County Sheriff's Department obtaining and serving a search warrant at 91521 Avenue 68 in Mecca, California 92254 (the "Subject Property") on December 7, 2022.

5.      I had no involvement with obtaining the warrant, executing the warrant, or interacting with Plaintiffs in any manner.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 30th day of September, 2025, at Riverside, California.


_____
JEFFREY A. VAN WAGENEN, JR.

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

4909-9514-3515 v4

1

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF J. VAN WAGENEN, JR, IN
SUPPORT OF DEFENDANTS' MSJ

# DECLARATION OF CHAD BIANCO

I, CHAD BIANCO, declare as follows:

1.    I am a party in the above-entitled action.  I have personal knowledge of the facts set forth herein.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of Defendants' Motion for Summary Judgment.

2.    I am the duly elected Sheriff, Coroner, and Public Administrator of Riverside County.  I was first elected to this office in November 2018. In June 2022, I was re-elected to my second term.

3.    In my present role, I serve as the Chief Law Enforcement Officer of Riverside County at the Riverside County Sheriff's Department.  My responsibilities include overseeing the County's five jail facilities, six court buildings, a civil bureau, the Coroner's Bureau, Public Administrator's Office, twelve patrol stations, seventeen contract cities, 4,200 dedicated employees, and an annual operating budget of just over one billion dollars.

4.    I am informed and believe that Plaintiffs' allegations relate to Sheriff's Department personnel obtaining and serving a search warrant at 91521 Avenue 68 in Mecca, California 92254 (the "Subject Property") on December 7, 2022.

5.    I had no involvement with obtaining this warrant, executing this warrant, or interacting with Plaintiffs in any manner. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 3rd day of October, 2025, at Riverside, California.

_____
CHAD BIANCO

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4902-1290-5307

1

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF C. BIANCO IN SUPPORT
OF DEFENDANTS' MSJ

## DECLARATION OF JOSE TRUJILLO VILLASENOR

I, JOSE TRUJILLO VILLASENOR, declare as follows:

1.    I am a party in the above-entitled action.  I have personal knowledge of the facts set forth herein.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of Defendants' Motion for Summary Judgment.

### Training, Experience, and Background

2.    I am currently employed by the County of Riverside.

3.    I was hired by the Riverside County Sheriff's Department in 2006. During this time, I served concurrently with the National Guard.

4.    I have been employed as a peace officer with the Riverside County Sheriff's Department for over eighteen (18) years.

5.    When I joined the Riverside County Sheriff's Department, I attended the Class 171, Public Safety Academy at the Ben Clark Training Center in Riverside, California. There, I received approximately 820 hours of training.

6.    Upon completion of the Academy in 2007, I was assigned to the Corrections Division of the Riverside County Sheriff's Department Indio Jail as a Deputy Sheriff. I remained in this position for approximately three (3) years.

7.    In 2010, I transferred to the Patrol Division of the Riverside County Sheriff's Department Palm Desert Station.

8.    In January of 2016, I was assigned to the Rancho Mirage Special Enforcement Team. Here, my primary assignment was to investigate theft and fraud related crimes committed in the City of Rancho Mirage.

9.    In 2016, I received an Advanced Peace Officer Standards and Training ("POST") Certificate from the California Department of Justice.

10.    My formal training includes but is not limited to the following:

- Search, Seizure, and Interrogation;

/ / /

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4924-1603-8421 v9

1

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF JOSE TRUJILLO
VILLASENOR ISO DEFENDANTS' MSJ

- International Latino Gang Investigators' Association Annual Gang Training Symposium;

- Southern California Gang Conference San Diego Training Center;

- California Gang Investigators' Association Street Gang Training;

- Criminal Investigation Training;

- Search and Arrest Warrant Investigations;

- Vehicle Theft Investigation;

- Advanced Search Warrant Investigations;

- Identity Theft Investigation;

- Undercover Operations Training;

- Inland Clandestine Laboratory Site Safety Training;

- Asset Forfeiture and Seizure;

- Money Laundering and Financial Investigations;

- Chasing Cell Phones

11. In July of 2017, I was assigned to the Coachella Valley Violent Crime Gang Task Force.

12. In June of 2020, I was assigned to the Special Investigations Bureau under Major Narcotics. Within the Special Investigations Bureau, I was promoted to Sheriff's Investigator on or about February 25, 2021.

13. I am currently a Lead Investigator for the Riverside County Sheriff's Department.

14. My duties as an Investigator for the Riverside County Sheriff's Department include, but are not limited to, conducting criminal investigation and surveillance, and obtaining and executing search warrants.

## Prior Warrant on the Subject Property

15. On December 15, 2020, approximately two years prior to the event that is the subject of this litigation, a warrant signed by the Honorable Judge J. Latting was served and executed at 91521 Avenue 68, Mecca, CA 92254 (the "Subject

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4924-1603-8421 v9

2

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF JOSE TRUJILLO
VILLASENOR ISO DEFENDANTS' MSJ

Property"). The Subject Property is owned by the Torres Martinez Desert Cahuilla Indian Tribe (the "Tribe"). In December 2020, the Subject Property was fee land, and was not held by the United States in trust for the Tribe; i.e. the Subject Property was not trusted land.

16. Investigator Michael Barros was the lead investigator, and I was one of the investigators who participated in the investigation and the execution of this search warrant on December 15, 2020.

17. Based on information and belief, during the service of this warrant, approximately 23 to 26 people were detained and identified as workers that assisted in the cultivation of marijuana on the Subject Property. Further, over 41,331 marijuana plants with a destruction weight of approximately twenty-five (25) tons, in different stages of growth, were discovered and eradicated by law enforcement on the Subject Property. In addition, two handguns were confiscated and approximately $25,000 dollars in U.S. Currency were taken as asset forfeiture.

**Investigation Regarding Probable Cause to Obtain the Warrant**

18. A second investigation commenced regarding a marijuana grow operation on the Subject Property. This time I was the lead investigator. Investigator Michael Barros also assisted with the investigation.

19. Over the course of several months, Sheriff's Department investigators gathered substantial information indicating that marijuana grown on property owned by the Torres Martinez Tribe was being transported away from Tribal lands for the purpose of illegal resale elsewhere in Riverside County.

20. On or about May 5, 2022, Riverside County Sheriff's Department received information from an anonymous tip stating that a residence located on Surfside Ave. in the unincorporated area of Mecca was a stash house for a large amount of US currency and a large quantity of marijuana.

21. After surveillance of the residence located on Surfside Ave. in the unincorporated area of the Mecca, I wrote a residential search warrant for that

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4924-1603-8421 v9

3

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF JOSE TRUJILLO
VILLASENOR ISO DEFENDANTS' MSJ

property, and the Honorable Judge Fernandez granted the warrant on May 9, 2022.

22.    On May 9, 2022, the warrant was served and executed at the residence located on Surfside Ave. in the unincorporated area of Mecca. There, Investigators located approximately 1,220 pounds of finished marijuana in large black trash bags, a total of $46,942 in U.S. Currency, and pay/owe sheets. A Torres Martinez badge was also located at the residence. Additionally, two suspects were arrested and charged with violating Penal Code section 11359(b) Possession of Marijuana for Sales.

23.    Thereafter, on May 24, 2022, I wrote a residential search warrant related to the Torres Martinez marijuana grow operation, and the Honorable Judge Fernandez granted the warrant. During service and execution of the search warrant on a Millay Ct. residence in Indio, investigators located approximately 340 pounds of finished marijuana in large black trash bags, and seized a total of $3,368 in cash and two handguns. A Torres Martinez badge was also found at the location.

24.    On June 23, 2022, I wrote a residential search warrant related to the Torres Martinez marijuana grow operation, and the Honorable Judge Gunn granted the warrant. During service of the warrant on a Turner Ave. apartment in Ontario, investigators located several dozen empty large black trash bags containing remnants of finished marijuana in them, along with two glass jars containing concentrated cannabis (Honey Oil, 1,200 grams), two bags containing marijuana plant material (202 grams), two bags containing finished marijuana (887 grams), pay/owe ledgers, and two unregistered semi-automatic pistols that were loaded.

25.    On October 21, 2022, I wrote a five-residential search warrant related to the Torres Martinez marijuana grow operation, and the Honorable Judge R. White granted the warrant. On October 26, 2022, Riverside County Sheriff's Department Investigators served and executed the warrant at five different locations simultaneously. These five different locations are referred to as "Residences" One through Five, below.

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4924-1603-8421 v9

4

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF JOSE TRUJILLO
VILLASENOR ISO DEFENDANTS' MSJ

26.    During the search of Residence One, located on N. Valley Center Ave. in the City of Glendora, investigators located one semi-automatic pistol and seized $87,680 in US Currency.

27.    During the search of Residence Two, located on Grant St. in the area of Mecca, California, Riverside County Sheriff's Department Investigators located one handgun, one rifle, and one shotgun, along with ten pounds of finished marijuana.

28.    During the search of Residence Three, located at a space at 90123 81st Ave. in Mecca, California, Riverside County Sheriff's Department Investigators located one handgun, thirteen pounds of finished marijuana, $43,046 of US Currency, and paperwork related to the Torres Martinez marijuana grow.

29.    During the search of Residence Four, located on Hideaway St. in the City of Indio, investigators located two Torres Martinez Marijuana Badges and paperwork related to the Torres Martinez marijuana grows.

30.    During the search of Residence Five, located on Corte La Morada in the City of Coachella, investigators located and arrested an individual for possession of marijuana for sale. This individual was determined to be one of the managers that coordinated the cultivation of marijuana at the Torres Martinez marijuana grows. Additionally, investigators located paperwork related to the cultivation of marijuana at the Torres Martinez marijuana grows.

31.    This individual stated that Preston McCormick ("McCormick"), who is one of the Plaintiffs in this case, took over and was in charge of a marijuana cultivation operation at the Subject Property.

32.    In August 15, 2022, I, along with other members from the Riverside Sheriff's Department group, Narc1, conducted surveillance, which included observing McCormick drive to the Subject Property.

33.    On October 12, 2022, I telephoned Code Enforcement for the County of Riverside to inquire about cannabis permitting regarding the Subject Property. I spoke to Gilbert Espinoza ("Espinoza"), who is a technician for the Planning

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4924-1603-8421 v9

5

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF JOSE TRUJILLO
VILLASENOR ISO DEFENDANTS' MSJ

Department of the County of Riverside, which oversees permits for land use in the County of Riverside.  During my telephone conversation with Mr. Espinoza, I asked whether the Subject Property, located at 91521 Avenue 68 Mecca, CA 92254, had a permit the cultivate marijuana. Mr. Espinoza confirmed to me that that the Subject Property did not have any permits to cultivate marijuana.

34.    I submitted a search warrant application for the purposes of video recording from a police helicopter for the Subject Property. On October 21, 2022, the Honorable Judge R. White of the Riverside Superior Court granted the warrant.

35.    In viewing the aerial surveillance that was obtained, I saw what I perceived to be, based on my training and experience, approximately 300 marijuana green houses on the Subject Property.

36.    On October 27, 2022, I was forwarded an email that had originally been sent from Gladys Dominguez, an office assistant in the Riverside Sheriff Department Thermal Station. Ms. Dominquez's email stated that McCormick had come to the Thermal Sheriff's Station and provided a copy of a "Cannabis License Permit" that was issued by the Tribe. Attached as **Exhibit A** is a true and correct copy of the October 27, 2022 email from Gladys Dominguez, which was ultimately forwarded to me that same day.

37.    Based on my training and experience, I am informed and believe that the Tribe holds no legal authority to issue permits for cannabis cultivation in the State of California and/or the County of Riverside.

38.    Further, no other documents were provided by McCormick to Riverside Sheriff Department Thermal Station on October 27, 2022. Specifically, McCormick did not provide copies of his lease with the Tribe and/or any documentation from the Bureau of Indian Affairs and/or the Tribe that indicated that the Subject Property was trusted land.  The sole document provided by McCormick was the "Cannabis License Permit" from the Tribe.

/ / /

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4924-1603-8421 v9

6

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF JOSE TRUJILLO
VILLASENOR ISO DEFENDANTS' MSJ

39.    On December 5, 2022, Investigator Barros of the Riverside County Sheriff's Department was a passenger on a fixed wing aircraft with the California Highway Patrol and took aerial photographs of the Subject Property, located at 91521 Avenue 68 Mecca, CA 92254.

40.    The aerial photographs taken of the Subject Property on December 5, 2022 revealed what I construed, based on my training and experience, to be approximately one hundred fifty (150) greenhouses filled with marijuana. Further, based on my training and experience, the photographs suggested to me that the property was operational with half a dozen vehicles and a dozen travel trailers on the property. Additionally, the photographs revealed a large black truck parked in the driveway, which was substantially similar to the large black GMC truck that McCormick had previously been observed driving.

41.    Based on the totality of our investigation, we determined that marijuana was being grown at the Subject Property that was unpermitted and not sanctioned by the State of California, and that it was the intent of Plaintiffs distribute and/or sell the marijuana for profit away from Tribal land.

**Investigation Regarding Whether the Subject Property Was Trusted Land**

42.    As set forth above, the Subject Property was fee land as of December 15, 2020. Throughout our investigation, both Investigator Barros and I routinely checked on the status of the Subject Property to determine if it was still fee land or if it had been converted to trusted property.

43.    Among other things, I checked, or instructed someone else to check, the Geographic Information System ("GIS") for Riverside County.  GIS provides information regarding the land when using the APN number. Specifically, I checked to see if the Subject Property was fee land or trusted land. When land is part of the US Trust, GIS will indicate that it the land is owned by the United States, as the land would be held by the United States in trust for the Tribe.

/ / /

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4924-1603-8421 v9

7

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF JOSE TRUJILLO
VILLASENOR ISO DEFENDANTS' MSJ

44.     During the course of our investigation, I checked GIS at least two or three times a month to see if the status of the Subject Property had changed from fee land to trusted land.  I also checked GIS a final time on December 6, 2022 – the day before we executed the search warrant.  Each and every time, including December 6, 2022, the information I obtained from GIS still identified the Subject Property as fee land.

45.     In addition, I followed up with my contact at the Bureau of Indian Affair. On October 27, 2022, I contacted Agent Greg Guiza ("Guiza"), who is an agent with the Bureau of Indian Affairs ("BIA"), by text message, to confirm whether or not the Subject Property was land held in trust for the Tribe. Attached as **Exhibit B** (to be filed with application to seal) is a true and correct copy of the screenshots of my text messages with Greg Guiza of the BIA from October-November 2022.

46.     Specifically, in my October 27, 2022 text to Guiza of the BIA, I asked: "**Can you confirm 91521 Ave 68 is non trust land only owned by Torres Martinez**". Guiza of the BIA responded and asked, "Can you give me the full address". I responded to Guiza's text and provided him the address for the Subject Property as: "91521 68th Ave Mecca, CA 92254 United States." See **Exhibit B** at page 1, (emphasis added).

47.     On October 27, 2022, Guiza of the BIA responded, "<u>**Let me see if I can get a hold of a BIA realtor**</u>. I'm on the road now but I will try." Thereafter, on the same day, Guiza responded to me stating, "<u>**Just got off the phone with my [BIA] realty specialist. And she says it is not on trust land, and that it must be privately owned**</u>." See **Exhibit B** at page 1, (emphasis added).

48.     On November 16, 2022, I sent a follow-up text to Guiza of the BIA and stated the following: "Sorry for the late text, we're planning a MJ erad at one of the grows located on 68 Ave. it's [sic] owned by the tribe but not trusted as a reservation on DEC 7." I also sent the following text: "Let me know if you guys

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4924-1603-8421 v9                                       8                    Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF JOSE TRUJILLO
VILLASENOR ISO DEFENDANTS' MSJ

want to participate or just be kept in the loop", regarding the search of the Subject Property. Guiza of the BIA responded, "Let me talk with my boss in the morning. I will be flying out to Georgia for firearms school on the 4th." See **Exhibit B** at pages 2-3.

49.     On November 17, 2022, Guiza of the BIA responded to me with the following text: "Morning. **My boss [at the BIA] has to decline our participation. The non-trust land** that this particular grow is on is the reason." See **Exhibit B**, at page 3, (emphasis added).

50.     My communications with the BIA, delineated above, indicated to me that the Subject Property was still fee land and was not land held in trust for the Tribe. See **Exhibit B**, at pages 1-3.

## Obtaining The Warrant

51.     Based on the foregoing, I applied for a search warrant for the Subject Property on December 5, 2022. Attached to my application for the warrant was my affidavit, in which I delineated my training, experience, and investigation concerning the Subject Property as discussed above. Attached as **Exhibit C** is a true and correct copy of the search warrant application and warrant (the "Warrant") (to be filed with application to seal) regarding the Subject Property, which includes my Affidavit at pages 2-17.

52.     I included in the search warrant application regarding the Subject Property the following: "…the property located at 91521 Avenue 68 in Mecca is real estate property owned by the Torres Martinez Desert Cahuilla Indians, but not 'trusted land'…" Further, I wrote: "There is a process the Torres Martinez Tribe can petition to convert this property into trusted land, however that has not happened, **and I confirmed it via the Bureau of Indian Affairs**." See **Exhibit C,** at page 7. (emphasis added). Specifically, I was referring to my communications with Agent Guiza of the BIA regarding the Subject Property, as set forth above. See **Exhibit B**, at pages 1-3.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4924-1603-8421 v9

9

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF JOSE TRUJILLO
VILLASENOR ISO DEFENDANTS' MSJ

On December 5, 2022, the Honorable Magistrate Judge E. Smith of Department 42 of the Superior Court of California, County of Riverside, granted the warrant regarding the Subject Property. See **Exhibit C** at pages 1-2.

### Executing The Warrant

53.    I was present at the Subject Property when the Warrant was served and executed. I prepared a report regarding the service and execution of the Warrant.

54.    The Riverside Sheriff's Department never turned off the water supply to the Subject Property before or after service of the Warrant, or at any other time.

55.    On December 7, 2022, at approximately 5:00 a.m., the Warrant was served and executed at the Subject Property pursuant to and in accordance with the Warrant's terms. See **Exhibit C**, pages 1-17.

56.    The Warrant was served at approximately 5:00 a.m. PST by the Riverside Sheriff's Department SWAT Team due to the Subject Property's large size and complexity. I observed SWAT members give a knock and announce notice via a public loudspeaker mounted on their vehicle.

57.    I observed SWAT members discover and detain multiple individuals on the Subject Property in a centralized location. Thereafter, SWAT team members moved the individuals to the front of the property for processing.

58.    SWAT team members, along with other teams, cleared every outdoor marijuana greenhouse along with multiple travel trailers, and two residential structures. SWAT members rendered the location safe after finding no one else hiding inside. A total of thirty-three individuals were present on the property during service of the Warrant.

59.    The official total count of the U.S. currency discovered and seized from the Subject Property was $269,015.00.

60.    Approximately 32,820 pounds of marijuana, along with other miscellaneous items, were seized from the Subject Property.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4924-1603-8421 v9

10

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF JOSE TRUJILLO
VILLASENOR ISO DEFENDANTS' MSJ

**Plaintiff Preston McCormick**

61.    Plaintiff Preston McCormick was discovered in one of the residential structures on the Subject Property during service of the Warrant.

62.    I did not use any force against McCormick, nor did I observe any other law enforcement officer use force against McCormick at any time.

63.    I understand that McCormick claims that he was injured during the execution of the search warrant, but I did not become aware of those allegations until after the lawsuit was filed.

64.    At no time on the date of the incident, December 7, 2022, did McCormick tell me that he was injured or otherwise complaint about an injury. Because McCormick never stated that he was allegedly injured, no calls were made for medical treatment. Had McCormick made any statements or otherwise indicated that he was injured at that time, I would have called for medical assistance.

65.    I read Plaintiff Mcormick his rights under *Miranda*. McCormick verbalized understanding of his rights under *Miranda*, invoked his right to remain silent, and requested an attorney. I immediately stopped questioning Plaintiff McCormick.

66.    McCormick was arrested and taken to the John Benoit Detention Center in Indio.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 1st day of October, 2025, at Riverside, California.

*Jose Villasenor #4285*
_____
JOSE TRUJILLO VILLASENOR

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4924-1603-8421 v9

11

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF JOSE TRUJILLO
VILLASENOR ISO DEFENDANTS' MSJ

## DECLARATION OF SERGEANT NICHOLAS NAGLE

I, NICHOLAS NAGLE, declare as follows:

1.    I offer this declaration for the Person Most Knowledgeable for the County of Riverside Sheriff's Department regarding customs, policies, and practices. I have personal knowledge of the facts set forth herein.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of Defendants' Motion for Summary Judgment.

### Training, Background, and Experience

2.    I am currently employed by the Riverside County Sheriff's Department.

3.    I have been employed by the Riverside County Sheriff's Department for 16 years. I am currently a sergeant and a supervisor of the Defensive Tactics Unit and Honor Guard.

4.    In my current role, my duties with the Riverside County Sheriff's Department consist of overseeing the unit that trains recruits and all in-service deputies in arrest and control. This encompasses handcuffing and searches, as well as use of all intermediate force options, such as use of tasers and other non-lethal force options, and mobile field force and crowd control.

5.    In addition, as part of my responsibilities I evaluate use of force employed by members of the Riverside County Sheriff's Department to determine if the use of force was objectively reasonable based on the totality of circumstances.

### Pertinent Policies and Procedures

6.    From my experience as a Sergeant with the Riverside County Sheriff's Department, I am familiar with the policies, procedures, and customs of the Riverside County Sheriff's Department.

7.    The Riverside County Sheriff's Department has a robust system in place for ensuring that personnel comply with the policies of the Riverside County Sheriff's Department, as well as all applicable legal requirements.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-3039-8555 v7                                                      1                              Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF NICHOLAS NAGLE IN
SUPPORT OF DEFENDANTS'  MSJ

8.     Attached as **Exhibit D** is a true and correct copy of the relevant and current portions from the Riverside County Sheriff's Department Standards Manual ("DSM").

9.     The DSM is publicly available on the Riverside County Sheriff's Department website on the following page:

https://www.riversidesheriff.org/663/Transparency, and can be accessed via the following public direct link:

https://www.riversidesheriff.org/DocumentCenter/View/7912/Standards-Manual-9723

10.     I am informed and believe that Plaintiffs allege that the Riverside County Sheriff's Department "…caused, and is responsible for, the unlawful conduct and resulting losses…by ordering, authorizing, acquiescing in, or setting in motion policies…that led to the unlawful conduct…by failing to enact policies to address the constitutional rights of protesters…" in connection with a marijuana related search warrant that was executed on December 7, 2022 against Plaintiffs on property owned by the Torres Martinez Desert Cahuilla Indians ("Tribe").  See Complaint, at ¶ 35. This allegation is untrue.

11.     The DSM contains a dedicated chapter titled "Policing Tribal Lands." See **Exhibit D**, Policy 407, at pages 416-420. Policy Number 407.3.5 of the DSM is titled "Investigations." Id. at page 419. Pursuant to DSM Policy 407.3.5, "**All laws and constitutional rights regarding search and seizure, laws of arrest, and Miranda advisement apply on tribal lands**. Investigators responding to tribal lands for a protracted investigation shall notify the department's Tribal Liaison Unit as soon as possible to inform them about the location and circumstances, and to ask for their assistance, if needed." Id. at 419, (emphasis added). The Riverside County Sheriff's Department's custom and practice is to follow this policy.

12.     Further, I am informed and believe that Plaintiffs allege: "[T]he unconstitutional acts and/or omissions… were decided, conducted, made,

encouraged, and engaged in pursuant to policies, customs, conduct, and/or practices of Defendants COUNTY, RCSD…" See the Complaint, at ¶ 84. This allegation is untrue.

13.     Policy Number 407.1 in the DSM is titled "Policing Tribal Lands" and includes the Torres Martinez Desert Cahuilla Indians (the "Tribe") as a tribe that the Riverside County Sheriff Department serves. See **Exhibit D**, Policy 407.1, at p. 416. The Riverside County Sheriff's Department's custom and practice is to follow this policy.

14.     In addition, pursuant to DSM Policy 407.2, Public Law 83-280 "as enacted by the federal government in 1953, sought to clarify the role of law enforcement upon Indian lands in six states, to include California. The law essentially transferred enforcement of state law to local agencies." See **Exhibit D**, Policy 407.2, at p. 416. The Riverside County Sheriff's Department's custom and practice is to follow this policy.

15.     Further, pursuant to DSM policy 407.3, Public Law 83-280 "tasked the State of California with enforcement of what are commonly referred to as 'criminal-prohibitive' laws on tribal lands. Criminal-prohibitive laws prohibit certain conduct, and do not exist to simply regulate otherwise allowable conduct…**The enforcement of these laws carries the exact weight as if the violations were committed elsewhere," on non-tribal land**. See **Exhibit D**, Policy 407.3, at pp. 416-417 (emphasis added). The Riverside County Sheriff's Department's custom and practice is to follow this policy.

16.     Policy Number 407.3.2 in the DSM is titled "Marijuana Enforcement." See **Exhibit D**, Policy 407.3.2, at pp. 418. Pursuant to DSM Policy Number 407.3.2, "**Enforcement of state-level laws regarding the illegal possession or sale of marijuana apply on tribal lands and can be enforced as they would anywhere else in the county**. If patrol personnel discover large-scale marijuana possession, sales, or cultivation on tribal land, they should contact the Special Investigations

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-3039-8555 v7

3

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF NICHOLAS NAGLE IN SUPPORT OF DEFENDANTS' MSJ

Bureau for direction as soon as possible." Id. (emphasis added). The Riverside County Sheriff's Department's custom and practice is to follow this policy.

17.    Additionally, I am informed and believe that Plaintiffs make the following allegations: "The failure to use and employ appropriate and generally accepted law enforcement and other policies and procedures for obtaining and executing valid and lawful search warrants while engaging in the acts and/or omissions as set forth herein and above…," [See Dkt. 1, the Complaint, at ¶ 85(b)]; "The failure to create, institute, require, and enforce proper…policies, procedures, and remedial training concerning employees…," [See Dkt. 1, the Complaint, at ¶ 85(c)]; and "The failure to design, develop, implement, train, monitor, and enforce all the necessary, appropriate, and lawful policies…in order to avoid, prevent, correct, and remedy the unconstitutional conduct, customs, practices, and procedures engaged in by and through employees…in the face of obvious and glaring need for such necessary, appropriate, and lawful policies, procedures, and training programs." [See Dkt. 1, the Complaint, at ¶ 85(f)]; "The aforementioned: customs, policies, practices, and procedures; abject failures to properly and adequately hire, train, instruct…" [See Dkt. 1, the Complaint, at ¶ 96]. These allegations are untrue.

18.    Policy Number 208 in the DSM is titled "Training," and is an entire chapter dedicated to ensuring Riverside County Sheriff's Department personnel receive adequate training. See **Exhibit D**, Policy 208, at pages 39-41. Policy 208.1 expressly states: "The policy of the Riverside County Sheriff's Office is to administer a training program that will provide for the professional growth and continued development of its personnel. By so doing, the Sheriff's Office will ensure its personnel possess the knowledge and skills necessary to provide a professional level of service that meets the needs of the community. The Sheriff's Office shall adhere to the training and background requirements as set by the California Commission on Peace Officer Standards and Training (POST) and the Standards

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-3039-8555 v7

4

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF NICHOLAS NAGLE IN
SUPPORT OF DEFENDANTS' MSJ

and Training for Correctional Officers (STC). The Sheriff's Office may provide training for its members as the Sheriff deems necessary for the proper execution of assigned duties." *Id.* at page 39. Further, Policy 208.2 expressly states, "The Riverside County Sheriff's Office seeks to provide on-going training and encourages all personnel to participate in advanced training and formal education on a continual basis." Id. The Riverside County Sheriff's Department's custom and practice is to follow this policy. Thus, Plaintiffs' allegations concerning lack of adequate training policies are untrue.

19.    Based on the aforementioned policies, Plaintiffs' allegations in the Complaint that are related to customs, policies, and procedures of the Riverside County Sheriff's Department lack merit and reflect a misunderstanding of the policies indicated above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 2nd day of October, 2025, at Riverside, California.

_____
NICHOLAS NAGLE

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-3039-8555 v7

5

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF NICHOLAS NAGLE IN
SUPPORT OF DEFENDANTS' MSJ

## DECLARATION OF WALTER KURTZ

I, WALTER KURTZ, declare as follows:

1.      I have personal knowledge of the facts set forth herein.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of Defendants' Motion for Summary Judgment.

2.      I am currently employed by the County of Riverside at the Riverside County Sheriff's Department. I have been employed at the Riverside County Sheriff's Department since 2007.

3.      I was originally employed as a Deputy Sheriff with the Riverside County Sheriff's Department. From approximately 2021 to 2023, I was a Corporal with the Riverside County Sheriff's Department. In 2023 I was promoted to Sergeant with the Riverside County Sheriff's Department.

4.      I have been working in the Riverside County Sheriff's Department Tribal Liaison Unit ("TLU") for approximately 8 years, and I am currently the supervisor of TLU.

5.      The TLU was formed in 2008 for the purpose of serving as liaison with the Native American Communities in Riverside County and to build and fosters relationships within the local Native American Tribes.

6.      There are 12 Native American Tribes in Riverside County, including the Torres Martinez Tribe, which is located near Thermal, California.

7.      The TLU also provides information and training to Riverside Sheriff's personnel regarding Public Law 280, which impacts jurisdiction on certain tribal lands.

8.      The TLU is a non-enforcement unit. For example, the TLU does not get involved in obtaining and/or executing warrants in any manner. Further, the TLU does not authorize, regulate, and/or oversee the process for Riverside County Sheriff's Department personnel obtaining or executing search warrants with respect to tribal members and/or tribal land, nor do Riverside County Sheriff's Department

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4931-3758-2444 v4

1

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF WALTER KURTZ IN
SUPPORT OF DEFENDANTS' MSJ

personnel need to obtain TLU's authority or permission before obtaining and/or executing a search warrant with respect to tribal members and/or tribal land.

9.    I am informed and believed that Plaintiffs have alleged that Sheriff's Department investigators were required to notify TLU or seek approval from the TLU before serving a search warrant at 91521 Avenue 68 in Mecca, California 92254. Plaintiffs' allegation lacks merit and reflects a misunderstanding of the purposes of TLU.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 1st day of October, 2025, at Hemet, California.

WALTER KURTZ

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4931-3758-2444 v4

2

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF WALTER KURTZ IN
SUPPORT OF DEFENDANTS' MSJ

# DECLARATION OF GILBERT ESPINOZA

I, GILBERT ESPINOZA, declare as follows:

1.      I have personal knowledge of the facts set forth herein.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of Defendants' Motion for Summary Judgment.

2.      I am currently employed by the County of Riverside ("County") and I have been employed by the County for approximately nine years.

3.      I currently work in the Riverside County Planning Department and am a Land Use Tech II.

4.      In my role as Land Use Tech II, I provide information to members of the public on land use and zoning.  The source of my information is an online program called "Map My County."  While there is a version of this program that is available to the public, the County Planning Department uses a different version which has sensitive material that only County employees can see, such as names and addresses, and other information that we don't provide to the public.

5.      Whenever I am asked a question regarding a particular parcel of land, my custom and practice is to look up the address by the APN (i.e. Assessor's Parcel Number) in Map My County, from which I can obtain the Riverside County Parcel Report ("Parcel Report") for particular property.

6.      The Parcel Reports are detailed reports that contain specific information about a particular property, including but not limited to whether land is held in trust for a Tribe, owned by a Tribe, or  non-tribal land. Further, the Parcel Reports contain data about the lots of land including, but not limited, to assessor data, parcel data, planning and zoning data, permit data, environmental data, land use violations, and any code enforcement history related to that particular APN.

7.      The Map My County program also provides information as to whether or not a specific lot of land is held in trust by the United States.  If a particular parcel of land is trusted land, then "owner" of that lot will be identified as the United States

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4920-2491-1980 v5

1

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF GILBERT ESPINOZA  IN
SUPPORT OF DEFENDANTS' MSJ

– or "US" or "USA" – and usually accompanied by a number.  If, on the other hand, a specific parcel of land is land owned by a Tribe as fee simple land, then the "Owner" will be listed as the tribe.

8.    Attached as **Exhibit E** is a true and correct copy of the Parcel Report for the Subject Property located at 91521 Avenue 68 in Mecca, California 92254, APN 729-040-004-4, which I obtained from the Map My County program and printed out on November 19, 2024.

9.    The first page of the Parcel Report lists the Tribe as the owner of the Subject Property; not the United States or "US" and/or "USA." On page two of the Parcel Report, next to the category "Indian Tribal Land" it states "NOT IN A TRIBAL LAND." (caps in original). See **Exhibit E**.  Based on this Parcel Report, the Subject Property is not being identified as either Tribal Land and/or trusted land as of November 19, 2024.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on this 1st day of October, 2025, at Riverside, California.



Gilbert Espinoza (Oct 1, 2025 16:55:13 PDT)

Gilbert Espinoza

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4920-2491-1980 v5

2

Case No. 5:23-cv-02569-SSS-SP
DECLARATION OF GILBERT ESPINOZA IN
SUPPORT OF DEFENDANTS' MSJ